1  PAT LUNDVALL (NSBN 3761)
   RORY T. KAY (NSBN 12416)
2  McDONALD CARANO LLP
   2300 West Sahara Avenue, Suite 1200
3  Las Vegas, Nevada 89102
   Telephone: (702) 873-4100
4  lundvall@mcdonaldcarano.com
   rkay@mcdonaldcarano.com
5
   Patrick Smith (*pro hac vice* forthcoming)
6  Andrew Rodgers (*pro hac vice* forthcoming)
   Nicholas Karasimas (*pro hac vice* forthcoming)
7  SMITH VILLAZOR LLP
   250 West 55th Street, 30th Floor
8  New York, New York 10019
   Telephone: (212) 582-4400
9  patrick.smith@smithvillazor.com
   andrew.rodgers@smithvillazor.com
10 nicholas.karasimas@smithvillazor.com

11 *Attorneys for Defendants Sylebra HK Company Limited;*
   *Sylebra Capital Management Limited;*
12 *Sylebra Capital Partners Master Fund, Limited;*
   *Sylebra Capital Partners (Offshore) Limited; and*
13 *Sylebra Capital Partners (Onshore) Limited*

14

15                    **UNITED STATES DISTRICT COURT**

16                          **DISTRICT OF NEVADA**

17
   SCIENTIFIC   GAMES   CORPORATION,   a      Case No.:
18 Nevada Corporation, and BALLY GAMING,
   INC., a Nevada Corporation,
19
                                               **NOTICE   OF   REMOVAL   OF   CIVIL**
20          Plaintiffs,                        **ACTION**

      vs.
21
   SYLEBRA HK COMPANY LIMITED, a Hong
22 Kong    entity,    SYLEBRA    CAPITAL
   MANAGEMENT LIMITED, a Cayman Islands
23 entity,   SYLEBRA   CAPITAL   PARTNERS
   MASTER FUND, LIMITED, a Cayman Islands
24 hedge fund, SYLEBRA CAPITAL PARTNERS
   (OFFSHORE) LIMITED, a Cayman Islands
25 hedge   fund,   and   SYLEBRA   CAPITAL
   PARTNERS   (ONSHORE)   LIMITED,   a
26 Cayman Islands hedge fund,

27          Defendants.

28

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA AND TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, defendants Sylebra HK Company Limited, Sylebra Capital Management Limited, Sylebra Capital Partners Master Fund, Limited, Sylebra Capital Partners (Offshore) Limited and Sylebra Capital Partners (Onshore) Limited (collectively "Sylebra") remove to this Court the captioned action and respectfully submit the following statement of grounds for removal:

1.    The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  Further explanation for this statement is found in paragraphs 10 and 11.

2.    Defendants Sylebra HK Company Limited, Sylebra Capital Management Limited, Sylebra Capital Partners Master Fund, Limited, Sylebra Capital Partners (Offshore) Limited and Sylebra Capital Partners (Onshore) Limited are the named defendants in this action, originally commenced in the Eighth Judicial District Court, Clark County, Nevada, Case no. A-19-796699-B, (the "State Court Action").  All join in this notice of removal.

3.    At the time this action was commenced, based on allegations found in the Complaint, plaintiffs assert their places of incorporation and principal places of business as follows:

| Plaintiff | State of Incorporation | Principal Place of Business |
|---|---|---|
| Scientific Games Corporation | Nevada | Nevada |
| Bally Gaming, Inc. | Nevada | Nevada |

4.    All named defendants are the subjects of foreign states, and their principal places of business are as follows:

| Defendant | Foreign State | Principal Place of Business |
|---|---|---|
| a)  Sylebra Capital Limited f/k/a Sylebra HK Company Limited | A Hong Kong Limited Company | Hong Kong |
| b)  Sylebra Capital Management Limited | A Cayman Islands Exempted Company | Cayman Islands |

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

| c) | Sylebra Capital Partners Master Fund, Limited | A Cayman Islands Exempted Company | Cayman Islands |
| d) | Sylebra Capital Partners (Offshore) Limited | A Cayman Islands Exempted Company | Cayman Islands |
| e) | Sylebra Capital Partners (Onshore) Limited | A Cayman Islands Exempted Company | Cayman Islands |

5.   This Court has original jurisdiction over the subject matter of this action under the provisions of 28 U.S.C. § 1332.  Complete diversity between the parties exists and more than $75,000 is in controversy, exclusive of interest and costs.

6.   Sylebra first learned of the State Court Action on June 14, 2019.  At present, there has been no service of summons or complaint upon any defendant.  Counsel for Sylebra offered to accept service of summons and complaint upon certain conditions that were believed to be reasonable, but that offer was refused by counsel for plaintiffs.  This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), as it is within thirty days of the date when counsel for Sylebra first learned of the State Court Action.

7.   No proceedings have been had in this matter in the state district court.  Copies of all documents filed in the State Court Action are attached hereto as follows:  Complaint (Exhibit A), Plaintiffs' Initial Appearance Fee Disclosure (Exhibit B), Motion to Associate Gilbert L. Brooks as Counsel (Exhibit C), Motion to Associate Christina N. Barriero as Counsel (Exhibit D), Motion to Associate Herschel Kozlov as Counsel (Exhibit E) and Notice of Hearing (Exhibit F).

8.   The State Court Action was filed June 14, 2019, thus one year has not elapsed from the date the action in state court commenced.

9.   The Complaint asserts claims for legal and equitable relief.  Plaintiff Scientific Games Corporation, a publicly traded company, and plaintiff Bally Gaming, Inc., its wholly owned subsidiary, are gaming companies subject to licensure and regulation across multiple jurisdictions, including the State of Nevada.  One of the named defendants, Sylebra Capital Partners Master Fund, Limited, is a shareholder of plaintiff Scientific Games

Corporation, and is managed by Sylebra HK Company Limited, an investment advisor registered with the U.S. Securities and Exchange Commission.  The claims asserted by plaintiffs are unique in the context of gaming regulation.  It is asserted by plaintiffs that a district court or plaintiffs themselves may substitute their judgment for that of gaming regulators who have been vested pursuant to Nevada's Legislature with sole discretion to determine the suitability of certain of plaintiffs' shareholders.  It is also asserted by plaintiffs that a district court or plaintiffs themselves may bypass the confidentiality protections put in place by gaming regulators, including Nevada's, for the benefit of shareholders, like Sylebra, who have submitted confidential, proprietary information to gaming regulators in determining issues of suitability.  The Complaint also falsely alleges that Sylebra has failed to cooperate and is under investigation by unnamed gaming regulators.

10.     The Complaint seeks damages in the state jurisdictional "amount greater than $15,000" for alleged breaches of plaintiff Scientific Games Corporation's Charter and Bylaws, and for alleged breach of the covenant of good faith and fair dealing.  Plaintiffs also seek an unspecified amount in attorneys' fees.  Plaintiffs' Complaint details the various purported "investigatory" and "due diligence" efforts that plaintiff Scientific Games Corporation has engaged in over the years with respect to Sylebra.  Sylebra believes that these efforts were made with an improper purpose, and resulting harm, if any, was self-made.

11.     Because plaintiffs' Complaint seeks damages in the state jurisdictional amount of greater than $15,000, in compliance with 28 U.S.C. § 1446(c)(2)(A), Sylebra offers this additional explanation establishing that the amount in controversy exceeds $75,000. Defendant  Sylebra Capital Partners Master Fund, Limited has purchased 7,586,427 shares in plaintiff Scientific Games Corporation.  As of July 2, 2019, the closing market price of plaintiff Scientific Gaming Corporation's stock was $19.85 per share.  From the allegations of the Complaint it is believed that plaintiffs' ultimate motivation is to claim entitlement to redeem certain of defendants' publicly traded shares at a Redemption Price which is defined in bylaws as follows:

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1
2
3
4
5
6
7
8
9

Redemption Price means with respect to any Securities, the equal to the lesser of (1) the average closing sale price of such Securities as reported for composite transactions in securities listed on the principal trading market on which such Securities are then listed or admitted for trading during the 30 trading days preceding the Notice Date, or, if such Securities are not so listed or traded, the fair value of the Securities as determined by the Board of Directors in good faith and in consideration of such records of the Corporation and information, opinions, reports or statements presented to the Board of Directors by any of the Corporation's officers, employees or financial advisors, or committees of the Board of Directors (including, without limitation, information, opinions, reports or statements regarding any discount for lack of marketability or otherwise), as the Board of Directors deems, in its sole discretion, to be relevant and pertinent to such determination, and (2) the original Purchase Price.

10   Given the number of Scientific Games shares owned by Sylebra Capital Partners Master
11   Fund, Limited, the amount in controversy based on any redemption formula computation
12   reaches tens if not hundreds of millions of dollars, and in any case is far greater than the
13   $75,000 jurisdictional threshold.  It is further believed that plaintiffs are seeking to redeem
14   defendants' shares at this discounted price for reasons unrelated to any gaming regulators'
15   determinations of suitability.  Even without that redemption price calculation, the amount
16   that plaintiffs seek to recover for alleged breaches of charter and bylaws and the implied
17   covenant of good faith and fair dealing, under plaintiffs' asserted theory of damages the
18   amount in controversy is well in excess of $75,000.

19        12.    Venue is proper in this district pursuant to 28 U.S.C. § 1441(a) because the
20   district embraces the place where the State Court Action is pending.

21        13.    Pursuant to 28 U.S.C. § 1441, defendants are therefore entitled to remove the
22   State Court Action to this Court.

23        14.    Sylebra will promptly file a copy of the Notice of Removal with the Clerk of the
24   Court for the District Court, Clark County, Nevada.

25

26   / / /
27   / / /
28   / / /

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

15.     This Notice of Removal is submitted without waiver of any procedural or substantive defense.

Dated this 11th day of July, 2019.

McDONALD CARANO LLP

By:   /s/ Pat Lundvall
    Pat Lundvall (NSBN 3761)
    Rory T. Kay (NSBN 12416)
    McDONALD CARANO LLP
    2300 West Sahara Avenue, Suite 1200
    Las Vegas, Nevada 89102
    Telephone: (702) 873-4100
    lundvall@mcdonaldcarano.com
    rkay@mcdonaldcarano.com

Patrick Smith (*pro hac vice* forthcoming)
Andrew Rodgers (*pro hac vice* forthcoming)
Nicholas Karasimas (*pro hac vice* forthcoming)
SMITH VILLAZOR LLP
250 West 55th Street, 30th Floor
New York, New York 10019
Telephone: (212) 582-4400
patrick.smith@smithvillazor.com
andrew.rodgers@smithvillazor.com
nicholas.karasimas@smithvillazor.com

*Attorneys for Defendants Sylebra HK Company Limited; Sylebra Capital Management Limited; Sylebra Capital Partners Master Fund, Limited; Sylebra Capital Partners (Offshore) Limited; and Sylebra Capital Partners (Onshore) Limited*

**CERTIFICATE OF SERVICE**

I certify that I am an employee of McDonald Carano LLP, and that on the 11th day of July, 2019, I caused a true and correct copy of the foregoing NOTICE OF REMOVAL OF CIVIL ACTION to be electronically filed with the Clerk of the Court by using CM/ECF service and serving on all parties of record via U.S. Mail as follows:

J. Colby Williams, Esq.
Philip R. Erwin, Esq.
CAMPBELL & WILLIAMS
700 South Seventh Street
Las Vegas, Nevada 89101
jcw@cwlawlv.com
pre@cwlawlv.com
Attorneys for Plaintiffs

Kevin J. Orsini, Esq.
Christina N. Barreiro, Esq.
Cravath, Swaine & Moore LLP
825 Eighth Avenue
New York, New York 10019
korsini@cravath.com
cbarreiro@cravath.com
Attorneys for Plaintiffs

Hersh Kozlov, Esq.
Gilbert L. Brooks, Esq.
Duane Morris LLP
1940 Route 70 East, Suite 100
Cherry Hill, New Jersey 08003
hkozlov@duanemorris.com
gbrooks@duanemorris.com
Attorneys for Plaintiffs

/s/   Beau Nelson
An employee of McDonald Carano LLP

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

EXHIBIT A

Electronically Filed
6/14/2019 1:52 PM
Steven D. Grierson
CLERK OF THE COURT

1  **COMP**
CAMPBELL & WILLIAMS
2  J. COLBY WILLIAMS, ESQ. (5549)
3  jcw@cwlawlv.com
PHILIP R. ERWIN, ESQ. (11563)
4  pre@cwlawlv.com
700 South Seventh Street
5  Las Vegas, Nevada 89101
Telephone: (702) 382-5222
6  Facsimile: (702) 382-0540

CASE NO: A-19-796699-B
Department 27

7
CRAVATH, SWAINE & MOORE LLP        DUANE MORRIS LLP
8  KEVIN J. ORSINI, ESQ. (*pro hac vice*        HERSH KOZLOV, ESQ. (*pro hac vice*
forthcoming)        forthcoming)
9  korsini@cravath.com        hkozlov@duanemorris.com
CHRISTINA N. BARREIRO, ESQ. (*pro hac vice*        GILBERT L. BROOKS (*pro hac vice*
10  forthcoming)        forthcoming)
11  cbarreiro@cravath.com        gbrooks@duanemorris.com
825 Eighth Avenue        1940 Route 70 East, Suite 100
12  New York, New York 10019        Cherry Hill, New Jersey 08003
Telephone: (212) 474-1000        Telephone: (856) 874-4200
13  Facsimile: (212) 474-3700        Facsimile: (856) 424-4446

14  *Attorneys for Plaintiffs*

15  EIGHTH JUDICIAL DISTRICT COURT

16  CLARK COUNTY, NEVADA

17
18  SCIENTIFIC GAMES CORPORATION, a        ) CASE NO.:
Nevada Corporation, and BALLY GAMING,        ) DEPT. NO.:
19  INC., a Nevada Corporation,        )
)
20        Plaintiffs,        )
)
21        v.        ) **COMPLAINT**
)
22  SYLEBRA HK COMPANY LIMITED, a Hong        ) **(Request for Business Court Assignment**
Kong entity, SYLEBRA CAPITAL        ) **Pursuant to EDCR 1.61(a))**
23  MANAGEMENT LIMITED, a Cayman Islands        )
entity, SYLEBRA CAPITAL PARTNERS        ) **(Exempt from Arbitration –**
24  MASTER FUND, LIMITED, a Cayman Islands        ) **Declaratory Relief Sought)**
25  hedge fund, SYLEBRA CAPITAL PARTNERS        )
(OFFSHORE) LIMITED, a Cayman Islands        )
26  hedge fund, and SYLEBRA CAPITAL        )
PARTNERS (ONSHORE) LIMITED, a Cayman        )
27  Islands hedge fund,        )
)
28        Defendants.        )

Page 1 of 34

**COMPLAINT**

Plaintiffs Scientific Games Corporation ("Scientific Games" or the "Corporation") and its subsidiary, Bally Gaming, Inc. ("Bally Gaming" and, collectively with Scientific Games, "Plaintiffs"), by and through their undersigned attorneys, for their Complaint against Defendants Sylebra HK Company Limited ("Sylebra HK"), Sylebra Capital Management Limited ("Sylebra Cayman"), Sylebra Capital Partners Master Fund, Limited ("Sylebra Master Fund"), Sylebra Capital Partners (Offshore) Ltd. ("Offshore Feeder") and Sylebra Capital Partners (Onshore) Ltd. ("Onshore Feeder", and, together with Sylebra Master Fund and Offshore Feeder, "Sylebra Funds") (collectively, "Defendants" or "Sylebra", and, together with Defendants' respective affiliates and advisory clients, the "Investor"), allege, upon knowledge with respect to their own acts and upon information and belief as to other matters, as follows:

**NATURE OF THE ACTION**

1.      Scientific Games is a leading developer of technology-based products and services and associated content for the worldwide gaming, lottery and interactive gaming industries. As a result, Scientific Games and its indirect wholly owned subsidiary, Bally Gaming, are regulated by a large number of government authorities in the United States and abroad, from which they must obtain licenses and other regulatory approvals—and then maintain those licenses and approvals going forward—in order to operate.

2.      One of the central areas of focus for regulators in the gaming industry relates to the ownership of gaming companies—that is, ensuring that certain shareholders of such companies meet the strict standards of suitability and/or qualification that regulators, legislatures and courts set and interpret. By custom, practice and law, gaming companies and their significant shareholders must cooperate fully with regulators in their oversight of such suitability and qualification issues, which oversight can include making disclosures and other requests and demands of both the gaming company and the shareholder. If *either* the gaming company or the shareholder fails to cooperate

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 ● Fax: 702.382.0540
www.campbellandwilliams.com

with a regulator, the gaming company faces the possibility of being denied a license or needed regulatory approval related to licensing, having its licenses or prior regulatory approvals related to licensing suspended, revoked or invalidated, or of suffering other adverse action at the hands of the regulator. The same risks arise in the event that a significant shareholder is deemed unsuitable or unqualified by a regulator, legislature or court.

3.       Ensuring regulatory compliance and thereby obtaining and maintaining the licenses required to operate in its industries are foremost objectives and concerns of Scientific Games and its Board of Directors (the "Board"), which are likewise shared by Bally Gaming and its Board of Directors. Being denied a license or needed regulatory approval related to licensing, or having a license or prior regulatory approval related to licensing suspended or revoked, or being the target of any adverse action by a regulator could materially—and irreparably—injure the Plaintiffs and their shareholders, and could preclude Plaintiffs from operating their businesses.

4.       Pursuant to this central objective of maintaining good regulatory standing in connection with regulators' oversight of the ownership of Scientific Games, Section 8.06 of the Corporation's Bylaws provides that "[t]o enable the Corporation or any of its affiliates to secure, maintain in good standing and renew all licenses," the Corporation "will conduct a suitability analysis of each Significant Stockholder." (Exhibit A.) Section 8.06 defines Significant Stockholder as a stockholder owning, directly or indirectly, "five percent or more of any class of capital stock of the Corporation." Section 8.06 explains that—in order to be able to conduct its suitability analysis—the Corporation "intends to require all relevant information pertaining to suitability and/or qualification, as those terms are commonly understood in gaming laws applicable to the Corporation, from such Significant Stockholder in connection therewith." This provision was enacted to confirm the duty which has always been understood under the Corporation's Charter: a shareholder is under the obligation to provide to the Corporation information that the Corporation might deem necessary to

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 ● Fax: 702.382.0540
www.campbellandwilliams.com

conduct its own suitability analysis in order to ensure the Corporation remains compliant with applicable gaming regulations.

5. Indeed, the Corporation has for more than a decade had a Board and shareholder-approved provision—currently embodied in Article VIII ("Article VIII") of the Corporation's Certificate of Amended and Restated Articles of Incorporation (the "Charter") (Exhibit B)—that empowers Scientific Games to actually redeem stock from any shareholder who has been determined to be a "Disqualified Holder," as that term is defined therein. Any shareholder that (like Defendants) has acquired shares of the Corporation since June 2007 has done so with actual or presumed knowledge of the provisions of Article VIII and the corresponding obligation to provide the Corporation with information sufficient to demonstrate that the shareholder is not a Disqualified Holder.

6. During the past few years, suitability and qualification concerns have arisen related to Defendant Sylebra, which holds nearly 10% of the outstanding stock of Scientific Games. Regulators across the globe have initiated licensing investigations, required disclosure submissions to conduct suitability/qualification investigations, requested information and made demands of Plaintiffs and/or begun to monitor events concerning Defendants' significant ownership of Scientific Games. These inquiries followed public disclosures that Sylebra also owned a significant stake in a Russian company with alleged ties to illegal gaming, money-laundering and financial support of terrorist organizations. Scientific Games has regularly provided information about Sylebra to gaming regulators consistent with its ongoing obligation to inform regulators about matters relevant to suitability.

7. The regulators that have opened inquires or investigations into Sylebra include: the Pennsylvania Gaming Control Board (the "PGCB") and the Board's Office of Enforcement Counsel ("OEC" and, collectively with PGCB, the "Pennsylvania Regulator"), the Alcohol and Gaming Commission of Ontario (the "Ontario Regulator"), the Indiana Gaming

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 ● Fax: 702.382.0540
www.campbellandwilliams.com

Commission (the "Indiana Regulator"), the New Jersey Division of Gaming Enforcement (the "New Jersey Regulator"), the Alberta Gaming & Liquor Commission (the "Alberta Regulator"), the Maryland Lottery and Gaming Control Agency (the "Maryland Regulator"), the Mississippi Gaming Commission (the "Mississippi Regulator"), the Louisiana State Police and Louisiana Gaming Control Board (the "Louisiana Regulator"), the Connecticut Lottery Corporation and Connecticut Department of Consumer Protection (the "Connecticut Regulator"), the Puerto Rico Tourism Company (the "Puerto Rico Regulator"), the Washington State Gambling Commission (the "Washington State Regulator"), the California Bureau of Gambling Control, Vendor Licensing Unit (the "California Regulator"), the Oregon State Police, Gaming Enforcement-Lottery (the "Oregon Regulator"), the Nova Scotia Provincial Lotteries and Casino Corporation and the Alcohol, Gaming, Fuel, and Tobacco Division of Service Nova Scotia (collectively the "Nova Scotia Regulator"), the Alderney Gambling Control Commission (the "Alderney Regulator"), the Ohio Casino Control Commission (the "Ohio Regulator"), the West Virginia Lottery Commission (the "West Virginia Regulator"), the U.S. Virgin Islands Casino Control Commission (the "Virgin Islands Regulator"), the Michigan Gaming Control Board (the "Michigan Regulator"), the UK Gambling Commission (the "United Kingdom Regulator"), the Seneca Gaming Authority (the "Seneca Regulator"), the Massachusetts Gaming Commission (the "Massachusetts Regulator"), the Illinois Gaming Board (the "Illinois Regulator"), the Colorado Division of Gaming and Colorado Department of Revenue, Enforcement Division-Gaming (the "Colorado Regulator") and the Malta Gaming Commission (the "Malta Regulator").

8.    Given the obvious concerns about whether Sylebra's ownership could jeopardize the Corporation's gaming licenses, the Corporation has repeatedly asked Sylebra for basic information to allow the Corporation and its Board to carry out its own suitability analysis.   Time and time again, Sylebra has refused.  In fact, despite all of the inquiries listed above, Scientific Games does not believe Sylebra has ever provided a single regulator with the basic and essential information

that goes to the core of any suitability analysis: the identities of the beneficial owners of Sylebra Master Fund, which is the entity that actually holds the Scientific Games stock, or of Offshore Feeder and Onshore Feeder, the entities (commonly known as "feeder funds") that invest assets in Sylebra Master Fund, making the identity of their investors (each a likely beneficial owner of Sylebra Master Fund) also critical to a suitability analysis. Instead, Sylebra has manipulated the regulatory system by strategically timing the disclosure of information that it is willing to part with while utilizing procedural mechanisms to prevent any order requiring it to turn over the information that actually matters.

9.     This sustained pattern of obfuscation, procedural maneuvering and outright stonewalling—both in response to the Corporation's requests and the reasonable requests of governing regulators—raises serious questions about just what Sylebra might be trying to hide. These concerns have only increased given recent changes in ownership and management with respect to Sylebra and the Sylebra Funds.

10.     With all of this in mind, on May 13, 2019, Scientific Games gave Sylebra one last chance to provide the information necessary to conduct a suitability analysis pursuant to Section 8.06 of the Bylaws. Specifically, the Corporation requested information concerning Sylebra's investors, including: a list of investors in each Sylebra Fund; a list of investors whose ownership in any Sylebra Fund has changed since January 1, 2016; documents from any gaming authority concerning Sylebra's suitability to have any ownership interest in a regulated gaming company; confirmation that Sylebra has complied with the orders of any gaming authority; confirmation that Sylebra has not withdrawn any applications for qualification, suitability and/or a gaming license on the belief that such application would be denied or subject to burdensome or unacceptable conditions; and documents sufficient to show that Sylebra has undertaken steps to ensure compliance with anti-money laundering rules and regulations, as well as the FCPA and OFAC regulations. (Exhibit C.)

11.     Sylebra responded to this request on June 13, 2019.  In its response, Sylebra again refused to provide the necessary information, taking issue with the requests themselves or claiming—inaccurately—that it had already provided sufficient information to the relevant regulators.  It is time for these games to end.  Sylebra must be held to its unambiguous obligations under the Corporation's duly-enacted and implemented Charter and Bylaws.   Sylebra's refusal to provide Scientific Games with the necessary information puts the Plaintiffs at risk for irreparable harm, including the loss of the Plaintiffs' licenses and other approvals in the heavily regulated industry in which they operate.  Absent Court intervention, it is obvious that Defendants will continue to evade and obstruct Plaintiffs' attempts to conduct a suitability analysis in contravention of the duly enacted Bylaw Section 8.06 and Article VIII of the Corporation's Charter.

12.     Accordingly, the Corporation has been left with no choice but to initiate this action to remedy Defendants' breach of (i) their obligations under Section 8.06 of the Corporation's Bylaws and Article VIII; and (ii) the implied covenant of good faith and fair dealing.  This action also seeks declaratory relief confirming that Scientific Games is entitled to the information it has requested from Sylebra under the corporate governing documents and an order requiring that Defendants specifically perform their obligations under the corporate governing documents and finally provide Scientific Games with basic information about Sylebra.

## IDENTIFICATION OF PARTIES

13.     Plaintiff Scientific Games is a corporation organized and existing under the laws of the State of Nevada, with its principal executive offices located at 6601 Bermuda Road, Las Vegas, Nevada 89119.  Scientific Games' portfolio of businesses includes gaming machines, casino management systems, technology for online gaming and sports betting, and lottery content and services.  Scientific Games' stock is traded on the NASDAQ under the symbol "SGMS".

14.     Plaintiff Bally Gaming is an indirect wholly owned subsidiary of Scientific Games and is a corporation organized and existing under the laws of the State of Nevada, with its principal executive offices located at 6601 Bermuda Road, Las Vegas, Nevada 89119.

15.     Relative to other hedge funds with a recent reportable ownership interest in the Corporation, Sylebra has an unusual capital management structure.  Defendant Sylebra HK is an entity organized and existing under the laws of Hong Kong, with its principal place of business at Floor 20, 28 Hennessy Road, Wan Chai, Hong Kong, K3 00000.  Sylebra HK is a large advisory firm that has regulatory assets under management of $100 million or more.  Sylebra HK provides investment advisory services to its client, Sylebra Cayman, and is responsible for carrying out investment activities delegated to it by Sylebra Cayman under an investment advisory agreement between the parties, but does not actually own any of the assets for which it provides advice.

16.     Defendant Sylebra Cayman is an entity organized and existing under the laws of the Cayman Islands, with its principal place of business at Intertrust Corp Services (Cayman) Ltd, 190 Elgin Street, George Town, Grand Cayman, Cayman Islands KY1-9005.  Sylebra Cayman is the parent of Sylebra HK.  Sylebra Cayman has an investment management agreement with Sylebra Master Fund.  Sylebra Cayman also has an investment management agreement with the Sylebra Master Fund feeder funds, the Offshore Feeder and the Onshore Feeder.  Sylebra Cayman has a direct contractual relationship with the Sylebra Funds, is party to the governing documents of the Sylebra Funds (offering memorandum, subscription documents and/or advisory agreements, as applicable), and has, critically, sole authority to execute investment decisions on behalf of the Sylebra Funds.  In connection therewith, Sylebra Master Fund pays Sylebra Cayman a management fee.  Sylebra Master Fund also pays Sylebra Cayman certain eligible expenses related to investments and operations as set forth in the Sylebra Funds' governing documents.  Sylebra Cayman also receives a profit allocation from Sylebra Master Fund through its ownership of "Profit Allocation Shares" issued pursuant to the Sylebra Funds' governing documents.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com

17. Defendant Sylebra Master Fund is an entity organized and existing under the laws of the Cayman Islands, with its principal place of business at Floor 20, 28 Hennessy Road, Wan Chai, Hong Kong, K3 00000. Sylebra Master Fund is a hedge fund with approximately fifty beneficial owners, 100% of whom are non-United States persons. Sylebra Master Fund directly holds 8,619,044 shares of Scientific Games common stock, a 9.34% ownership interest in Scientific Games. As of the close of trading on June 13, 2019, the value of such holdings was more than $180 million. Scientific Games understands that the Defendants continue to own a substantially similar stake in the Corporation.

18. In addition, two entities invest in Sylebra Master Fund, which directly holds the Scientific Games shares. Defendant Offshore Feeder and Defendant Onshore Feeder are entities organized and existing under the laws of the Cayman Islands, with their principal place of business at Intertrust Corp Services (Cayman) Ltd, 190 Elgin Street, George Town, Grand Cayman, Cayman Islands KY1-9005. Offshore Feeder and Onshore Feeder are "feeder funds"—which are investment vehicles for their beneficial owners—in a master-feeder arrangement with Sylebra Master Fund. In such a structure, individual or corporate investors invest directly in the feeder funds, which then in turn invest in Sylebra Master Fund, which exists primarily as a structure for holding assets.

19. Based on recent filings with the SEC, there have been a number of changes involving ownership and structure with respect to Sylebra HK, Sylebra Cayman and the Sylebra Funds, including: (i) changes to the ownership of Sylebra Cayman and management of Sylebra Master Fund; (ii) the transfer of 1,333,287 shares of Scientific Games' common stock from Sylebra advisory clients to Sylebra Master Fund; (iii) Sylebra HK registering with the SEC as an investment adviser; (iv) a reduction in the gross asset value of Sylebra Master Fund; (v) a significant reduction in the number of beneficial owners of Sylebra Master Fund; (vi) a reduction in the percentage of Sylebra Master Fund owned by Sylebra HK "related persons"; (vii) a significant change in the percentage of Sylebra Master Fund owned by non-U.S. persons; (viii) a shift in the location of all

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

Sylebra Master Fund prime brokers from London to Hong Kong; (ix) a shift in the location of all Sylebra Master Fund Custodians from London to Hong Kong; (x) a change in Sylebra Master Fund administrators; and (xi) the filing of Part 2A of Form ADV Firm Brochure with the SEC.

### JURISDICTION AND VENUE

20.     This Court has original jurisdiction over this action pursuant to the Nevada Constitution, art. 6, sec. 6.

21.     Effective January 10, 2018 Scientific Games—previously a Delaware Corporation—reincorporated in Nevada.  Upon the reincorporation in Nevada, the Corporation's Bylaws were amended to include a provision selecting Nevada state court as the appropriate forum for adjudication of disputes.  Section 10.01 of the Bylaws states:

> "[T]he Eighth Judicial District Court of Clark County, Nevada, shall be *the sole and exclusive forum for any actions, suits or proceedings, whether civil, administrative or investigative or that assert any claim or counterclaim* (a) brought in the name or right of the Corporation or on its behalf, (b) asserting a claim for breach of any fiduciary duty owed by any director, officer, employee or agent of the Corporation to the Corporation or the Corporation's stockholders, (c) *arising or asserting a claim arising pursuant to any provision of NRS Chapters 78 or 92A or any provision of the Articles of Incorporation or these Bylaws* or (d) asserting a claim governed by the internal affairs doctrine. . . . Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Section 10.01." (Emphasis added.)

22.     This duly-enacted Bylaw was approved by shareholder vote on November 27, 2017, and is binding on Defendants.

23.     Venue is proper pursuant to NRS 13.010 and/or NRS 13.040.

24.     This matter is properly designated as a business court matter and assigned to the Business Docket under EDCR 1.61(a) as the claims alleged herein are based on or will require decision under NRS Chapters 78-92A.

**ALLEGATIONS COMMON TO ALL CLAIMS**

A.    **Article VIII and Bylaw Section 8.06 Empower the Corporation and the Board To Protect Scientific Games' Business Operations, Which Depend on Obtaining and Maintaining Licenses and Other Regulatory Approvals.**

25.    The nature of Scientific Games' business requires it to obtain and maintain licenses, permits and other approvals in many of the 400+ jurisdictions worldwide in which it operates.   The gaming and lottery industries are subject to extensive and evolving regulation that includes oversight of gaming-related operators, suppliers, manufacturers and distributors, as well as their significant shareholders, officers, directors and principal employees.   Regulators continually review many facets of gaming companies' business and operations, including their ownership, financial stability, integrity and business experience.   Licensed gaming entities like Scientific Games have an ongoing obligation to provide gaming regulators with information relevant to suitability.

26.    Any failure by a gaming company like Scientific Games to receive a license, or any loss of a license that such a company holds, would be expected to have a material adverse impact on that company's operations, cash flow and financial condition, as well as on its shareholders and other stakeholders.   Accordingly, Scientific Games and its Board take very seriously the Corporation's and its shareholders' compliance with regulatory oversight.

27.    To that end, at an annual meeting of shareholders on June 7, 2007, Scientific Games presented, and its shareholders approved, Article Tenth to the Restated Certificate of Incorporation of the Corporation, which was duly adopted the same day.

According to its preamble, Article Tenth was adopted

"[t]o enable the Corporation or any [a]ffiliate . . . to secure and maintain in good standing all licenses, contracts, franchises and other regulatory approvals related to the operation of gaming and related businesses now or hereafter engaged in by the Corporation or any [a]ffiliate within or without the United States of America, which licenses, contracts, franchises or other approvals are conditioned upon some or all of the holders of the Corporation's [s]ecurities . . . possessing prescribed qualifications."

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222   •   Fax: 702.382.0540
www.campbellandwilliams.com

Subsequently, at a special meeting of shareholders on November 27, 2017, Scientific Games presented and its shareholders approved the Certificate of Amended and Restated Articles of Incorporation of Scientific Games Corporation.  The Amended and Restated Articles of Incorporation included Article VIII, which reflects the former Article Tenth.

28.     Paragraph (A)(2) of Article VIII provides as follows:

"If any person that holds [s]ecurities of the Corporation is determined to be a Disqualified Holder . . . then, if the Corporation so elects in its sole discretion . . . the Corporation may redeem any or all such [s]ecurities of the Corporation . . . at a price equal to the Redemption Price."

29.     The term "Disqualified Holder" is defined in Paragraph (M)(2):

"[A]ny record or beneficial holder of the Corporation's [s]ecurities: (i) who is requested or required pursuant to any [g]aming [l]aw to appear before, or submit to the jurisdiction of, or file an application with, or provide information to, any [g]aming [a]uthority and either refuses to do so or otherwise fails to comply with such request or requirement within a reasonable period of time, (ii) who has withdrawn or requested the withdrawal of a pending application for any [g]aming [l]icense from any [g]aming [a]uthority in anticipation of such person being denied such [g]aming [l]icense or receiving such [g]aming [l]icense subject to materially burdensome or unacceptable terms or conditions, (iii) who is determined or shall have been determined by any [g]aming [a]uthority not to be suitable or qualified with respect to owning or controlling [s]ecurities or securities of an [a]ffiliate of the Corporation, or (iv) whose ownership or control of [s]ecurities may result, in the judgment of the Board of Directors, in the failure of the Corporation or any of its [a]ffiliates to obtain, maintain, retain, renew or qualify for a [g]aming [l]icense, or cause or otherwise result in the imposition of any materially burdensome or unacceptable terms or conditions on any [g]aming [l]icense."

30.     Under Paragraph (F) of Article VIII, the Board "shall have the power to determine, on the basis of information known to the Board after reasonable inquiry, all questions arising under [] ARTICLE VIII, including, without limitation [] whether a person is a Disqualified Holder . . . .  Any such determination shall be binding and conclusive on all such persons".  The Board's ability to conduct a "reasonable inquiry" clearly depends on the cooperation of those shareholders who may be the subject of such an inquiry.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  ●  Fax: 702.382.0540
www.campbellandwilliams.com

31.     Since at least 2003, the Board has also had the express authority to make, alter or repeal the Bylaws of the Corporation.  This authority was specified in Article Sixth of the Restated Certificate of Incorporation, adopted on March 20, 2003, which provides:

> "In furtherance and not in limitation of the powers conferred by statute, the Board of Directors is expressly authorized to make, alter or repeal the Bylaws of the [C]orporation."

32.     Sylebra purchased most—if not all—of its interest in Scientific Games well after this provision was first enacted.

33.     Pursuant to this express authority, in June 2017, the Board adopted Section 8.06 of the Bylaws to further confirm the duty of a shareholder to provide basic information relevant to a suitability analysis.  That section provides, "To enable the Corporation or any of its affiliates to secure, maintain in good standing and renew all licenses, contracts, franchises and other regulatory approvals related to the operation of gaming and related businesses now or hereafter engaged in by the Corporation or any of its affiliates within or without the United States of America, *the Corporation will conduct a suitability analysis of each Significant Stockholder . . . and intends to require all relevant information pertaining to suitability and/or qualification*, as those terms are commonly understood in gaming laws applicable to the Corporation, from such Significant Stockholder in connection therewith." (Emphasis added.)

34.     A "Significant Stockholder" is defined under Section 8.06 as any stockholder who owns five percent or more of stock in the Corporation.  Sylebra is a Significant Stockholder pursuant to this definition.

35.     Section 8.06 was approved by a shareholder vote on November 27, 2017.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com

**B.** **The Pennsylvania Regulator Requires Sylebra to File for Principal Licensure and, Along with its Principals and Affiliates, be Subject to a Full Background Investigation and Vetting, and Sylebra Attempts to Withdraw the Application for Principal Licensure and Avoid the Full Background Investigation and Vetting.**

36.     On November 16, 2015, Sylebra HK disclosed in a filing with the SEC that the Sylebra Master Fund and other undisclosed advisory clients of Sylebra HK held 8,250,000 shares of Scientific Games common stock, at the time a 9.57% ownership interest in Scientific Games.

37.     Bally Gaming is licensed by the Pennsylvania Regulator as a manufacturer.  It is a requirement to be licensed by the Pennsylvania Regulator as a manufacturer that each "principal" of Bally Gaming undergo a background investigation and be found suitable.  Under Pennsylvania law, any individual or any entity that holds a 5% or greater indirect ownership interest in a licensed manufacturer is considered a "principal" and must be licensed as a principal or principal entity in order to hold their indirect ownership interest in the licensed manufacturer.

38.     Pennsylvania law allows a principal entity who meets the Pennsylvania definition of institutional investor to file an Institutional Investor Notice of Ownership Form and Passive Investor Affirmation with the Pennsylvania Regulator instead of applying for principal licensure, which requires disclosure of detailed information including ownership information.

39.     Seeking to avoid applying for principal licensure as would otherwise be required by Pennsylvania law, on December 15, 2015, Sylebra HK filed an Institutional Investor Notice of Ownership Form with the Pennsylvania Regulator.   On December 24, 2015, the Pennsylvania Regulator granted Sylebra HK institutional investor status.

40.     On or about February 16, 2016, Sylebra publicly reported a 6.71% ownership interest in a company known as QIWI plc ("QIWI").  As with the investment in Scientific Games, the bulk of the shares of QIWI were held by Sylebra Master Fund (equal to a 5.06% ownership interest in QIWI on the part of Sylebra Master Fund in its own right), with the balance of the QIWI shares held by other undisclosed advisory clients of Sylebra HK.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 ● Fax: 702.382.0540
www.campbellandwilliams.com

41.     By letter dated April 27, 2017, the Pennsylvania Regulator advised Bally Gaming and Scientific Games that it had become aware of the fact that Sylebra HK was a major shareholder not just of Scientific Games, but also of QIWI.  The Pennsylvania Regulator further advised Bally Gaming and Scientific Games that serious derogatory information had come to its attention regarding QIWI, including that QIWI "may have been involved in a number of alleged illegal activities overseas involving terrorism and violating Russian gaming regulations".

The Pennsylvania Regulator continued:

"Based on Sylebra[ HK]'s financial interests in Qiwi and this derogatory information, [the Pennsylvania Regulator] has determined that Sylebra [HK] will need to file a Principal Entity license application with the [Pennsylvania Regulator] in order that a determination may be made as to Sylebra[ HK]'s suitability to maintain its association with . . . Scientific Games Corporation."

42.     Upon receiving this letter, Scientific Games immediately sought to ensure that the Pennsylvania Regulator's demand and request were fulfilled.

43.     Scientific Games forwarded to Defendants the Pennsylvania Regulator's April 27, 2017 letter, and instructed them promptly to follow the Pennsylvania Regulator's instructions.

44.     In that letter to Defendants, Scientific Games also explained that "[f]ailure to comply with the [Pennsylvania Regulator's] . . . instructions may adversely affect our licensing status with the [Pennsylvania Regulator]. . . .   An adverse action from or further investigation by the [Pennsylvania Regulator] would, in turn, jeopardize our ability to obtain, maintain, renew or qualify for a license or other regulatory approval from other gaming authorities and may expose you to liability."  Scientific Games concluded that "the Corporation reserves all rights under applicable law, including under its certificate of incorporation."

45.     By letter dated May 4, 2017, Defendants informed Scientific Games, among other things, that "[u]ntil this regulatory issue with the [Pennsylvania Regulator] is cleared up,

Sylebra [HK] has placed the stock of Qiwi and Scientific Games on its restricted list, and does not intend to trade in such stock."

46.     On May 15, 2017, the Pennsylvania Regulator wrote to Scientific Games that it had "independently confirm[ed] that Sylebra [HK] has divested itself of all but" "0.88% of Qiwi's outstanding shares," that the Pennsylvania Regulator "accept[s] Sylebra [HK]'s willingness to divest itself of its remaining Qiwi shares," and that "Sylebra [HK] provided all requested documentation and confirmations in response to our inquiry."  The Pennsylvania Regulator stated, however, that it "ha[d] not yet made a final determination as to whether it will be necessary for Sylebra [HK] to file a Principal Entity license application at this time and, as a result, this subject matter remains under review."

47.     During the Pennsylvania Regulator's review, questions arose as to whether Sylebra HK should have ever been granted institutional investor status.  In particular, OEC was concerned with whether the regulatory regime Sylebra HK was subject to in Hong Kong was substantially similar to the regulatory regime Sylebra HK would be subject to as a regulated investment adviser or investment company in the United States.

48.     As a result, by letter dated June 21, 2017, the Pennsylvania Regulator required that, on or before July 10, 2017, Sylebra HK either file a principal entity license application or a petition seeking a determination by the PGCB that the laws of Hong Kong to which Sylebra HK is subject are substantially similar to either or both the United States Investment Company Act of 1940 and/or the Investment Advisers Act of 1940.

49.     Instead of applying for principal licensure or registering with the SEC as an investment adviser, on July 10, 2017, Sylebra HK filed a petition with the Pennsylvania Regulator seeking a ruling from the PGCB that the regulation of Sylebra HK pursuant to relevant Hong Kong law is substantially similar to regulation under either or both of the United States Investment Company Act of 1940 and/or the Investment Advisers Act of 1940.  Sylebra HK also requested a

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222   •   Fax: 702.382.0540
www.campbellandwilliams.com

ruling from the PGCB that it was "properly granted" institutional investor "status" on December 24, 2015, that it had met its burden of establishing that it "properly" holds institutional investor status under Pennsylvania law, and confirmation that, as an institutional investor, Sylebra HK is not required to apply for principal licensure.

50.    Because Bally Gaming disagreed with the positions advanced by Sylebra HK in the petition and because, ultimately, resolution of the Sylebra HK petition had a direct impact on Bally Gaming's license, on August 14, 2017, Bally Gaming moved to intervene in connection with the Sylebra petition.  In response to the Bally Gaming intervention application, OEC opined that Bally Gaming is "a necessary party to these proceedings" and OEC took the position that developing a comprehensive evidentiary record was a necessity and that the materials submitted by Bally Gaming in connection with the intervention application would provide additional insight and assist the PGCB in determining the issues advance by Sylebra HK in the petition.

51.    Beginning with a pre-hearing conference on December 7, 2017, the parties subsequently engaged in a lengthy and extensive hearing process, which included the submission of competing expert reports, numerous exhibits and documents and hearing briefs.  As part of this process, OEC concluded that Sylebra HK was not regulated under applicable Hong Kong law substantially similar to how it would be regulated by the SEC under the Investment Company Act of 1940 and/or the Investment Advisers Act of 1940.  OEC also concluded that Sylebra HK had failed to meet its burden of establishing that it was properly determined to hold institutional investor status under Pennsylvania law or that it was properly granted institutional investor status on December 24, 2015, and that Sylebra HK and its affiliates and principals should be required to apply for principal licensure and be subject to a full background investigation and vetting.

52.    On November 9, 2018, the PGCB notified the parties that it would rule on the Sylebra HK petition at its November 28, 2018 meeting.  That date was subsequently adjourned to December 19, 2018, as a result of efforts to resolve the matter that were ultimately unsuccessful.

53.     On December 13, 2018, less than one week before the PGCB's December 19, 2018 hearing, and after forcing the parties to engage in an 18-month hearing process, without any prior consultation, discussion or notice, Sylebra HK advised the PGCB that it was withdrawing the Sylebra petition.  Sylebra HK also advised the PGCB that, on December 11, 2018, it had filed principal entity license applications for Sylebra HK and Sylebra Cayman.

54.     Then, in yet another reversal, on May 9, 2019, and without notice to Bally Gaming, Sylebra HK filed another petition with the Pennsylvania Regulator seeking to withdrawal the applications for principal licensure, purportedly on the basis that, on April 6, 2019, it was approved by the SEC as a registered investment adviser in accordance with the Investment Advisers Act of 1940.  In connection therewith, Sylebra HK filed an Amended Institutional Investor Notice of Ownership Form with the Pennsylvania Regulator seeking a waiver of the principal licensure requirement.

55.     On May 16, 2019, Bally Gaming requested a ruling from the Pennsylvania Regulator that it had a right to be heard in connection with the Sylebra HK withdrawal petition based upon PGCB's prior intervention ruling.  On May 22, 2019, the Pennsylvania Regulator issued an Order confirming that, because of the related nature of the matters, Bally Gaming is deemed an intervener with full party status in connection with the Sylebra withdrawal petition and proceedings concerning the withdrawal application—which Bally Gaming believes is inappropriate—are continuing.

56.     After causing the parties to engage in an 18-month hearing process seeking to avoid applying for principal licensure, the Sylebra HK withdrawal petition is yet another effort by Sylebra to circumvent the principal licensure requirement in Pennsylvania and avoid the full background investigation and vetting recommended by OEC.  As a result, two years after the Pennsylvania Regulator first raised the issue of determining Sylebra HK's suitability to maintain its association with Scientific Games, Plaintiffs find themselves in another hearing process while, at the

same time, Sylebra still refuses to provide the information necessary to allow Scientific Games to conduct a suitability analysis pursuant to Section 8.06 of the Bylaws.

**C.     The Ontario, Ohio, Virgin Islands, Mississippi, Malta and Indiana Regulators also Express Interest in Defendants and Require Certain Disclosures from Defendants.**

57.     The Ontario Regulator, the Ohio Regulator, the Virgin Islands Regulator, the Mississippi Regulator, the Malta Regulator and the Indiana Regulator have all required submissions from Defendants related to qualification, suitability and licensing.  Of those regulators, the Ontario, Virgin Islands and Malta regulators maintain ongoing investigations into the qualification and suitability of Defendants to own Scientific Games stock.

58.     For example, on May 3, 2017, the Ontario Regulator issued a written demand to Scientific Games that Defendants submit to it an Enterprise Disclosure Form and Personal Disclosure Form with supporting documentation by May 19, 2017.

59.     Scientific Games immediately notified Defendants of this letter, instructing them:

(i)     "on or before May 19, 2017, [to] file an [Enterprise Disclosure Form] and supporting documents with the [Ontario Regulator];

(ii)    on or before May 19, 2017, [to] file [Personal Disclosure Forms] . . . for all 'Key Individuals' identified by Sylebra [HK] in the [Enterprise Disclosure Form]; and

(iii)   on or before May 19, 2017, [to] file a separate [Enterprise Disclosure Form] for any corporation or trust identified [by] Sylebra [HK] in the [Enterprise Disclosure Form]."

60.     Scientific Games emphasized to Defendants that any failure to comply with the Ontario Regulator's demands "may adversely affect our licensing status with the [Ontario Regulator]", and that

> "[any] adverse action taken by the [Ontario Regulator] would, in turn, jeopardize [Scientific Games'] ability to obtain, maintain, renew or qualify for a license or other regulatory approval from other gaming authorities and may expose you to liability.  As a result, the Corporation reserves all rights under applicable law, including under its certificate of incorporation."

61.     Scientific Games also explained to Defendants:

> "We and our industries (gaming and lottery) are subject to strict government regulation and we have a continuing duty to maintain suitability and eligibility in accordance with the gaming laws of the jurisdictions where we hold a license, as well as a continuing duty to provide full cooperation with the regulatory bodies which license and regulate us.  For these reasons, it is critical that Sylebra [HK] comply with the requirements and requests of both the [Pennsylvania Regulator] and the [Ontario Regulator]."

62.     On June 14, 2017, after twice informing Scientific Games that Sylebra HK's submissions were deficient, the Ontario Regulator informed Scientific Games that Sylebra HK had finally completed the required disclosure submission and that the Ontario Regulator had commenced its formal investigation concerning the submission, which is ongoing.

63.     On June 22, 2017, the Virgin Islands Regulator notified Scientific Games as follows:

> "Upon review of the compiled correspondence, Sylebra HK Company Limited and its affiliate, Sylebra Capital Management (collectively 'Sylebra') is required to file a license application with the Virgin Islands Casino Control Commission, which would be investigated by the Department of Justice's Division of Gaming Enforcement, into Sylebra's suitability to maintain its association with Bally Gaming, Inc., and its public traded holding company qualifier, Scientific Games Corporation."

64.     On July 27, 2017, the Virgin Islands Regulator notified Scientific Games, through counsel, that Sylebra HK "shall be required to be qualified in accordance with 32 V.I.C. §

Page 20 of 34

444 of the Act and Commission Regulations, in particular, but not limited to 32 V.I. R and Regulations § 444-1.17(a)(1)(iii) and (iv)."

65. The Virgin Islands Regulator further notified Scientific Games that Sylebra HK was instructed to:

1. "Submit a Casino Servicing Entity Gaming Related License Application on or before August 27, 2017[;]

2. Submit a Multi-Jurisdictional Personal History Disclosure form for each Key individual on or before August 27, 2017[; and]

3. These documents must be returned to the Commission within 30 days of receipt of this notice with the required license fees. This initial submission requirement is without prejudice to any other information or documentation that may be deemed necessary as part of the suitability investigation referenced below."

66. On May 11, 2018, the Malta Gaming Authority contacted the Corporation's wholly owned subsidiary, NYX Digital Gaming Limited, about "concerns [that] relate to Sylebra Capital Management Limited / Sylebra HK Company Limited" and requested documentation on "Sylebra HK Company Limited's complete [c]orporate [s]tructure (showing both any holding companies up to any major investors/UBOs, as well as any companies for whom Sylebra is an investor)." Further, the Malta Gaming authority requested "relevant [f]ounding [d]ocuments and [p]ersonal [d]ue [d]iligence documents to support" its first request. The Maltese review is still pending.

67. Although Sylebra has made limited submissions to each of the regulators in response to their requests, Sylebra has continued to evade making disclosures concerning its beneficial owners. With respect to the Ontario and Virgin Islands investigations specifically, Sylebra has sought institutional investor qualification waivers—despite the fact that the laws of both jurisdictions do not allow such a waiver of the submission requirement—to avoid making the required disclosures. Upon information and belief, Sylebra has not provided information regarding the beneficial owners of Sylebra Master Fund, which directly holds Scientific Games stock, or the

Page 21 of 34

identity of the investors in the Sylebra Master Fund feeder funds—Offshore Feeder and Onshore Feeder—to any of the jurisdictions.

68. Sylebra has also refused to share any of the information it has provided to the regulators with Scientific Games, despite the fact that any such submission could have a negative effect on Plaintiffs' licensing and good standing, especially if any submission was deficient, non-compliant or otherwise resulted in any form of disqualification determination by the applicable regulator.

**D.      Other Regulators Request Information and Updates from Scientific Games Regarding Defendants.**

69. In addition to the regulatory inquiries noted above, the Indiana Regulator, the New Jersey Regulator, the Connecticut Regulator, the Seneca Regulator, the Illinois Regulator, the Puerto Rico Regulator, the West Virginia Regulator, the Massachusetts Regulator, the Michigan Regulator and the Colorado Regulator have notified Scientific Games of their investigations into Sylebra or requested information about Sylebra from Scientific Games.

70. The Indiana Regulator, the New Jersey Regulator, the Alberta Regulator, the Maryland Regulator, the Mississippi Regulator, the Louisiana Regulator, the Washington State Regulator, the California Regulator, the Oregon Regulator, the Nova Scotia Regulator, the Alderney Regulator, Michigan Regulator, the United Kingdom Regulator and the Massachusetts Regulator have also requested that Scientific Games continue to update them about Sylebra, especially concerning any developments in the proceedings before the Pennsylvania Regulator.

71. For example, on May 4, 2017, the Indiana Regulator wrote to Scientific Games that

> "[t]here are allegations that a significant owner of Sci[entific] Games' outstanding stock . . . , Sylebra HK . . . , also owns stock issued by QIWI . . . .  There are further allegations that QIWI may have been involved in illegal activities and may have violated Russian gaming regulations."

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 ● Fax: 702.382.0540
www.campbellandwilliams.com

The Indiana Regulator, the letter continued,

"was established to ensure the public's trust and confidence through strict regulation of persons involved in gaming in Indiana.  The [Indiana Regulator] must uphold the integrity of gaming by ensuring that licensees are not affiliated with persons who do not meet the high standards for suitability."

72.    As a result, "[i]n light of the serious allegations made concerning Sylebra [HK] and QIWI", the Indiana Regulator

"require[d] Sci[entific] Games to provide the [Indiana Regulator] with specific information regarding any internal investigation Sci[entific] Games is conducting, including who is leading the investigation and any outside resources that are being utilized, a timeline for the investigation, and regular updates regarding the two aforementioned entities."

73.    Finally, the Indiana Regulator explained that, "[u]pon review of additional information, [it] may take further action", and that it "will also be monitoring the findings and actions of the [Pennsylvania Regulator] and other gaming regulatory bodies."

74.    On that same day, May 4, 2017, the New Jersey Regulator also wrote to Scientific Games concerning Defendants' investments in Scientific Games and QIWI, and requested certain information from the Corporation.

75.    On May 16, 2017, the Nova Scotia Regulator similarly requested that it "be updated regularly on the outcome of any further investigations [concerning Defendants' holdings of the Corporation's stock] in order to satisfy itself that there are no issues that would affect the continued eligibility of Scientific Games Corporation to remain a registered supplier under the Nova Scotia *Gaming Control Act* or that would otherwise adversely impact its current registration."

76.    Many of the regulators also continue to monitor the Pennsylvania hearing and investigation through direct contact with the Pennsylvania Regulator.

77.    In connection with almost all of the investigations, requests for information and requests for updates noted above, the regulators have asked for information from Plaintiffs regarding any suitability analysis Plaintiffs have conducted in connection with Defendants, which

Page 23 of 34

1  Plaintiffs have been unable to perform given Sylebra's continued refusal to provide the necessary

2  information.

3  **E.     Defendants Thwart Scientific Games' Ability to Conduct its Own Suitability Analysis**

4  **and to Obtain Critical Information that Regulators have Requested from Scientific**
   **Games.**

5

6          78.     Given the strict regulatory regime in which Scientific Games operates, the fact

7  that Defendants own nearly 10% of Scientific Games' stock, the fact that Defendants are not well-

8  known, U.S.-based institutional investors and have an unusual capital management structure, the

9  disclosures about Defendants' holdings in another entity associated with potential money-laundering

10 and terrorism, the regulatory inquiries that have been directed to Scientific Games concerning

11 Sylebra, and the fact that Scientific Games' ability to obtain or maintain licensure is at risk as a result

12 of Defendants' holdings, Scientific Games has repeatedly tried to conduct its own due diligence so

13 as to understand the nature of Defendants' business, ownership and holdings—consistent with the

14 Bylaws and the Charter—and to be in a position to make any required disclosures to regulators.

15

16         79.     Accordingly, and consistent with the inquiries of regulators around the world,

17 Scientific Games has taken steps over the previous years to try to gather information from Defendants

18 sufficient to determine whether Sylebra is a Disqualified Holder such that its continued ownership

19 stake in Scientific Games creates risk to the Corporation's core regulated gaming business.

20         80.     In a letter dated May 15, 2017, Scientific Games first requested from Sylebra

21 lists of:  Sylebra's limited partner investors, the identity of Sylebra's general partner, Sylebra's

22 affiliates, jurisdictions in which Sylebra is regulated, and companies in which Sylebra is an investor.

23 Scientific Games explained that this information was "necessary due diligence" for a company "as

24 heavily regulated as Scientific Games."

25

26         81.     On June 2, 2017, Scientific Games continued to request the necessary

27 information, and indicated that it was willing to enter into a non-disclosure or confidentiality

28

agreement with Sylebra in order to receive a list of its investors.  Scientific Games also reiterated its requests for information on Sylebra's affiliates and the jurisdictions in which Sylebra is regulated.

82.     In a letter dated June 17, 2017, Scientific Games reiterated that Sylebra had not yet provided information sufficient to allow Scientific Games to "satisfy its qualification and suitability analysis."  The Corporation again requested information regarding Sylebra's investors and affiliates, "in accordance with . . . the By-laws of the Company, as amended, as part of our continuing qualification and suitability analysis with respect to Sylebra."

83.     On June 28, 2017, after Sylebra had repeatedly refused to even tell Scientific Games who its investors were, Scientific Games offered to instead agree that Sylebra could disclose its investor, affiliate, and other ownership information to OEC for the regulator's "review and investigation and any suitability/qualification process conducted in connection therewith."  While Sylebra suggested that it was going to provide the Pennsylvania Regulator with information about its investors, this turned out to be yet another procedural game.  As it turned out, Sylebra was only willing to provide the Pennsylvania Regulator with information concerning certain of its entities and, most importantly, had no intention of providing any information to the Pennsylvania Regulator about the investors in Sylebra Master Fund—the entity that *actually holds Scientific Games' shares*—or the investors in the Sylebra Master Fund feeder funds, Offshore Feeder and Onshore Feeder.  That is the most critical information necessary for a suitability analysis, and to date there is no evidence that any of that information has been provided to a single regulator anywhere in the world.

84.     Rather than provide the pertinent information to the Pennsylvania Regulator, Sylebra instead went forward with the lengthy hearing process detailed above, including the present petition to the Pennsylvania Regulator to withdrawal the principal licensure applications Sylebra eventually made and avoid the full background investigation and vetting recommended by OEC. What makes the withdrawal petition particularly frustrating and circumspect is that it is based upon Sylebra HK registering with the SEC as an investment adviser, a step Sylebra HK could have taken

at any time during the 18-month hearing process wherein Sylebra HK argued that it was regulated in Hong Kong substantially similar to how it would be regulated by the SEC as a registered investment adviser.  Instead, Sylebra HK avoided a PGCB ruling on the issue, withdrew its prior petition on the eve of a ruling by PGCB, and subsequently pursued registration with the SEC as an investment adviser solely to relitigate the principal licensure issue and avoid disclosing information about its ownership.

85.     In April 2019, Scientific Games also became aware of what appeared to be potentially significant changes in Sylebra's holdings, which may have an impact on the ownership of Scientific Games' shares, including: (i) changes to the ownership of Sylebra Cayman and management of Sylebra Master Fund; (ii) the transfer of 1,333,287 shares of Scientific Games' common stock from Sylebra advisory clients to Sylebra Master Fund; (iii) Sylebra HK registering with the SEC as an investment adviser; (iv) a reduction in the gross asset value of Sylebra Master Fund; (v) a significant reduction in the number of beneficial owners of Sylebra Master Fund; (vi) a reduction in the percentage of Master Fund owned by Sylebra HK "related persons"; (vii) a significant change in the percentage of Sylebra Master Fund owned by non-U.S. persons; (viii) a shift in the location of all Sylebra Master Fund prime brokers from London to Hong Kong; (ix) a shift in the location of all Sylebra Master Fund Custodians from London to Hong Kong; (x) a change in Sylebra Master Fund administrators; and (xi) the filing of Part 2A of Form ADV Firm Brochure with the SEC.

86.     As a direct result of Sylebra's latest attempts to avoid providing the promised information about its investors to the Pennsylvania Regulator and the apparent changes to Sylebra's ownership and structure, combined with all the ongoing investigations described above, in a letter dated May 13, 2019, Scientific Games once again requested that Sylebra disclose information necessary to conduct a suitability analysis.  Scientific Games requested from Sylebra:  a list of investors in each Sylebra Fund; a list of investors whose ownership in any Sylebra Fund has changed

since January 1, 2016; documents from any gaming authority concerning Sylebra's suitability to have any ownership interest in a regulated gaming company; confirmation that Sylebra has complied with the orders of any gaming authority; confirmation that Sylebra has not withdrawn any applications for a gaming license on the belief that such application would be denied or subject to burdensome or unacceptable conditions; and documents sufficient to show that Sylebra has undertaken steps to ensure compliance with anti-money laundering rules and regulations, as well as the FCPA and OFAC regulations.

87.     Sylebra responded to this letter on June 13, 2019.  In its response, Sylebra did not provide any material new information.  Instead, Sylebra argued that such information is unnecessary, inappropriate or has already been provided in sufficient form and to a sufficient extent to the relevant regulators.  None of this is true.  As but one example, Sylebra claimed in its June 13 letter that it had already provided the necessary and relevant information concerning its investors to the Pennsylvania Regulator years ago.  However, as alleged above and as Sylebra full well knows, any such information did not include any details concerning the investors in critical Sylebra entities: Sylebra Master Fund, which is the entity that actually holds the Scientific Games shares, or Offshore Feeder and Onshore Feeder, the entities through which investors invest in Sylebra Master Fund.[1]

88.     At this point, Defendants have now spent two years refusing to provide Scientific Games with the information it has duly and appropriately requested, and Defendants were obligated to provide, under Article VIII and Section 8.06.  All the while, Plaintiffs have been dealing with ongoing investigations into exactly who and what Sylebra is, any one of which could have a negative impact on the Plaintiffs and their shareholders.  As a result of Defendant's obstruction and refusals, the Corporation has not even been able to determine who has actually invested in Sylebra

---

[1] Even if Defendants had provided pertinent information to the Pennsylvania Regulator in 2017, there have been significant changes to the beneficial owners of the Sylebra Funds since that time that would alone justify additional scrutiny, especially given the lack of transparency with which these changes were effectuated.

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 ● Fax: 702.382.0540
www.campbellandwilliams.com

and whether any of those individuals or entities are affiliated with illegal or otherwise unsuitable activity.

89.     This black-box approach continues to present risk to the Corporation's regulatory status around the world, particularly given the previous disclosures of Sylebra's association with an entity allegedly engaged in supporting terrorism and money-laundering.

90.     By failing to permit Scientific Games to conduct a suitability analysis, Defendants have breached the explicit provisions of Article VIII and Section 8.06.  Without relief from this Court, it is clear Sylebra will continue to obstruct the Corporation from conducting its suitability analysis, an essential process that protects the Corporation's economic interests in the highly regulated gaming industry. Indeed, many regulators have directed their initial demands of Defendants to *Scientific Games*, rather than to Defendants themselves.  Any revocation or other adverse action with respect to Plaintiffs' licenses or regulatory approvals would impose untold harm on them by making it difficult or even impossible for Plaintiffs to operate their business.

91.     It is time for Sylebra to be held to its obligations as a Significant Shareholder. Scientific Games is entitled to a declaration that it is entitled to obtain from Defendants information necessary to conduct its suitability analysis and Sylebra has breached Section 8.06 of the Bylaws and Article VIII of the Charter, as well as the duty of good faith and fair dealing, and an order requiring Sylebra to provide the information necessary for Scientific Games to conduct its suitability analysis.

92.     Because Defendants' actions necessitated the present suit, they are also liable to Scientific Games for the Corporation's costs and attorneys' fees on pursuing this Action, pursuant to Paragraph (H) of Article VIII.

## COUNT I

### (Declaratory Relief)

93.     Plaintiffs repeat and reallege the allegations of paragraphs 1 through 92 as if fully set forth herein.

94.     This Court has the authority to issue declaratory relief pursuant to NRS 30.030.

95.     There exists a justiciable controversy between Plaintiffs and Defendants because the parties' rights and obligations under Article VIII of the Charter and Section 8.06 of the Bylaws are in dispute.

96.     Article VIII is a valid and duly adopted provision of Scientific Games' Charter, the terms of which are binding on the Corporation and its shareholders, including Defendants.

97.     Section 8.06 is a valid and duly adopted material term of the Corporation's Bylaws that gives the Corporation the power, *inter alia,* to conduct a suitability analysis of Significant Shareholders, as defined in that same section.

98.     Section 8.06 states that the Corporation will require Significant Shareholders to provide all relevant information necessary to conduct the Suitability Analysis.

99.     Section 8.06 was adopted with the fundamental purpose of allowing the Corporation to effectuate its obligations and rights under Article VIII of the Charter, both valid contractual provisions binding on the Defendants.

100.     Plaintiffs have a legally protectible interest in enforcing their rights under Article VIII of the Charter and Section 8.06 of the Bylaws.

101.     The parties' interests are adverse with respect to this justiciable controversy and the dispute is ripe for determination.

102.     Plaintiffs desire a judicial determination as to the parties' rights and obligations under the Bylaws and Charter, and a declaration that Plaintiffs are entitled to obtain from Defendants information necessary to conduct their suitability analysis.

103.     A judicial determination is necessary in order for Plaintiffs to confirm their rights and obligations under Article VIII of the Charter and Section 8.06 of the Bylaws.  Plaintiffs' relationship with Defendants is ongoing, and a judicial determination would inform the parties' future conduct.

## COUNT II

### (Breach of Contract)

104. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 92 as if fully set forth herein.

105. Article VIII is a valid and duly adopted provision of Scientific Games' Charter, the terms of which are binding on the Corporation and its shareholders, including Defendants.

106. Section 8.06 is a valid and duly adopted material term of the Corporation's Bylaws that gives the Corporation the power, *inter alia,* to conduct a suitability analysis of Significant Shareholders, as defined in that same section.

107. Section 8.06 states that the Corporation will require Significant Shareholders to provide all relevant information necessary to conduct the Suitability Analysis.

108. Section 8.06 was adopted with the fundamental purpose of allowing the Corporation to effectuate its obligations and rights under Article VIII of the Charter, both valid contractual provisions binding on the Defendants.

109. Pursuant to 8.06, the Corporation requested information from Defendants relevant to a suitability determination on several separate occasions, most recently on May 13, 2019. Defendants' failure to comply with these requests constituted material breaches of Article VIII and Section 8.06. Defendants' breaches precluded the Corporation from protecting itself from the regulatory risk it may face as a result of Defendants' misconduct, thereby causing damage to the Corporation.

110. Scientific Games has fulfilled and continues to fulfill its obligations under the Bylaws.

111. Unless Defendants are required to provide to Plaintiffs the necessary information required by Section 8.06 of the Bylaws and Article VIII of the Charter, Plaintiffs will continue to be immediately and irreparably harmed by placing their licenses and regulatory approvals

necessary to operate their business in jeopardy. Neither Defendants nor the public will be harmed if the requested relief is granted since the order sought would merely require Defendants to comply with their existing obligations.

112.    Granting the requested relief is also in the public interest because the public has an overriding interest in maintaining the integrity of the casino and casino service industry licensing process, and ensuring that licensees and their owners are fully and completely vetted in accordance with the governing statutes and regulations.

113.    As a direct and proximate result of Defendants' breaches of Scientific Games' Charter and Bylaws, Plaintiffs have been damaged in an amount greater than $15,000. These damages include special damages in the form of attorney's fees, investigative costs and other expenses related to Defendants' breaches.

114.    Plaintiffs have been forced to hire an attorney to prosecute this action and therefore seeks recovery of their attorney's fees and court costs.

## COUNT III

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

115.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 92 as if fully set forth herein.

116.    Defendants owed Plaintiffs a duty of good faith and fair dealing in connection with Scientific Games' Charter and Bylaws, as entered and subsequently modified. Defendants owed a duty to make good faith efforts to comply with these contracts and to not make representations or to take actions that would deprive Scientific Games of the benefits of these contracts.

117.    Defendants' conduct breached its covenant of good faith and fair dealing. Defendants continued to invest in Scientific Games while failing to comply with the Charter and Bylaws so that Scientific Games would be unable to perform its independent suitability analysis and

comply with requests by regulatory agencies. Defendants engaged in such conduct despite knowingly investing in a company in a highly regulated industry.

118.    This conduct has deprived Plaintiffs of the benefits of their agreements with the Defendants.

119.    Unless Defendants are required to provide to Plaintiffs the necessary information required by Section 8.06 of the Bylaws and Article VIII of the Charter, Plaintiffs will continue to be immediately and irreparably harmed by placing their licenses and regulatory approvals necessary to operate their business in jeopardy. Neither Defendants nor the public will be harmed if the requested relief is granted since the order sought would merely require Defendants to comply with their existing obligations.

120.    Granting the requested relief is also in the public interest because the public has an overriding interest in maintaining the integrity of the casino and casino service industry licensing process, and ensuring that licensees and their owners are fully and completely vetted in accordance with the governing statutes and regulations.

121.    As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Plaintiffs have been damaged in an amount greater than $15,000. These damages include special damages in the form of attorney's fees, investigative costs and other expenses related to Defendants' breaches.

122.    Plaintiffs have been forced to hire an attorney to prosecute this action and therefore seeks recovery of their attorney's fees and court costs.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment and relief against Defendants as follows:

a.     The Court determine that the unlawful conduct alleged herein, including, but not limited to, the Defendants' failure to comply with Section 8.06 and Article VIII constituted a breach of contract under the laws of the State of Nevada;

b.     The Court determine that the unlawful conduct alleged herein, including, but not limited to, the Defendants' failure to comply with Section 8.06 and Article VIII constituted a breach of the implied covenant of good faith and fair dealing under the laws of the State of Nevada;

c.     The Court declare that Plaintiffs are entitled to obtain from Defendants the information requested in connection with the suitability analysis to be performed pursuant to Section 8.06 and Article VIII;

d.     The Court require that Defendants comply with Section 8.06, Article VIII and the duty of good faith and fair dealing, and provide Plaintiffs with the requested information to enable Plaintiffs to conduct their suitability analysis;

e.     Defendants be ordered to indemnify Plaintiffs for any and all direct and indirect costs, including attorneys' fees, incurred by Plaintiffs or any of their affiliates as a result of Defendants' failure to comply with Section 8.06 and Article VIII, including costs and legal fees incurred by Plaintiffs in connection with the present suit; and

f.      Granting Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted,
CAMPBELL & WILLIAMS

DATED:      June 14, 2019              By:      /s/ *Philip R. Erwin*
                                                J. COLBY WILLIAMS, ESQ. (5549)
                                                jcw@cwlawlv.com
                                                PHILIP R. ERWIN, ESQ. (11563)
                                                pre@cwlawlv.com
                                                700 South Seventh Street
                                                Las Vegas, Nevada 89101
                                                Telephone: (702) 382-5222
                                                Facsimile: (702) 382-0540

                                                CRAVATH, SWAINE & MOORE, LLP
                                                KEVIN J. ORSINI, ESQ. (*pro hac vice* forthcoming)
                                                korsini@cravath.com
                                                CHRISTINA N. BARREIRO, ESQ. (*pro hac vice* forthcoming)
                                                cbarreiro@cravath.com
                                                825 Eighth Avenue
                                                New York, New York, 10019
                                                Telephone: (212) 474-1000
                                                Facsimile: (212) 474-3700

                                                DUANE MORRIS LLP
                                                HERSH KOZLOV, ESQ. (*pro hac vice* forthcoming)
                                                hkozlov@duanemorris.com
                                                GILBERT L. BROOKS, ESQ. (*pro hac vice* forthcoming)
                                                gbrooks@duanemorris.com
                                                1940 Route 70 East, Suite 100
                                                Cherry Hill, New Jersey 08003-2171
                                                Telephone: (856) 874-4200
                                                Facsimile: (856) 424-4446

                                                *Attorneys for Plaintiffs*

# EXHIBIT A

## AMENDED AND RESTATED BYLAWS
## OF
## SCIENTIFIC GAMES CORPORATION

### ARTICLE I
### Offices, Corporate Seal

Section 1.01   **Offices**. Scientific Games Corporation (the "**Corporation**") shall have a registered office, a principal office and such other offices as the board of directors of the Corporation (the "**Board of Directors**") may determine.

Section 1.02   **Corporate Seal**. There shall be no corporate seal.

### ARTICLE II
### Meetings of Stockholders

Section 2.01   **Place and Time of Meetings**. Meetings of the stockholders may be held at such place, on such date and at such time as may be designated by the Board of Directors.

Section 2.02   **Annual Meetings**. The annual meeting of the stockholders of the Corporation shall be held at such place, on such date and at such time as designated by the Board of Directors. The purpose of this meeting shall be for the election of directors and for the transaction of such other business as may properly come before the meeting.  Except as otherwise restricted by the articles of incorporation of the Corporation (as amended or amended and restated from time to time, the "**Articles of Incorporation**") or applicable law, the Board of Directors may postpone, reschedule or cancel any annual meeting of stockholders.

Section 2.03   **Special Meetings**. Special meetings of the stockholders for any purpose or purposes shall be called by the Secretary at the written request of a majority of the total number of directors, by the Chairman of the Board, by the President or by the stockholders owning a majority of the shares outstanding and entitled to vote. Such request shall state the purpose or purposes of the proposed meeting. Business transacted at any special meeting shall be limited to the purposes stated in the notice.   Except as otherwise restricted by the Articles of Incorporation or applicable law, the Board of Directors may postpone, reschedule or cancel any special meeting of stockholders.

Section 2.04   **Quorum; Adjourned Meetings**. The holders of a majority of the shares outstanding and entitled to vote present in person or by proxy (regardless of whether the proxy has authority to vote on all matters) shall constitute a quorum for the transaction of business at any annual or special meeting. If a quorum is not present at a meeting, those present shall adjourn to such day as they shall agree upon by majority vote. Notice of any adjourned meeting need not be given if the time and place thereof are announced at the meeting at which the adjournment is taken. However, if a new record date is fixed for the adjourned meeting, notice of the adjourned meeting must be given to each stockholder of record as of the new record date. At adjourned meetings at which a quorum is present, any business may be transacted which might have been transacted at the meeting as originally noticed. If a quorum is present, the stockholders may continue to transact business until adjournment notwithstanding the withdrawal of enough stockholders to leave less than a quorum.

Section 2.05   **Organization**. At each meeting of the stockholders, the Chairman of the Board or in his or her absence the President or in his or her absence the chairman chosen by a majority of the voting power of the stockholders present in person or proxy shall act as chairman; and the Secretary of the Corporation, or in his or her absence an Assistant Secretary, or in his or her absence any person whom the chairman of the meeting shall appoint, shall act as secretary of the meeting.

Section 2.06   **Voting**. Each stockholder of the Corporation entitled to vote at a meeting of stockholders shall be entitled to one vote in person or by proxy for each share of stock having voting rights held by such stockholder and registered in his, her or its name on the books of the Corporation. Upon the request of any stockholder present in person or by proxy at any meeting of the stockholders and entitled to vote at such meeting, or if directed by the chairman of the meeting in his or her discretion, the vote on any question before a meeting or the election of directors shall be by written ballot. All questions at a meeting shall be decided by a majority vote of the number of shares entitled to vote represented at the meeting at the time of the vote except where otherwise required by statute, the Articles of Incorporation or these Amended and Restated Bylaws (as amended or amended and restated from time to time, the "**Bylaws**"). For the election of directors, the persons receiving the largest number of votes cast (up to and including the number of directors to be elected) shall be directors.

Section 2.07   **Inspectors of Election**. At each meeting of the stockholders, the chairman of such meeting may appoint two inspectors of election. Each inspector of election so appointed shall first subscribe an oath or affirmation to execute the duties of an inspector of election at such meeting with strict impartiality and according to the best of his or her ability. Such inspectors of election, if any, may (a) ascertain the number of shares outstanding and the voting power of each; (b) determine the number of shares represented at a meeting and the validity of the proxies or ballots; (c) count all votes and ballots; (d) determine any challenges made to any determination made by the inspectors; (e) certify in a report in writing to the secretary of such meeting the determination of the number of shares represented at the meeting and the results of all votes and ballots. An inspector of election need not be a stockholder of the Corporation, and any officer or employee of the Corporation may be an inspector of election on any question other than a vote for or against his or her election to any position with the corporation or on any other question in which he or she may be directly interested.

Section 2.08   **Notices of Meetings and Consents**. Except as otherwise provided by the Articles of Incorporation or by the Nevada Revised Statutes (as amended from time to time, the "**NRS**"), a written notice of each annual and special meeting of stockholders shall be given not less than 10 nor more than 60 days before the date of such meeting to each stockholder of record of the Corporation entitled to vote at such meeting by delivering such notice of meeting to such stockholder personally or depositing the same in the United States mail, postage prepaid, directed to him at the post office address shown upon the records of the Corporation. Service of notice is complete upon mailing. Every notice of a meeting of stockholders shall state the place, date and hour of the meeting, the means of electronic communication, if any, by which the stockholder or the proxies thereof shall be deemed to be present and vote and, in the case of a special meeting the purpose or purposes for which the meeting is called.  The notice shall be delivered in accordance with, and shall contain or be accompanied by such additional

2

information as may be required by, the NRS, including, without limitation, NRS 78.379, 92A.120 or 92A.410

Section 2.09    **Proxies**. Each stockholder entitled to vote at a meeting of stockholders may authorize a proxy to represent him at the meeting by an instrument executed in writing. Each such proxy shall be valid until its expiration or revocation in a manner permitted by the laws of the State of Nevada. A proxy may be irrevocable if it states that it is irrevocable and, if, and only as long as, it is coupled with an interest sufficient to support an irrevocable power. Subject to the above, any proxy may be revoked if an instrument or transmission revoking it or a properly created proxy bearing a later date is filed with or transmitted to the Secretary or another person appointed by the Corporation to count the votes of stockholders and determine the validity of proxies and ballots, or, in the case of a meeting of stockholders, the stockholder revokes the proxy by attending the meeting and voting the stockholder's shares in person, in which case, any vote cast by the person or persons designated by the stockholder to act as a proxy or proxies must be disregarded by the Corporation when the votes are counted.

Section 2.10    **Waiver of Notice**. Notice of any annual or special meeting may be waived either before, at or after such meeting in writing signed or by transmission of an electronic record by the person or persons entitled to the notice. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting at the beginning of the meeting to the transacting of any business because the meeting is not lawfully called or convened.

Section 2.11    **Written Action**. Any action that may be taken at a meeting of the stockholders may be taken without a meeting, without prior notice and without a vote, if a consent in writing, setting forth the actions so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be required to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted.

Section 2.12    **Order of Business**.

(a)    <u>Annual Meetings of Stockholders</u>.  At any annual or special meeting of the stockholders, only such business shall be conducted or considered (including, in the case of an annual meeting, nominations of persons for election to the Board of Directors), as shall have been properly brought before the meeting.  For such business to be properly brought before an annual meeting, nominations and proposals of other business must be:  (a) specified in the Corporation's notice of meeting (or any supplement thereto) given by or at the direction of the Board of Directors, (b) otherwise properly brought before such meeting, by or at the direction of the Board of Directors or (c) otherwise properly requested to be brought before such meeting by a stockholder of the Corporation in accordance with these Bylaws.

(b)    <u>General</u>.    Except as otherwise provided by law, the Articles of Incorporation or these Bylaws, the chairman of any annual or special meeting shall have the power to determine whether a nomination or any other business proposed to be brought before the meeting was made or proposed, as the case may be, in accordance with these Bylaws and, if any proposed nomination or other business is not in compliance with these Bylaws, to declare

3

that no action shall be taken on such nomination or other proposal and such nomination or other proposal shall be disregarded.

Section 2.13   **Notice of Stockholder Business and Nominations**.

(a)   Timing Requirements. With respect to any nominations or any other business to be brought before an annual meeting, a stockholder's notice shall be considered timely if it is delivered to the Secretary at the principal executive offices of the Corporation not earlier than the close of business on the one hundred twentieth (120th) day and not later than the close of business on the ninetieth (90th) day prior to the first anniversary of the preceding year's annual meeting; provided, however, that in the event that the date of the annual meeting is more than thirty (30) days before or more than sixty (60) days after such anniversary date, notice by the stockholder must be so delivered not earlier than the close of business on the one hundred twentieth (120th) day prior to the date of such annual meeting and not later than the close of business on the later of the ninetieth (90th) day prior to the date of such annual meeting or, if the first public announcement of the date of such annual meeting is less than one hundred (100) days prior to the date of such annual meeting, the tenth (10th) day following the day on which public announcement of the date of such meeting is first made by the Corporation.

With respect to any business to be properly requested to be brought before a special meeting, a stockholder's notice shall be considered timely if it is delivered to the Secretary at the principal executive offices of the Corporation not earlier than the close of business on the one hundred twentieth (120th) day and not later than the close of business on the later of the ninetieth (90th) day prior to the date of such special meeting or, if the first public announcement of the date of such special meeting is less than one hundred (100) days prior to the date of such special meeting, the tenth (10th) day following the day on which public announcement is first made by the Corporation of the date of the special meeting.

Except as required by the NRS or Section 8.01 of these Bylaws, in no event shall any adjournment or postponement of an annual or special meeting of stockholders, as applicable, or the public announcement thereof, commence a new time period for the giving of a stockholder's notice as described above.

(b)   Disclosure Requirements.  To be in proper form, a stockholder's notice (whether given pursuant to Section 2.13(A) or 2.13(B) of these Bylaws) to the Secretary must include the following, as applicable: as to the stockholder giving the notice and the beneficial owner, if any, on whose behalf the nomination or proposal is made:  (i) the name and address of such stockholder, as they appear on the Corporation's books and of such beneficial owner or Control Person, if any, (ii) the number of shares of the Corporation which are, directly or indirectly, owned beneficially and of record by such stockholder and such beneficial owner or Control Person, if any (iii) a representation that the stockholder intends to appear at the meeting in person or by proxy to submit the business specified in such notice, (iv) if the notice relates to any business other than a nomination of director(s), a brief description of the business desired to be brought before the meeting, including the complete text of any resolutions proposed for consideration, and the reasons for conducting such business at the meeting, (v) any direct or indirect interest personal or other material interest of the stockholder in the business to be submitted, (vi) a description of any agreement, arrangement or understanding (including any

derivative or short positions, profit interests, options, hedging transactions, and borrowed or loaned shares) that has been entered into as of the date of the stockholder's notice by, or on behalf of, such stockholder or beneficial owner and by any Control Person or any other person acting in concert with any of the foregoing, the effect or intent of which is to mitigate loss, manage risk or benefit from changes in the share price of any class of the Corporation's stock, or maintain, increase or decrease the voting power of the stockholder or beneficial owner with respect to shares of stock of the Corporation, and a representation that the stockholder will notify the Corporation in writing within five business days after the record date for such meeting of any such agreement, arrangement or understanding in effect as of the record date for the meeting, (vii) a representation whether the stockholder or the beneficial owner, if any, and any Control Person will engage in a solicitation with respect to the nomination or business and, if so, the name of each participant (as defined in Item 4 of Schedule 14A under the Securities Exchange Act of 1934) in such solicitation and whether such person intends or is part of a group which intends to deliver a proxy statement and/or form of proxy to holders of at least the percentage of the Corporation's outstanding stock required to approve or adopt the business to be proposed (in person or by proxy) by the stockholder and (viii) any other information relating to such stockholder, beneficial owner or Control Person, if any, that would be required to be disclosed in a proxy statement and form or proxy or other filings required to be made in connection with solicitations of proxies for, as applicable, the proposal and/or for the election of directors in a contested election pursuant to Section 14 of the Securities Exchange Act of 1934 and the rules and regulations promulgated thereunder. For purposes of this Section 2.13 a "Control Person" shall be a director, executive, managing member or control person of such stockholder giving the notice or, if the notice is given on behalf of a beneficial owner on whose behalf the nomination is made or the business is proposed, as to such beneficial owner.

Nothing in these Bylaws shall be deemed to affect any rights of stockholders to request inclusion of proposals in the Corporation's proxy statement pursuant to Rule 14a-8 under the Securities Exchange Act of 1934.

## ARTICLE III
## Board of Directors

Section 3.01   **General Powers**. The business of the corporation shall be managed by the Board of Directors.

Section 3.02   **Number, Qualification and Term of Office**. The number of directors, except to the extent, if any, otherwise provided in the Articles of Incorporation, shall be established from time to time by a resolution adopted by a majority of the total number of directors, but shall in no case be less than three. Directors need not be stockholders. Each director shall hold office until the annual meeting of stockholders next held after his or her election or until the stockholders have elected directors by consent in writing without a meeting and until his or her successor is elected and qualified or until his or her earlier death, resignation or removal. Nothing in this Section 3.02 shall restrict the right of the Board of Directors to fill vacancies or the right of the stockholders to remove directors each as provided in these Bylaws. Notwithstanding anything to the contrary in the Articles of Incorporation, these Bylaws or any employment contract or other arrangement with the Corporation, any director of the Corporation who is determined to be a Disqualified Holder (as that term is defined in the Articles of

Incorporation) or who is an affiliate of a Disqualified Holder shall cease to qualify to serve as a director of the Corporation.

Section 3.03   **Annual Meeting**. As soon as practicable after each election of directors, the Board of Directors shall meet at the registered office of the corporation, or at such other place previously designated by the Board of Directors, for the purpose of electing the officers of the corporation and for the transaction of such other business as may come before the meeting.

Section 3.04   **Regular Meetings**. Regular meetings of the Board of Directors shall be held from time to time at such time and place as may be fixed by resolution adopted by a majority of the total number of directors.

Section 3.05   **Special Meetings**. Special meetings of the Board of Directors may be called by the Chairman of the Board, the President, or by any two of the directors and shall be held from time to time at such time and place as may be designated in the notice of such meeting.

Section 3.06   **Notice of Meetings**. No notice need be given of any annual or regular meeting of the Board of Directors. Notice of each special meeting of the Board of Directors shall be given by the Secretary who shall give at least twenty-four hours' notice thereof to each director by mail, telephone, telegram, electronic transmission including email, or in person. Notice shall be effective upon receipt.

Section 3.07   **Waiver of Notice**. Notice of any meeting of the Board of Directors may be waived either before, at, or after such meeting in writing signed by each director. Attendance of a person at a meeting shall constitute a waiver of notice of such meeting, except when the person attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

Section 3.08   **Quorum and Voting**. A majority of the directors then in office shall constitute a quorum for the transaction of business. The vote of a majority of the directors present at a meeting at which a quorum is present shall be the act of the Board of Directors unless these Bylaws, the Articles of Incorporation or the NRS require a greater number.

Section 3.09   **Vacancies**. Any vacancy among the directors or increase in the authorized number of directors shall be filled for the unexpired term by the majority vote of the directors then in office though less than a quorum or by the sole remaining director. When one or more directors shall resign from the Board, effective at a future date, a majority of the directors then in office may fill such vacancy or vacancies to take effect when such resignation or resignations shall become effective and the director or directors so chosen shall hold office for a term expiring at the next annual meeting of stockholders and when his, her or their successors are elected or appointed, or until his, her or their earlier resignation or removal.

Section 3.10   **Removal**. Any director may be removed from office at any special meeting of the stockholders either with or without cause by the vote of the holders of not less than two-thirds of the voting power of the issued and outstanding stock entitled to vote generally in the election of directors, excluding stock entitled to vote only upon the happening of a fact or event unless such fact or event shall have occurred. If the entire Board of Directors or any one or more directors be so removed, new directors may be elected at the same meeting.

Section 3.11 **Committees of Directors**. The Board of Directors may, by resolution adopted by a majority of the total number of directors, designate one or more committees, each to consist of one or more of the directors of the Corporation, which, to the extent provided in the resolution, may exercise the powers of the Board of Directors in the management of the business and affairs of the corporation. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee. In the absence or disqualification of any member of such committee or committees, the member or members thereof present at any meeting and not disqualified from voting, whether or not constituting a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member. Such committee or committees shall have such name or names as may be determined by the resolution adopted by the directors. The committees shall keep regular minutes of their proceedings and report the same to the Board of Directors when required. Unless otherwise provided for in a resolution of the Board of Directors designating a committee pursuant to this Section 3.11: (i) fifty percent (50%) or more of the authorized number of members of such committee shall constitute a quorum for the transaction of business of such committee and (ii) the vote of a majority of the members of such committee present at a meeting of such committee at which a quorum is present shall be the act of such committee except where otherwise required by these Bylaws or the charter of such committee.

Section 3.12 **Written Action**. Any action required or permitted to be taken at a meeting of the Board of Directors or any committee thereof may be taken without a meeting if, before or after the action, all directors or committee members consent thereto in writing. The written consent may be signed manually or electronically (or by any other means then permitted under the NRS), and may be so signed in counterparts, including, without limitation, facsimile or email counterparts, and the written consent shall be filed with the minutes of proceedings of the Board of Directors or committee.

Section 3.13 **Compensation**. Directors who are not salaried officers of the Corporation may receive a fixed sum per meeting attended or a fixed annual sum, or both, and such other forms of reasonable compensation as may be determined by resolution of the Board of Directors. All directors shall receive their expenses, if any, of attendance at meetings of the Board of Directors or any committee thereof. Any director may serve the Corporation in any other capacity and receive proper compensation therefor. If the Board of Directors establishes the compensation of directors pursuant to this Section 3.13, such compensation is presumed to be fair to the Corporation unless proven unfair by a preponderance of the evidence.

Section 3.14 **Conference Communications**. Directors may participate in any meeting of the Board of Directors, or of any duly constituted committee thereof, by means of any conference telephone, electronic communications, videoconferencing, teleconferencing or other comparable communication technique or technology permitted under the NRS, including, without limitation, a telephone conference or similar method of communication whereby all persons participating in the meeting can hear and communicate to each other. If any such means are utilized, the Corporation shall, to the extent required under the NRS, implement reasonable measures to (a) verify the identity of each person participating through such means as a director or member of the committee, as the case may be, and (b) provide the directors or members of the committee a reasonable opportunity to participate in the meeting and to vote on matters

submitted to the directors or members of the committee, including an opportunity to communicate, and to read or hear the proceedings of the meeting in a substantially concurrent manner with such proceedings. For the purposes of establishing a quorum and taking any action at the meeting, such directors participating pursuant to this Section 3.14 shall be deemed present in person at the meeting.

## ARTICLE IV
### Officers

Section 4.01 **Number**. The officers of the Corporation shall consist of a President, a Secretary and a Treasurer, or the equivalents of such officers. The officers of the Corporation may consist of one or more Vice Presidents and any other officers and agents as the Board of Directors, by a majority vote of the total number of directors, may designate. Any person may hold two or more offices.

Section 4.02 **Election, Term of Office, and Qualifications**. At each annual meeting of the Board of Directors all officers shall be elected. Such officers shall hold office until the next annual meeting of the directors or until their successors are elected and qualified, or until their earlier resignation or removal, or until such office is eliminated by a vote of the majority of all directors. Unless they have resigned or been removed, officers who may be directors shall hold office until the election and qualification of their successors, notwithstanding an earlier termination of their directorship. Notwithstanding anything to the contrary in the Articles of Incorporation, these Bylaws or any employment contract or other arrangement with the Corporation, any officer of the Corporation who is determined to be a Disqualified Holder (as that term is defined in the Articles of Incorporation) or who is an affiliate of a Disqualified Holder shall cease to qualify to serve as an officer of the Corporation and, upon such disqualification, shall automatically and immediately cease to be a officer of the Corporation.

Section 4.03 **Removal and Vacancies**. Any officer may be removed from his or her office by a majority vote of the total number of directors with or without cause. A vacancy among the officers by death, resignation, removal, or otherwise shall be filled for the unexpired term by the Board of Directors.

Section 4.04 **Chairman of the Board**. The Chairman of the Board, if one is elected, shall preside at all meetings of the stockholders and directors and shall have such other duties as may be prescribed, from time to time, by the Board of Directors.

Section 4.05 **President**. The President shall have general active management of the business of the Corporation. In event of the absence or disability of the Chairman of the Board, the President shall preside at all meetings of the stockholders and directors. The President shall see that all orders and resolutions of the directors are carried into effect. The President may execute and deliver in the name of the Corporation any deeds, mortgages, bonds, contracts or other instruments pertaining to the business of the Corporation and in general shall perform all duties usually incident to the office of the president. The President shall have such other duties as may, from time to time, be prescribed by the Board of Directors.

Section 4.06   **Vice President**. Each Vice President shall have such powers and shall perform such duties as may be prescribed by the Board of Directors or by the President. In the event of absence or disability of the President, Vice Presidents shall succeed to his or her power and duties in the order designated by the Board of Directors.

Section 4.07   **Secretary**. The Secretary shall be secretary of and shall attend all meetings of the stockholders and Board of Directors and shall record all proceedings of such meetings in the minute book of the Corporation. The Secretary shall give proper notice of meetings of stockholders and the Board of Directors. The Secretary shall perform such other duties as may from time to time be prescribed by the Board of Directors or by the President.

Section 4.08   **Treasurer**. The Treasurer shall keep accurate accounts of all moneys of the Corporation received or disbursed. The Treasurer shall deposit all moneys, drafts and checks in the name of and to the credit of the Corporation in such banks and depositories as a majority of the whole Board of Directors shall from time to time designate. The Treasurer shall have power to endorse for deposit all notes, checks and drafts received by the Corporation. The Treasurer shall disburse the funds of the Corporation as ordered by the directors, making proper vouchers therefor. The Treasurer shall render to the President and the Board of Directors whenever required an account of all his or her transactions as Treasurer and of the financial condition of the Corporation and shall perform such other duties as may from time to time be prescribed by the Board of Directors or by the President.

Section 4.09   **Execution of Contracts and Documents**. Except as otherwise directed by the Board of Directors, all contracts, deeds, promissory notes, checks, drafts, or other instruments calling for the payment of money shall be signed by the President or a Vice President and, if a second signature is required, the Secretary or Treasurer. The Board of Directors may authorize the use of the facsimile signatures of any such persons.

Section 4.10   **Duties of other Officers**. The duties of such other officers and agents as the Board of Directors may designate shall be set forth in the resolution creating such office or by subsequent resolution.

Section 4.11   **Compensation**. The officers of the Corporation shall receive such compensation for their services as may be determined from time to time by resolution of the Board of Directors or by one or more committees to the extent so authorized from time to time by the Board of Directors.

### ARTICLE V
### Shares and Their Transfer

Section 5.01   **Shares of Stock**. The shares of stock of the Corporation shall be represented by a certificate, provided that the Board of Directors may provide by resolution or resolutions that some or all of any or all classes or series of the stock of the Corporation shall be uncertificated shares. Any such resolution shall not apply to shares represented by a certificate until such certificate is surrendered to the Corporation. Notwithstanding the adoption of any such resolution providing for uncertificated shares, every holder of stock of the Corporation theretofore represented by certificates and, upon request, every holder of uncertificated shares,

shall be entitled to a certificate, to be in such form as shall be prescribed by the Board of Directors, certifying the number of shares in the Corporation owned by such holder. The certificates for such shares shall be numbered in the order in which they shall be issued and shall be signed in the name of the Corporation by the Chairman of the Board, the President or a Vice President, and by the Treasurer or an Assistant Treasurer, or the Secretary or an Assistant Secretary. Every certificate surrendered to the Corporation for exchange or transfer shall be cancelled, and no new certificate or certificates shall be issued in exchange for any existing certificate until such certificate shall have been so cancelled, except in cases provided for in Section 5.04.

Section 5.02 **Issuance of Stock**. The Board of Directors is authorized to cause to be issued stock of the Corporation up to the full amount authorized by the Articles of Incorporation in such amounts and for such consideration as may be determined by the Board of Directors. Treasury shares may be disposed of by the Corporation for such consideration as may be fixed by the Board of Directors.

Section 5.03 **Transfer of Stock**. Transfer of stock on the books of the Corporation may be authorized only by the record holder of such stock, the holder's legal representative or the holder's attorney lawfully constituted in writing and, in the case of stock represented by a certificate or certificates, upon surrender of the certificate or the certificates for such stock, and, in the case of uncertificated stock, upon receipt of proper transfer instructions and compliance with appropriate procedures for transferring stock in uncertificated form (in each case, with such proof of the authenticity of signature as the Corporation or its transfer agent may reasonably require). The Corporation may treat as the absolute owner of stock of the Corporation the person or persons in whose name stock is registered on the books of the Corporation. The Board of Directors may from time to time establish rules and regulations governing the issuance, transfer and registration of shares of stock of the Corporation.

Section 5.04 **Loss of Certificates**. Any stockholder claiming a certificate for stock to be lost, stolen, mutilated or destroyed shall make an affidavit of that fact in such form as the Board of Directors may require and shall, if the Board of Directors so requires, give the Corporation a bond of indemnity in form, in an amount, and with one or more sureties satisfactory to the Board of Directors, to indemnify the Corporation against any claims which may be made against it on account of the alleged loss, theft or destruction of the certificate or issuance of such new certificate. The Corporation may then issue (a) a new certificate or certificates of stock or (b) uncertificated shares, for the same number of shares represented by the certificate claimed to have been lost, stolen, mutilated or destroyed.

Section 5.05 **Facsimile Signatures**. Whenever any certificate is countersigned by a transfer agent or by a registrar other than the Corporation or its employee, then the signatures of the officers or agents of the Corporation may be a facsimile. In case any officer, transfer agent or registrar who has signed or whose facsimile signature has been placed on any such certificate shall cease to be such officer, transfer agent or registrar before such certificate is issued, it may be issued by the Corporation as though the person who signed such certificate or whose facsimile signature or signatures had been placed thereon were such officer, transfer agent or registrar at the date of issue.

## ARTICLE VI
## Books and Records, Audit, Fiscal Year

Section 6.01   **Books and Records**. The Board of Directors of the Corporation shall cause to be kept: (a) a share ledger which shall be a charge of an officer designated by the Board of Directors; (b) records of all proceedings of stockholders and directors; and (c) such other records and books of account as shall be necessary and appropriate to the conduct of the corporate business.

Section 6.02   **Audit**. The Board of Directors shall cause the records and books of account of the Corporation to be audited at least once in each fiscal year and at such other times as it may deem necessary or appropriate.

Section 6.03   **Annual List**. The Board of Directors shall cause to be filed with the Nevada Secretary of State in each year the annual list required by law.

Section 6.04   **Fiscal Year**. The fiscal year of the Corporation shall end on December 31 of each year.

## ARTICLE VII
## Indemnification; Expenses

Section 7.01   **Indemnification**. The Corporation shall indemnify and hold harmless, and the Board of Directors may authorize the purchase and maintenance of insurance or make other financial arrangements for the purpose of such indemnification, any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, in such manner, under such circumstances and to the fullest extent permitted by the Articles of Incorporation and the NRS.

Section 7.02   **Payment of Expenses**.  In addition to any other rights of indemnification permitted by the laws of the State of Nevada or as may be provided for by the Corporation in the Articles of Incorporation, these Bylaws or by agreement, the expenses of directors and officers incurred in defending any threatened, pending or completed action, suit or proceeding (including, without limitation, an action, suit or proceeding by or in the right of the Corporation), whether civil, criminal, administrative or investigative, involving alleged acts or omissions of such director or officer in his or her capacity as a director or officer of the Corporation, or while serving in any capacity at the request of the Corporation as a director, officer, employee, agent, member, manager, managing member, partner or fiduciary of, or in any other capacity for, another corporation, limited liability company, partnership, joint venture, trust or other enterprise, shall be paid by the Corporation or through insurance purchased and maintained by the Corporation or through other financial arrangements made by the Corporation, as they are incurred and in advance of the final disposition of the action, suit or proceeding, upon receipt of an undertaking by or on behalf of the director or officer to repay the amount if it is ultimately determined by a court of competent jurisdiction that he or she is not entitled to be indemnified by the Corporation.  To the extent that an officer or director is successful on the merits or otherwise in defense of any such action, suit or proceeding, or in the defense of any claim, issue or matter

therein, the Corporation shall indemnify him or her against expenses, including attorneys' fees, actually and reasonably incurred by him or her in connection with the defense.

Section 7.03   **Amendment**.  No amendment to or repeal of this ARTICLE VII approved by the directors or stockholders of the Corporation shall apply to or have any effect on the right or protection of any director or officer of the Corporation existing prior to such amendment or repeal.

# ARTICLE VIII
## Miscellaneous

Section 8.01   **Fixing Date for Determination of Stockholders of Record**.

(a)   In order that the Corporation may determine the stockholders entitled to notice of or to vote at any meeting of stockholders or any adjournment thereof, or to express consent to corporate action in writing without a meeting, or entitled to receive payment of any dividend or other distribution or allotment of any rights, or entitled to exercise any rights in respect of any change, conversion or exchange of stock or for the purpose of any other lawful action, the Board of Directors may fix, in advance, a record date, which shall not be more than 60 nor less than 10 days before the date of such meeting, nor more than 60 days prior to any other action.

(b)   If no record date is fixed:

(1)   The record date for determining stockholders entitled to notice of or to vote at a meeting of stockholders shall be at the close of business on the day next preceding the day on which notice is given, or, if notice is waived, at the close of business on the day next preceding the day on which the meeting is held.

(2)   The record date for determining stockholders entitled to express consent to corporate action in writing without a meeting, when no prior action by the Board of Directors is necessary, shall be the day on which the first written consent is expressed.

(3)   The record date for determining stockholders for any other purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

(c)   A determination of stockholders of record entitled to notice of or to vote at a meeting of stockholders shall apply to any adjournment of the meeting or to any postponement of any meeting of stockholders to a date not more than 60 days after the record date; provided, that the Board of Directors may fix a new record date for the adjourned meeting and must fix a new record date if the meeting is adjourned to a date more than 60 days later than the date set forth the original meeting.

Section 8.02   **Periods of Time**. During any period of time prescribed by these Bylaws, the date from which the designated period of time begins to run shall not be included, and the last day of the period so computed shall be included.

Section 8.03 **Voting Securities Held by the Corporation**. Unless otherwise ordered by the Board of Directors, the President shall have full power and authority on behalf of the Corporation (a) to attend, to act and to vote at any meeting of security holders or owners of other entities in which the Corporation may hold securities or ownership interests; (b) to execute any proxy for such meeting on behalf of the Corporation; or (c) to execute a written action in lieu of a meeting of such other entity on behalf of the Corporation. At such meeting, by such proxy or by such writing in lieu of meeting, the President shall possess and may exercise any and all rights and powers incident to the ownership of such securities or ownership interests that the Corporation might have possessed and exercised if it had been present. The Board of Directors may, from time to time, confer like powers upon any other person or persons.

Section 8.04 **Purchase and Sale of Securities**. Unless otherwise ordered by the Board of Directors, the President shall have power and authority on behalf of the Corporation to purchase, sell, transfer or encumber any and all securities or ownership interests of any other entity owned by the Corporation and may execute and deliver such documents as may be necessary to effectuate such purchase, sale, transfer or encumbrance. The Board of Directors may, from time to time, confer like powers upon any other person or persons.

### Section 8.05 **Restrictions on Transfer and Ownership.**

(a) Invalid Securities.

(1) Effective immediately upon transmittal by the Corporation of a notice pursuant to paragraph (A)(2) of Article VIII of the Articles of Incorporation (a "Redemption Notice") to a Disqualified Holder (as defined in paragraph (J)(2) of Article VIII of the Articles of Incorporation), the Securities (as defined in paragraph (J)(8) of Article VIII of the Articles of Incorporation) specified in such Redemption Notice shall become "Invalid Securities" for purposes of this Section 8.05.

(2) Promptly following transmittal by the Corporation of a Redemption Notice, the Corporation shall Announce Publicly that such Redemption Notice has been given and that the terms of this Section 8.05 shall apply to the Securities specified in such Redemption Notice.

(b) Additional Definitions. As used in this Section 8.05 only, the following terms shall have the following respective meanings:

(1) "Acquire" means the acquisition, directly or indirectly, of ownership of Securities by any means, including, without limitation: (i) the exercise of any rights under any option, warrant, convertible security, pledge or other security interest or similar right to acquire Securities or (ii) the entering into of any swap, hedge or other arrangement that results in the acquisition of any of the economic benefits of ownership of Securities. The terms "Acquires" and "Acquisition" shall have the same meaning, *mutatis mutandis*.

(2) "Announce Publicly" means disclosure (i) in a press release reported by the Dow Jones, Newswire, Business Wire, Reuters Information Service or any similar or successor news wire service or (ii) in a communication distributed generally to stockholders or in a document publicly filed by the Corporation with the Securities and

13

Exchange Commission (the "SEC") pursuant to Sections 13, 14 or 15(d) of the Securities Exchange Act of 1934, as amended, or any successor provisions thereto.

(3)     "Disposition" means the sale, transfer, exchange, assignment, liquidation, conveyance, pledge, abandonment, distribution, contribution, or other disposition of Securities.

(4)     "Person" means an individual, corporation, estate, trust, association, limited liability company, partnership, joint venture or similar organization or entity.

(5)     "Transfer" means any direct or indirect Acquisition or Disposition.

(c)     Transfer Limitations.

(1)     No Disqualified Holder or Purported Transferee (as defined below) shall be permitted to make a Transfer of Invalid Securities, and any such purported Transfer will be void *ab initio* (any such purported Transfer, a "Prohibited Transfer").

(2)     The restrictions set forth in Section 8.05(c)(1) shall not apply to a proposed Transfer, and a Transfer shall not be treated as a Prohibited Transfer hereunder, if the transferor or the transferee obtains prior approval of the proposed Transfer by the Board of Directors. As a condition to granting its approval pursuant to this Section 8.05(c)(2), the Board of Directors may, in its sole discretion, require and/or obtain (at the expense of the transferor and/or transferee) such documentation, information and action, if any, as it determines in its sole discretion to be appropriate, including, without limitation, representations and warranties from the transferor and/or transferee, such opinions of counsel to be rendered by counsel selected by (or acceptable to) the Board of Directors, and such other advice, in each case as to such matters as the Board of Directors determines in its sole discretion is appropriate.

(3)     The restrictions set forth in Section 8.05(c)(1) shall not apply to an Acquisition by the Corporation. Once Invalid Securities have been Acquired by the Corporation, such Securities shall cease to be Invalid Securities.

(d)     Treatment of Invalid Securities.

(1)     No employee or agent of the Corporation shall record any Prohibited Transfer, and the purported transferee of a Prohibited Transfer (the "Purported Transferee") shall not be recognized as a security holder of the Corporation for any purpose whatsoever in respect of the Invalid Securities. The Purported Transferee shall not be entitled with respect to such Invalid Securities to any rights of the applicable class of security holders of the Corporation, including, without limitation, any right to vote such Invalid Securities, to receive dividends or distributions, whether liquidating or otherwise, in respect thereof and to effect any Transfer thereof.

(2)     Once Invalid Securities exist, the Corporation may require, including, but not limited to, as a condition to the registration of the Transfer of any Securities that may be Invalid Securities or the payment of any dividend or distribution on any such Securities, that the proposed transferee or payee furnish to the Corporation all information

14

reasonably requested by the Corporation to permit a determination of whether such Securities are Invalid Securities. The Corporation may make such arrangements or issue such instructions to the applicable transfer agent, registrar, depositary, trustee or other securities intermediary as may be determined by the Board of Directors to be necessary or advisable to implement this Section 8.05(d), including, without limitation, authorizing such transfer agent, registrar, depositary, trustee or other securities intermediary to require an affidavit from a proposed transferee or payee regarding such Person's actual and constructive ownership of any such Securities, the transfer of any such Securities and other evidence that a Transfer will not be prohibited by this Section 8.05 or Article VIII of the Articles of Incorporation as a condition to registering any such Transfer or paying any such dividend or distribution.

(3)     If a Prohibited Transfer has occurred:  (1) the Prohibited Transfer and, if applicable, the registration of such Prohibited Transfer, shall be void *ab initio* and have no legal effect, (2) the Purported Transferee shall be bound by the terms of the Redemption Notice and Article VIII of the Articles of Incorporation with respect to the Invalid Securities purportedly Transferred, (3) the Redemption Notice shall thereafter constitute a binding agreement on the part of the Corporation to redeem, and on the part of the Purported Transferee to sell, the Invalid Securities in accordance with Article VIII of the Articles of Incorporation (such redemption and sale, the "Purported Transferee Redemption") and (4) the Purported Transferee Redemption shall thereafter be effectuated in accordance with paragraph (A)(2) of Article VIII of the Articles of Incorporation (including, for the avoidance of doubt, at the date, time and place specified in the Redemption Notice and at the Redemption Price (as defined in paragraph (J)(7) of the Articles of Incorporation) determined by reference to the original Purchase Price (as defined in paragraph (J)(6) of the Articles of Incorporation) of the Disqualified Holder to whom the Redemption Notice was given); *provided* that the Corporation shall pay the Redemption Price of any Invalid Securities redeemed in a Purported Transferee Redemption to the Purported Transferee of the Invalid Securities so redeemed, in which case such payment shall extinguish any obligation of the Corporation to make payment in respect of such Invalid Securities to the Disqualified Holder that effectuated the applicable Prohibited Transfer; *provided further* that if the date specified in the Redemption Notice shall have already passed, the Purported Transferee Redemption shall take place at such date and time as the Corporation reasonably selects by notice to the Purported Transferee.

(4)     The recourse of any Purported Transferee to the Corporation in respect of any Prohibited Transfer shall be limited to the Redemption Price as determined in accordance with Section 8.05(d)(3).

(5)     If the Purported Transferee fails to surrender the Invalid Securities for redemption in accordance with Section 8.05(d)(3), then the Corporation may, in such manner and at such time, as determined by the Board of Directors, enforce the provisions hereof, which may include the institution of legal proceedings to compel the surrender. Nothing in this Section 8.05(d) shall (a) be deemed inconsistent with any Prohibited Transfer of the Invalid Securities provided in this Section 8.05 being void *ab initio* or (b) preclude the Corporation in its discretion from immediately bringing legal proceedings without a prior demand.

(e)     **Liability**. To the fullest extent permitted by law, any security holder subject to the provisions of this Section 8.05 who violates the provisions of this Section 8.05 and

15

any Persons controlling, controlled by or under common control with such security holder shall be jointly and severally liable to the Corporation for, and shall indemnify and hold the Corporation harmless against, any and all damages suffered as a result of such violation, including, but not limited to, damages resulting from the Corporation's inability to secure and maintain in good standing any licenses, contracts, franchises and other regulatory approvals related to the Corporation's business, and attorneys' and auditors' fees incurred in connection with such violation.

(f)     **Compliance.**

(1)     The Corporation shall have the power to make appropriate notations upon any certificates representing Securities or its stock and other Securities transfer records and to instruct any transfer agent, registrar, depositary, trustee or other securities intermediary with respect to the requirements of this Section 8.05 for any uncertificated Securities or Securities held in an indirect holding system.

(2)     The Board of Directors shall have the power to decide all matters necessary for determining compliance with this Section 8.05, including, without limitation, determining (A) whether a Transfer is a Prohibited Transfer, (B) whether an instrument constitutes a Security, (C) the interpretation of any provision of this Section 8.05, and (D) any other matter that the Board of Directors determines to be relevant. The good faith determination of the Board of Directors on such matters shall be conclusive and binding on all persons and entities for the purposes of this Section 8.05.

Section 8.06.   **Suitability Analysis of Significant Stockholders**. To enable the Corporation or any of its affiliates to secure, maintain in good standing and renew all licenses, contracts, franchises and other regulatory approvals related to the operation of gaming and related businesses now or hereafter engaged in by the Corporation or any of its affiliates within or without the United States of America, the Corporation will conduct a suitability analysis of each Significant Stockholder (as defined below) and intends to require all relevant information pertaining to suitability and/or qualification, as those terms are commonly understood in gaming laws applicable to the Corporation, from such Significant Stockholder in connection therewith. "Significant Stockholder" means any stockholder of the Corporation who, together with all affiliates or associates of such stockholder, beneficially owns (within the meaning of Rule 13d-3 under the Securities Exchange Act of 1934, as amended), directly or indirectly, five percent or more of any class of capital stock of the Corporation.  For purposes solely of this Section 8.06, "affiliate" and "associate" shall have the respective meanings ascribed to such terms in Rule 12b-2 under the Securities Exchange Act of 1934, as amended.

Section 8.07.   **Severability**. If any provision or provisions of Sections 8.05 or 8.06 of these Bylaws shall be held invalid, illegal or unenforceable as applied to any person or circumstances for any reason whatsoever, then, to the fullest extent permitted by law, the validity, legality and enforceability of such provisions in any other circumstance and of the remaining provisions of Sections 8.05 and 8.06 of these Bylaws (including, without limitation, each portion of any sentence of Sections 8.05 or 8.06 of these Bylaws containing any such provision held to be invalid, illegal or unenforceable that is not itself held to be invalid, illegal or

unenforceable) and the application of such provision to other persons or entities and circumstances shall not in any way be affected or impaired thereby.

## ARTICLE IX
## Amendments

Section 9.01 **Amendments**. These Bylaws may be amended, altered or repealed by a vote of the majority of the total number of directors or of the stockholders at any meeting upon proper notice.

## ARTICLE X
## General

Section 10.01 **Forum for Adjudication of Disputes**. To the fullest extent permitted by law, and unless the Corporation consents in writing to the selection of an alternative forum, the Eighth Judicial District Court of Clark County, Nevada, shall be the sole and exclusive forum for any actions, suits or proceedings, whether civil, administrative or investigative or that assert any claim or counterclaim (a) brought in the name or right of the Corporation or on its behalf, (b) asserting a claim for breach of any fiduciary duty owed by any director, officer, employee or agent of the Corporation to the Corporation or the Corporation's stockholders, (c) arising or asserting a claim arising pursuant to any provision of NRS Chapters 78 or 92A or any provision of the Articles of Incorporation or these Bylaws or (d) asserting a claim governed by the internal affairs doctrine.  In the event that the Eighth Judicial District Court of Clark County, Nevada does not have jurisdiction over any such action, suit or proceeding, then any other state district court located in the State of Nevada shall be the sole and exclusive forum therefor and in the event that no state district court in the State of Nevada has jurisdiction over any such action, suit or proceeding, then a federal court located within the State of Nevada shall be the sole and exclusive forum therefor.  Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Section 10.01.

Section 10.02 **Application of These Bylaws**. In the event that any provisions of these Bylaws is or may be in conflict with any law of the United States, of the State of Nevada, or of any governmental body or power having jurisdiction over this Corporation, or over the subject matter to which such provision of these Bylaws applies, or may apply, such provision of these Bylaws shall be inoperative to the extent only that the operation thereof conflicts with such law, and shall in all other respects be in full force and effect.

Section 10.03 **Invalid Provisions**. If any part of these Bylaws is held invalid or inoperative for any reason, the remaining parts, so far as possible and reasonable, shall be valid and operative.

# EXHIBIT B

**CERTIFICATE OF**
**AMENDED AND RESTATED ARTICLES OF INCORPORATION**
**OF**
**SG NEVADA MERGER COMPANY**

Pursuant to the provisions of Nevada Revised Statutes 78.390 and 78.403, the undersigned officer of SG Nevada Merger Company, a Nevada corporation, does hereby certify as follows:

A.      The Agreement and Plan of Merger, dated as of September 18, 2017 by and between Scientific Games Corporation, a Delaware corporation (the "Company"), and SG Nevada Merger Company, a Nevada corporation (the "Merger Agreement") provides for the amendment and restatement of the corporation's articles of incorporation as set forth below.

B.      The Merger Agreement, and the amendment and restatement of the corporation's articles of incorporation (including the change of the name of the corporation) contemplated thereby and as set forth below, have been duly approved by the board of directors and the sole stockholder of the corporation, which is sufficient for approval thereof.  The board of directors and sole stockholder have determined and declared such amendment and restatement to be advisable, fair to and in the best interests of the corporation.

C.      This certificate sets forth the text of the articles of incorporation of the corporation, as amended and restated in their entirety to this date as follows:

**AMENDED AND RESTATED ARTICLES OF INCORPORATION**
**OF SCIENTIFIC GAMES CORPORATION**

ARTICLE I
NAME

The name of the corporation is Scientific Games Corporation (the "Corporation").

ARTICLE II
REGISTERED OFFICE

The Corporation may, from time to time, in the manner provided by law, change the registered agent and registered office within the State of Nevada.  The Corporation may also maintain an office or offices for the conduct of its business, either within or without the State of Nevada.

ARTICLE III
PURPOSE

The Corporation is formed for the purpose of engaging in any lawful activity for which corporations may be organized under the laws of the State of Nevada.

ARTICLE IV
CAPITAL STOCK

    (A)    Authorized Stock.  The total number of shares of all stock which the Corporation shall have authority to issue is 202,000,000 shares, consisting of: (i) 200,000,000 shares of common stock, par value $.001 per share (the "Common Stock") and (ii) 2,000,000 shares, $.001 par value per share, designated as preferred stock (the "Preferred Stock").  All cross references in each subdivision of this ARTICLE IV refer to other paragraphs in such subdivision unless otherwise indicated.

    (B)    Preferred Stock.

        (1)    Designation.  The shares of Preferred Stock are hereby authorized to be issued from time to time in one or more series, the shares of each series to have such voting powers, full or limited, or no voting powers, and such designations, preferences and relative, participating, optional or other special rights and qualifications, limitations or restrictions as are specified in the resolution or resolutions adopted by the board of directors of the Corporation (the "Board of Directors") providing for the issue thereof. Such Preferred Stock may be convertible into, or exchangeable for, at the option of either the holder or the Corporation or upon the happening of a specified event, shares of any other class or classes or any other series of the same or any other class or classes of capital stock of the Corporation at such price or prices or at such rate or rates of exchange and with such adjustments as shall be stated and expressed in these Articles of Incorporation, as amended from time to time (these "Articles of Incorporation") or in the resolution or resolutions adopted by the Board of Directors providing for the issue thereof.

        (2)    Authority Vested in the Board.  Authority is hereby expressly vested in the Board of Directors, subject to the provisions of this ARTICLE IV and to the limitations prescribed by law, to authorize the issue from time to time of one or more series of Preferred Stock and, with respect to each such series, to fix by resolution or resolutions adopted by the affirmative vote of a majority of the whole Board of Directors providing for the issue of such series the voting powers, full or limited, if any, of the shares of such series and the designations, preferences and relative, participating, optional or other special rights and the qualifications, limitations or restrictions thereof. The authority of the Board of Directors with respect to each series shall include, but not be limited to, the determination of the following:

            (a)    The designation of such series.

            (b)    The dividend rate of such series, the conditions and dates upon which such dividends shall be payable, the relation which such dividends shall bear to the dividends payable on any other class or classes or series of the Corporation's capital stock, and whether such dividends shall be cumulative or noncumulative.

            (c)    Whether the shares of such series shall be subject to redemption by the Corporation at the option of either the Corporation or the holder or both or upon the happening of a specified event and, if made subject to any such redemption, the times or events, prices and other terms and conditions of such redemption.

2

(d)     The terms and amount of any sinking fund provided for the purchase or redemption of the shares of such series.

(e)     Whether the shares of such series shall be convertible into, or exchangeable for, at the option of either the holder or the Corporation or upon the happening of a specified event, shares of any other class or classes or of any other series of the same or any other class or classes of the Corporation's capital stock, and, if provision is made for conversion or exchange, the times or events, prices, rates, adjustments and other terms and conditions of such conversions or exchanges.

(f)     The restrictions, if any, on the issue or reissue of any additional Preferred Stock.

(g)     The rights of the holders of the shares of such series upon the voluntary or involuntary liquidation, dissolution or winding up of the Corporation.

(h)     The provisions as to voting, optional and/or other special rights and preferences, if any.

(3)     Certificate.  Before the Corporation shall issue any shares of Preferred Stock of any series, a certificate of designation setting forth a copy of the resolution or resolutions of the Board of Directors, and establishing the voting powers, if any, and the designations, preferences and relative, participating, optional or other special rights, if any, and the qualifications, limitations or restrictions thereof, if any, relating to the shares of Preferred Stock of such series, and the number of shares of Preferred Stock of such series authorized by the Board of Directors to be issued, shall be made and signed by an officer of the Corporation and filed in the manner prescribed by the Nevada Revised Statutes, as amended from time to time (the "NRS").

(C)     Common Stock.

(1)     Voting Rights. The holders of Common Stock will be entitled to notice of and to attend all meetings of the stockholders of the Corporation and shall be entitled to one vote per share on all matters to be voted on by the Corporation's stockholders.

(2)     Dividends. Subject to all provisions of this ARTICLE IV, including the rights of holders of any Preferred Stock having preference as to dividends and except as otherwise provided by these Articles of Incorporation or the NRS, the holders of the Common Stock shall be entitled to receive dividends when and as declared by the Board of Directors, out of any funds legally available for such purpose. When and as dividends are declared thereon, whether payable in cash, property or securities of the Corporation, the holders of Common Stock will be entitled to share, ratably according to the number of shares of Common Stock held by them, in such dividends.

(3)     Liquidation Rights. In the event of any liquidation, dissolution or winding up of the Corporation, whether voluntary or involuntary, or any distribution of any of its assets to any of its stockholders other than by dividends from funds legally available therefor, and other than payments made upon redemptions or purchases of shares of the Corporation, after payment

3

in full of the amount which the holders of Preferred Stock are entitled to receive in such event, the holders of Common Stock shall be entitled to share, ratably according to the number of shares of Common Stock held by them, in the remaining assets of the Corporation available for distribution to its stockholders.

<div align="center">

ARTICLE V
BYLAWS

</div>

In furtherance and not in limitation of the powers conferred by statute, the Board of Directors is expressly authorized to adopt, amend or repeal the bylaws of the Corporation (as amended from time to time, the "Bylaws"). Elections of directors need not be by written ballot unless the Bylaws shall so provide. Meetings of stockholders may be held within or without the State of Nevada, as the Bylaws provide. The books of the Corporation may be kept (subject to any provision contained in the statutes) outside the State of Nevada at such place or places as may be designated from time to time by the Board of Directors or in the Bylaws.

<div align="center">

ARTICLE VI
AMENDMENTS TO ARTICLES

</div>

The Corporation reserves the right to amend, alter, change or repeal any provision contained in these Articles of Incorporation, in the manner now or hereafter prescribed by statute, and all rights conferred upon stockholders herein are granted subject to this reservation.

<div align="center">

ARTICLE VII
INDEMNIFICATION; EXCULPATION

</div>

(A)    Indemnification. To the fullest extent permitted under the NRS (including, without limitation, NRS 78.7502, NRS 78.751 and 78.752) and other applicable law, the Corporation shall indemnify directors and officers of the Corporation in their respective capacities as such and in any and all other capacities in which any of them serves at the request of the Corporation.

(B)    Limitation on Liability. The liability of directors and officers of the Corporation shall be eliminated or limited to the fullest extent permitted by the NRS. If the NRS is amended to further eliminate or limit or authorize corporate action to further eliminate or limit the liability of directors or officers, the liability of directors and officers of the Corporation shall be eliminated or limited to the fullest extent permitted by the NRS, as so amended from time to time.

(C)    Repeal and Conflicts. Any amendment to or repeal of any provision or section of this ARTICLE VII shall be prospective only, and shall not apply to or have any effect on the right or protection of, or the liability or alleged liability of, any director or officer of the Corporation existing prior to or at the time of such amendment or repeal. In the event of any conflict between any provision or section of this ARTICLE VII and any other article of the Articles of Incorporation, the terms and provisions of this ARTICLE VII shall control.

<div align="center">

4

</div>

ARTICLE VIII
COMPLIANCE WITH GAMING LAWS

To enable the Corporation or any Affiliate (as such term is hereinafter defined) thereof to secure and maintain in good standing all licenses, contracts, franchises, permits,  registrations, findings of suitability, exemptions, waivers and other regulatory approvals related to the ownership, control, conduct or operation of gaming and related activities now or hereafter engaged in by the Corporation or any Affiliate thereof within or without the United States of America (collectively, "Gaming Licenses"), the following provisions shall apply:

(A)     All Securities (as hereinafter defined) shall be held subject to all applicable Gaming Laws (as hereinafter defined) and the suitability standards, qualifications and requirements of the Gaming Authorities (as hereinafter defined) that regulate the operation and conduct of the businesses of the Corporation or any Affiliate thereof and in accordance with the requirements of all applicable Gaming Laws. Any person (as hereinafter defined) owning or controlling Securities shall comply with all applicable Gaming Laws.  If any person that holds Securities of the Corporation is determined to be a Disqualified Holder (as hereinafter defined), then, if the Corporation so elects in its sole discretion (unless otherwise required by any Gaming Law or Gaming Authority):

(1)     such person shall sell or otherwise dispose of such Securities or other interest in the Corporation within the 60-day period commencing on the date the Corporation gives the person notice of such person's unsuitability or disqualification and requiring such disposition (or an earlier time if so required by any Gaming Authority or any Gaming Law) in a manner satisfactory to the Board of Directors in its sole discretion; or

(2)     the Corporation may redeem any or all such Securities of the Corporation on the date specified in the notice given by the Corporation to such person, which date may not be less than 30 days after notice is given, at a price equal to the Redemption Price (as hereinafter defined).

(B)     Notice to a Disqualified Holder under paragraph (A)(1) or (2) of this ARTICLE VIII shall be delivered in writing by personal delivery, mailing it to the address shown on the Corporation's books and records or any other reasonable means and shall be deemed effective on the date given (the "Notice Date"). Failure of the Corporation to provide such notice to a Disqualified Holder after making reasonable efforts to do so shall not preclude the Corporation from exercising its rights under this Article.

(C)     If the Corporation intends to redeem Securities in accordance with paragraph (A)(2) of this ARTICLE VIII, the notice shall specify the Securities to be redeemed, the date, time and place when such redemption will be consummated, which date in no event will be earlier than 30 days after the date of such notice, and the Redemption Price (it being sufficient for the purposes of this ARTICLE VIII for the Corporation to indicate generally that the Redemption Price will be determined in accordance with paragraphs (C) and (M) hereof). If the Corporation gives the notice provided for by the preceding sentence, such notice shall be deemed to constitute a binding agreement on the part of the Corporation to redeem, and on the part of the

5

person notified to sell, the Securities referred to in such Notice in accordance with this ARTICLE VIII.

(D)     The operation of this ARTICLE VIII shall not be stayed by an appeal from a determination of any Gaming Authority.

(E)     Commencing on the Notice Date (or such earlier date on which any Gaming Authority serves notice of its determination of unsuitability or disqualification of the Disqualified Holder on the Corporation), the Disqualified Holder shall not be entitled to receive payments of dividends or interest upon any Securities of the Corporation held by such Disqualified Holder, or exercise, directly or indirectly, any voting or other rights conferred by the Corporation's Securities upon the holders thereof.

(F)     The Board of Directors shall have the power to determine, on the basis of information known to the Board after reasonable inquiry, all questions arising under this ARTICLE VIII, including, without limitation (1) whether a person is a Disqualified Holder, (2) whether a Disqualified Holder has disposed of Securities pursuant to paragraph (A) of this ARTICLE VIII and (3) the amount of Securities held directly or indirectly by any person. Any such determination shall be binding and conclusive on all such persons.

(G)     The Corporation shall be entitled to injunctive relief in any court of competent jurisdiction to enforce the provisions of this ARTICLE VIII, and each holder of Securities of the Corporation shall be deemed to have acknowledged by acquiring or retaining Securities of the Corporation that failure to comply with this ARTICLE VIII will expose the Corporation to irreparable injury for which there is no adequate remedy at law and that the Corporation is entitled to injunctive relief to enforce the provisions of this ARTICLE VIII.

(H)     A Disqualified Holder shall indemnify the Corporation and its Affiliates for any and all direct or indirect costs, including attorneys' fees, incurred by the Corporation or any of its Affiliates as a result of such person's continuing ownership of, or failure to divest, the Securities.

(I)     Any person to whom a redemption notice is given pursuant to the provisions of this ARTICLE VIII shall have the burden of establishing to the satisfaction of the Corporation the dates on which and the Purchase Price at which such person acquired the Securities subject to such notice.

(J)     The right of the Corporation to redeem Securities pursuant to this ARTICLE VIII shall not be exclusive of any other rights the Corporation or any of its Affiliates may have or hereafter acquire under any agreement, provision of the bylaws of the Corporation or such Affiliate or otherwise. Nothing in this ARTICLE VIII shall be construed to:  (i) relieve any Disqualified Holder (or any Affiliate thereof) from any fiduciary obligation imposed by law, (ii) prohibit or affect any contractual arrangement which the Corporation may make from time to time with any holder of Securities to purchase all or any part of any other securities held by such holder or (iii) be in derogation of any action, past or future, which has been or may be taken by

6

the Board of Directors or any holder of Securities with respect to the subject matter of this ARTICLE VIII.

(K)     Nothing contained in this ARTICLE VIII shall limit the authority of the Board of Directors to take such other action, to the extent not prohibited by law, as it deems necessary or advisable to protect the Corporation or any of its Affiliates from the denial or loss or threatened denial or loss of any Gaming License.

(L)     If any provision of this ARTICLE VIII or the application of any such provision to any person or under any circumstance shall be held invalid, illegal, or unenforceable in any respect by a court of competent jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision of this ARTICLE VIII.  Except as may be required by any applicable Gaming Law or Gaming Authority, the Board of Directors may waive any of the rights of the Corporation or any restrictions contained in this ARTICLE VIII in any instance in which and to the extent the Board of Directors determines that a waiver would be in the best interests of the Corporation. Except as required by a Gaming Authority, nothing in this ARTICLE VIII shall be deemed or construed to require the Corporation to redeem or repurchase any Securities owned or controlled by a Disqualified Holder or any Affiliate thereof.

(M)     For the purposes of this ARTICLE VIII:

(1)     "Affiliate" means a person that directly, or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, the person specified (including any direct or indirect subsidiary of such person).  For purposes of this definition, "control" (including, with correlative meanings, the terms "controlling," "controlled by" and "under common control with"), as used with respect to a person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of such person, whether through the ownership of voting securities, by agreement or otherwise. For purposes of this ARTICLE VIII, the term "Affiliate" shall also include any joint venture, minority-owned entity or other enterprise in which the Corporation or any of its Affiliates has any direct or indirect interest.

(2)     "Disqualified Holder" means any record or beneficial holder of the Corporation's Securities: (i) who is requested or required pursuant to any Gaming Law to appear before, or submit to the jurisdiction of, or file an application with, or provide information to, any Gaming Authority and either refuses to do so or otherwise fails to comply with such request or requirement within a reasonable period of time, (ii) who has withdrawn or requested the withdrawal of a pending application for any Gaming License from any Gaming Authority in anticipation of such person being denied such Gaming License or receiving such Gaming License subject to materially burdensome or unacceptable terms or conditions, (iii) who is determined or shall have been determined by any Gaming Authority not to be suitable or qualified with respect to owning or controlling Securities or securities of an Affiliate of the Corporation, or (iv) whose ownership or control of Securities may result, in the judgment of the Board of Directors, in the failure of the Corporation or any of its Affiliates to obtain, maintain, retain, renew or qualify for a Gaming License, or cause or otherwise result in the imposition of any materially burdensome or unacceptable terms or conditions on any Gaming License.

(3)      "<u>Gaming Authority</u>" means any government, court, or federal, state, provincial, local, international, tribal or foreign governmental, administrative or regulatory or licensing body, agency, authority or official, which regulates or has authority over, including, without limitation, the right to issue or grant a license, contract, franchise, permit, registration, finding of suitability, exemption, waiver or other regulatory approval, any form of gaming or related activities conducted or proposed to be conducted by the Corporation or any of its Affiliates in any jurisdiction, including, without limitation, lottery, pari mutuel wagering, sports wagering and video gaming activities.

(4)      "<u>Gaming Law</u>" means any federal, state, provincial, local, international, tribal or foreign law, statute, order, rule, regulation, decree, ordinance or interpretation pursuant to which any Gaming Authority possesses or asserts regulatory or licensing authority over the ownership, operation, management or conduct of gaming and related activities.

(5)      "<u>person</u>" means any individual, partnership, firm, corporation, limited liability company, trust or other entity.

(6)      "<u>Purchase Price</u>" means the price paid to acquire a Security, exclusive of commissions, taxes and other fees and expenses, adjusted for any stock split, stock dividend, combination of shares or similar event.

(7)      "<u>Redemption Price</u>" means, with respect to any Securities, the price equal to the lesser of  (1) the average closing sale price of such Securities as reported for composite transactions in securities listed on the  principal trading market on which such Securities are then listed or admitted for trading during the 30 trading days preceding the Notice Date, or, if such Securities are not so listed or traded, the fair value of the Securities as determined by the Board of Directors in good faith and in consideration of such records of the Corporation and information, opinions, reports or statements presented to the Board of Directors by any of the Corporation's officers, employees or financial advisors, or committees of the Board of Directors (including, without limitation, information, opinions, reports or statements regarding any discount for lack of marketability or otherwise), as the Board of Directors deems, in its sole discretion, to be relevant and pertinent to such determination, and (2) the original Purchase Price.

(8)      "<u>Securities</u>" means any shares of capital stock, bonds, notes, convertible debentures, warrants or other instruments that represent a share in the equity of the Corporation, a debt owed by the Corporation or the right to acquire any of the foregoing.

<div align="center">

ARTICLE IX
SPECIAL PROVISIONS REGARDING DISTRIBUTIONS

</div>

Notwithstanding anything to the contrary in these Articles of Incorporation or the Bylaws, the Corporation is hereby specifically allowed to make any distribution that otherwise would be prohibited by NRS 78.288(2)(b).

<div align="center">8</div>

IN WITNESS WHEREOF, the undersigned officer has executed this Certificate of Amended and Restated Articles of Incorporation as of January  10 , 2018.

Name:  Michael A. Quartieri
Title:   President



*150103*



**BARBARA K. CEGAVSKE**
**Secretary of State**
**202 North Carson Street**
**Carson City, Nevada 89701-4201**
**(775) 684-5708**
**Website:  www.nvsos.gov**

# Certificate of Designation
## (PURSUANT TO NRS 78.1955)

USE BLACK INK ONLY - DO NOT HIGHLIGHT                                  ABOVE SPACE IS FOR OFFICE USE ONLY

## Certificate of Designation For
## Nevada Profit Corporations
## (Pursuant to NRS 78.1955)

1. Name of corporation:

Scientific Games Corporation

2. By resolution of the board of directors pursuant to a provision in the articles of incorporation this certificate establishes the following regarding the voting powers, designations, preferences, limitations, restrictions and relative rights of the following class or series of stock.

Series A Junior Participating Preferred Stock:

The board of directors of Scientific Games Corporation, formerly SG Nevada Merger Company (the "Corporation"), pursuant to the authority granted thereto under the Corporation's Amended and Restated Articles of Incorporation, hereby establishes a series of the Corporation's preferred stock, consisting of 20,000 shares of preferred stock, par value $0.001 per share, designated as "Series A Junior Participating Preferred Stock" having the voting powers, designations, preferences, limitations, restrictions and relative rights set forth with particularity in the Certificate of Designation of Series A Junior Participating Preferred Stock of Scientific Games Corporation, attached hereto as Attachment "A", which is incorporated herein by this reference.

3. Effective date of filing: (optional)          January 10, 2018, at 9:01 am

(must not be later than 90 days after the certificate is filed)

4. Signature: (required)

X _Michael Cotter_
**Signature of Officer**

**Filing Fee: $175.00**

**IMPORTANT:**  Failure to include any of the above information and submit with the proper fees may cause this filing to be rejected.

See attachment

*This form must be accompanied by appropriate fees.*

Nevada Secretary of State Stock Designation
Revised:  1-5-15

**ATTACHMENT "A"**
**TO CERTIFICATE OF DESIGNATION**


**CERTIFICATE OF DESIGNATION**
**of**

**SERIES A JUNIOR PARTICIPATING PREFERRED STOCK**
**of**

**SCIENTIFIC GAMES CORPORATION**

(Pursuant to Section 78.1955 of the Nevada Revised Statutes)

Scientific Games Corporation, a corporation organized and existing under the laws of the State of Nevada (the "*Corporation*"), in accordance with the provisions of Nevada Revised Statutes ("*NRS*") 78.195 and 78.1955, DOES HEREBY CERTIFY:

That pursuant to the authority vested in the Board of Directors of the Corporation (the "*Board of Directors*") in accordance with the provisions of the Amended and Restated Articles of Incorporation of the Corporation, as filed with the Secretary of State of the State of Nevada on January 10, 2018 (as heretofore amended and as may be amended and/or restated from time to time, the "*Articles of Incorporation*"), the Board of Directors adopted the following resolution creating a series of 20,000 shares of preferred stock of the Corporation designated as "Series A Junior Participating Preferred Stock":

**RESOLVED**, that pursuant to the authority vested in the Board of Directors by the Articles of Incorporation and by the provisions of NRS 78.195 and 78.1955, the Board of Directors hereby establishes a series of preferred stock, par value $0.001 per share, of the Corporation and hereby sets forth the powers, designations, preferences and relative, participating, optional and other special rights, and the qualifications, limitations and restrictions thereof, of such series of preferred stock and the number of shares of such series (in addition to any provisions set forth in the Articles of Incorporation applicable to the preferred stock of all series), as set forth as follows:

**Series A Junior Participating Preferred Stock**

1.      *Designation and Amount.*  There shall be a series of preferred stock, par value $0.001, of the Corporation (the "*Preferred Stock*") that shall be designated as "Series A

Junior Participating Preferred Stock," and the number of shares constituting such series shall be 20,000. Such number of shares may be increased or decreased by resolution of the Board of Directors; provided, however, that no decrease shall reduce the number of shares of Series A Junior Participating Preferred Stock to less than the number of shares then issued and outstanding plus the number of shares issuable upon exercise of outstanding rights, options or warrants or upon conversion of outstanding securities issued by the Corporation.

<div align="center">2. <i>Dividends and Distributions.</i></div>

(i) Subject to the prior and superior rights of the holders of any shares of any class or series of stock of the Corporation ranking prior and superior to the shares of Series A Junior Participating Preferred Stock with respect to dividends, the holders of shares of Series A Junior Participating Preferred Stock, in preference to the holders of shares of any class or series of stock of the Corporation ranking junior to the Series A Junior Participating Preferred Stock in respect thereof, shall be entitled to receive, when, as and if declared by the Board of Directors out of funds legally available for the purpose, quarterly dividends payable in cash on the last day of March, June, September and December in each year (each such date being referred to herein as a "<i>Quarterly Dividend Payment Date</i>"), commencing on the first Quarterly Dividend Payment Date after the first issuance of a share or fraction of a share of Series A Junior Participating Preferred Stock, in an amount per share (rounded to the nearest cent) equal to the greater of (a) $10.00 and (b) the sum of (1) the Adjustment Number (as defined below) times the aggregate per share amount of all cash dividends plus (2) the Adjustment Number times the aggregate per share amount (payable in kind) of all non-cash dividends or other distributions other than a dividend payable in shares of Common Stock, par value $0.001 per share, of the Corporation (the "<i>Common Stock</i>"), or a subdivision of the outstanding shares of Common Stock (by reclassification or otherwise), in each case declared on the Common Stock since the immediately preceding Quarterly Dividend Payment Date, or, with respect to the first Quarterly Dividend Payment Date, since the first issuance of any share or fraction of a share of Series A Junior Participating Preferred Stock. The "<i>Adjustment Number</i>" shall initially be 10,000. In the event the Corporation shall at any time after January 10, 2018 (i) declare and pay any dividend on Common Stock payable in shares of Common Stock, (ii) subdivide the outstanding Common Stock or (iii) combine the outstanding Common Stock into a smaller number of shares, then in each such case the Adjustment Number in effect immediately prior to such event shall be adjusted by multiplying such Adjustment Number by a fraction the numerator of which is the number of shares of Common Stock outstanding immediately after such event and the denominator of which is the number of shares of Common Stock that were outstanding immediately prior to such event.

(ii) The Corporation shall declare a dividend or distribution on the Series A Junior Participating Preferred Stock as provided in paragraph (A) above immediately after it declares a dividend or distribution on the Common Stock (other than a dividend payable in shares of Common Stock).

(iii) Dividends shall begin to accrue and be cumulative on outstanding shares of Series A Junior Participating Preferred Stock from the Quarterly Dividend Payment Date next preceding the date of issue of such shares of Series A Junior Participating Preferred Stock, unless the date of issue of such shares is prior to the record date for the first Quarterly

Dividend Payment Date; in which case dividends on such shares shall begin to accrue from the date of issue of such shares, or unless the date of issue is a Quarterly Dividend Payment Date or is a date after the record date for the determination of holders of shares of Series A Junior Participating Preferred Stock entitled to receive a quarterly dividend and before such Quarterly Dividend Payment Date, in either of which events such dividends shall begin to accrue and be cumulative from such Quarterly Dividend Payment Date.  Accrued but unpaid dividends shall not bear interest.  Dividends paid on the shares of Series A Junior Participating Preferred Stock in an amount less than the total amount of such dividends at the time accrued and payable on such shares shall be allocated pro rata on a share-by-share basis among all such shares at the time outstanding.  The Board of Directors may fix a record date for the determination of holders of shares of Series A Junior Participating Preferred Stock entitled to receive payment of a dividend or distribution declared thereon, which record date shall be no more than sixty (60) days prior to the date fixed for the payment thereof.

3.      *Voting Rights*.  The holders of shares of Series A Junior Participating Preferred Stock shall have the following voting rights:

(i) Each share of Series A Junior Participating Preferred Stock shall entitle the holder thereof to a number of votes equal to the Adjustment Number on all matters submitted to a vote of the stockholders of the Corporation.  Except as otherwise provided herein, in another certificate of designation authorizing a series of preferred stock, par value $0.001 per share, of the Corporation or as required by law, the holders of shares of Series A Junior Participating Preferred Stock and the holders of shares of Common Stock and any other capital stock of the Corporation having general voting rights shall vote together as one class on all matters submitted to a vote of the stockholders of the Corporation.

(ii) Except as required by law, by the Articles of Incorporation and by Section 10 hereof, holders of Series A Junior Participating Preferred Stock shall have no special voting rights and their consent shall not be required (except to the extent they are entitled to vote with holders of Common Stock as set forth herein) for taking any corporate action.

4.      *Certain Restrictions*. Whenever quarterly dividends or other dividends or distributions payable on the Series A Junior Participating Preferred Stock as provided in Section 2 are in arrears, thereafter and until all accrued and unpaid dividends and distributions, whether or not declared, on shares of Series A Junior Participating Preferred Stock outstanding shall have been paid in full, the Corporation shall not:

(i) declare or pay dividends on, make any other distributions on, or redeem or purchase or otherwise acquire for consideration any shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Junior Participating Preferred Stock other than (A) such redemptions or purchases that may be deemed to occur upon the exercise of stock options, warrants or similar rights or grant, vesting or lapse of restrictions on the grant of any other performance shares, restricted stock, restricted stock units or other equity awards to the extent that such shares represent all or a portion of (x) the exercise or purchase price of such options, warrants or similar rights or other equity awards and (y) the amount of withholding taxes owed by the recipient of such award in respect of such grant, exercise, vesting or lapse of restrictions;

(B) the repurchase, redemption, or other acquisition or retirement for value of any such shares from employees, former employees, directors, former directors, consultants or former consultants of the Corporation or their respective estate, spouse, former spouse or family member, pursuant to the terms of the agreements pursuant to which such shares were acquired;

(ii) declare or pay dividends on or make any other distributions on any shares of stock ranking on a parity (either as to dividends or upon liquidation, dissolution or winding up) with the Series A Junior Participating Preferred Stock, except dividends paid ratably on the Series A Junior Participating Preferred Stock and all such parity stock on which dividends are payable or in arrears in proportion to the total amounts to which the holders of all such shares are then entitled; or

(iii) purchase or otherwise acquire for consideration any shares of Series A Junior Participating Preferred Stock, or any shares of stock ranking on a parity with the Series A Junior Participating Preferred Stock, except in accordance with a purchase offer made in writing or by publication (as determined by the Board of Directors) to all holders of Series A Junior Participating Preferred Stock, or to such holders and holders of any such shares ranking on a parity therewith, upon such terms as the Board of Directors, after consideration of the respective annual dividend rates and other relative rights and preferences of the respective series and classes, shall determine will result in fair and equitable treatment among the respective series or classes.

(iv)  The Corporation shall not permit any subsidiary of the Corporation to purchase or otherwise acquire for consideration any shares of stock of the Corporation unless the Corporation could, under paragraph (A) of this Section 4, purchase or otherwise acquire such shares at such time and in such manner.

5.     *Reacquired Shares.*  Any shares of Series A Junior Participating Preferred Stock purchased or otherwise acquired by the Corporation in any manner whatsoever shall be retired promptly after the acquisition thereof.  All such shares shall upon their retirement become authorized but unissued shares of Preferred Stock and may be reissued as part of a new series of Preferred Stock to be created by resolution or resolutions of the Board of Directors, subject to any conditions and restrictions on issuance set forth herein.

6.     *Liquidation, Dissolution or Winding Up.*  (A)   Upon any liquidation, dissolution or winding up of the Corporation, voluntary or otherwise, no distribution shall be made to the holders of shares of stock ranking junior (either as to dividends or upon liquidation, dissolution or winding up) to the Series A Junior Participating Preferred Stock unless, prior thereto, the holders of shares of Series A Junior Participating Preferred Stock shall have received an amount per share (the "*Series A Liquidation Preference*") equal to the greater of (i) $10.00 plus an amount equal to accrued and unpaid dividends and distributions thereon, whether or not declared, to the date of such payment, and (ii) the Adjustment Number times the per share amount of all cash and other property to be distributed in respect of the Common Stock upon such liquidation, dissolution or winding up of the Corporation.

(i)  In the event, however, that there are not sufficient assets available to permit payment in full of the Series A Liquidation Preference and the liquidation preferences of all other classes and series of stock of the Corporation, if any, that rank on a parity with the Series A Junior Participating Preferred Stock in respect thereof, then the assets available for such distribution shall be distributed ratably to the holders of the Series A Junior Participating Preferred Stock and the holders of such parity shares in proportion to their respective liquidation preferences.

(ii)  Neither the merger or consolidation of the Corporation into or with another entity nor the merger or consolidation of any other entity into or with the Corporation shall be deemed to be a liquidation, dissolution or winding up of the Corporation within the meaning of this Section 6.

7.  *Consolidation, Merger, Etc.*  In case the Corporation shall enter into any consolidation, merger, combination or other transaction in which the outstanding shares of Common Stock are exchanged for or changed into other stock or securities, cash and/or any other property, then in any such case each share of Series A Junior Participating Preferred Stock shall at the same time be similarly exchanged or changed in an amount per share equal to the Adjustment Number times the aggregate amount of stock, securities, cash and/or any other property (payable in kind), as the case may be, into which or for which each share of Common Stock is changed or exchanged.

8.  *No Redemption.*  Shares of Series A Junior Participating Preferred Stock shall not be subject to redemption by the Corporation.

9.  *Ranking.*  The Series A Junior Participating Preferred Stock shall rank junior to all series of Preferred Stock , as to the payment of dividends and as to the distribution of assets upon liquidation, dissolution or winding up, unless, in the case of any other series of Preferred Stock, the terms of any such series shall provide otherwise, and shall rank senior to the Common Stock as to such matters.

10.  *Amendment.*  At any time that any shares of Series A Junior Participating Preferred Stock are outstanding, the Articles of Incorporation shall not be amended, by merger, consolidation or otherwise, which would materially alter or change the powers, preferences or special rights of the Series A Junior Participating Preferred Stock so as to affect them adversely without the affirmative vote of the holders of two-thirds of the outstanding shares of Series A Junior Participating Preferred Stock, voting separately as a class.

11.  *Fractional Shares.*  Series A Junior Participating Preferred Stock may be issued in fractions of a share that shall entitle the holder, in proportion to such holder's fractional shares, to exercise voting rights, receive dividends, participate in distributions and to have the benefit of all other rights of holders of Series A Junior Participating Preferred Stock.

IN WITNESS WHEREOF, the undersigned has executed this Certificate of Designation this 10th day of ___January___, 2018.

SCIENTIFIC GAMES CORPORATION

By._____

Name: Michael A. Quartieri
Title: Executive Vice President,
Chief Financial Officer, Treasurer
and Corporate Secretary

EXHIBIT C



# DuaneMorris®

| | |
|---|---|
| NEW YORK | SHANGHAI |
| LONDON | ATLANTA |
| SINGAPORE | BALTIMORE |
| PHILADELPHIA | WILMINGTON |
| CHICAGO | MIAMI |
| WASHINGTON, DC | BOCA RATON |
| SAN FRANCISCO | PITTSBURGH |
| SILICON VALLEY | NEWARK |
| SAN DIEGO | LAS VEGAS |
| LOS ANGELES | CHERRY HILL |
| TAIWAN | LAKE TAHOE |
| BOSTON | MYANMAR |
| HOUSTON | OMAN |
| AUSTIN | *A GCC REPRESENTATIVE OFFICE* |
| HANOI | *OF DUANE MORRIS* |
| HO CHI MINH CITY | |
| | ALLIANCES IN MEXICO |
| | AND SRI LANKA |

*FIRM and AFFILIATE OFFICES*

GILBERT L. BROOKS
DIRECT DIAL: +1 856 874 4204
PERSONAL FAX: +1 856 874 4364
*E-MAIL:* gbrooks@duanemorris.com

*www.duanemorris.com*

May 13, 2019

Stephen D. Schrier, Esquire
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA  19103

> Re:   **Scientific Games Corporation/Sylebra HK Company Limited and Sylebra
> Capital Management Limited**

Dear Mr. Schrier:

Sylebra HK Company Limited ("Adviser"), Sylebra Capital Management Limited
("Manager," and together with Adviser, "Sylebra") and Sylebra Capital Partners Master Fund,
Ltd. (the "Master Fund") own approximately 9.34% of the stock of Scientific Games
Corporation (the "Scientific Games").  As such, Sylebra and the Master Fund qualify as
"Significant Stockholders" under Section 8.06 of Scientific Games' Amended and Restated
Bylaws.  Section 8.06 therefore authorizes Scientific Games to conduct a suitability analysis of
Sylebra and the Master Fund in order to maintain in good standing all licenses, contracts,
franchises and other regulatory approvals related to the operation of gaming and related
businesses engaged in by Scientific Games and its affiliates.  Based on recent filings with the
U.S. Securities and Exchange Commission ("SEC"), we understand there have been changes
with respect to Sylebra and the Master Fund that may be relevant to investments in Scientific
Games, including, but not limited to, the transfer of Scientific Games common stock from
advisory clients to the Master Fund and various changes in investors of the Master Fund.

Pursuant to Section 8.06, Sylebra must provide Scientific Games with "all relevant
information pertaining to suitability and/or qualification" necessary for this suitability analysis.
As you know, Scientific Games has repeatedly asked for information relevant to a suitability

DUANE MORRIS LLP   *A DELAWARE LIMITED LIABILITY PARTNERSHIP*                                      HERSH KOZLOV, RESIDENT PARTNER

1940 ROUTE 70 EAST, SUITE 100   CHERRY HILL, NJ  08003-2171          PHONE: +1 856 874 4200   FAX: +1 856 424 4446
DM1\9610371.1 F1250/00042

DuaneMorris

Stephen D. Schrier, Esquire
May 13, 2019
Page 2

analysis from Sylebra.  (*See, e.g.*, Letter from G. Brooks to S. Schrier (May 15, 2017); Letter from G. Brooks to S. Schrier (June 2, 2017); Letter from G. Brooks to S. Schrier (June 17, 2017).)  Sylebra has repeatedly refused to provide that information, with no basis whatsoever. Pursuant to Section 8.06, within the next thirty days (30), please provide Scientific Games with the following information for the time period between January 1, 2016 and the present (the "Time Period") for Sylebra, the Master Fund, Private Fund A (Sylebra Class) ("Fund A"), Sylebra Capital Partners (Offshore) Ltd. (the "Offshore Feeder") and Sylebra Capital Partners (Onshore) Ltd. (the "Onshore Feeder," and together with Fund A, Master Fund and Offshore Feeder, the "Sylebra Funds"):

1. A list of all persons, companies, trusts and/or other individuals and entities who are shareholders, stockholders, limited partners or similar owners of interests in each or any of the Sylebra Funds (collectively, the "Sylebra Investors" and each individually a "Sylebra Investor");

2. A list of Sylebra Investors who have redeemed, sold, transferred or otherwise disposed of their interest in any Sylebra Fund during the Time Period;

3. A list of Sylebra's advisory clients that hold, or have held, Scientific Games' shares;

4. A copy of any correspondence, decision, order or ruling from any Gaming Authority, as defined in Article VIII of Scientific Games' Articles of Incorporation, concerning whether Sylebra is suitable, qualified, permitted or entitled to have an ownership or controlling position, directly or indirectly, in any regulated gaming company, including, but not limited to, Scientific Games;

5. Confirmation that Sylebra has complied with all decisions, orders and/or requests of any Gaming Authority, including, but not limited to, appearing before, submitting to the jurisdiction of, filing an application with, or providing information to the Gaming Authority;

6. Confirmation that Sylebra has not withdrawn or requested the withdrawal of a pending application for any Gaming License, as defined by Article VIII of Scientific Games' Articles of Incorporation in anticipation of denial of such Gaming License or receiving such Gaming License subject to materially burdensome or unacceptable terms or conditions; and

7. For each Sylebra Investor, particularly any Sylebra Investor not a U.S. person for U.S. federal income tax purposes, documents sufficient to show that Sylebra has undertaken a KYC process and background check of such person or entity sufficient to ensure compliance with all U.S. anti-money

Duane Morris

Stephen D. Schrier, Esquire
May 13, 2019
Page 3

laundering rules and regulations, including FATCA, as well as the FCPA
and OFAC regulations.

Any failure of Sylebra to comply with these requests will constitute a breach of Scientific
Games' Bylaws, and Scientific Games reserves all rights to take appropriate steps to enforce its
Bylaws and protect its relationship with gaming regulators around the world.  Thank you for
your cooperation and assistance.

Respectfully yours,

DUANE MORRIS LLP

Gilbert L. Brooks

GLB:kh


cc:    Kevin Orsini, Esquire
       Cravath, Swaine & Moore LLP

EXHIBIT B

Electronically Filed
6/14/2019 1:52 PM
Steven D. Grierson
CLERK OF THE COURT

**IAFD**
CAMPBELL & WILLIAMS
J. COLBY WILLIAMS, ESQ. (5549)
jcw@cwlawlv.com
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

CASE NO: A-19-796699-B
Department 27

CRAVATH, SWAINE & MOORE LLP
KEVIN J. ORSINI, ESQ. (*pro hac vice* forthcoming)
korsini@cravath.com
CHRISTINA N. BARREIRO, ESQ. (*pro hac vice* forthcoming)
cbarreiro@cravath.com
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

DUANE MORRIS LLP
HERSH KOZLOV, ESQ. (*pro hac vice* forthcoming)
hkozlov@duanemorris.com
GILBERT L. BROOKS (*pro hac vice* forthcoming)
gbrooks@duanemorris.com
1940 Route 70 East, Suite 100
Cherry Hill, New Jersey 08003
Telephone: (856) 874-4200
Facsimile: (856) 424-4446

*Attorneys for Plaintiffs*

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

SCIENTIFIC GAMES CORPORATION, a Nevada Corporation, and BALLY GAMING, INC., a Nevada Corporation,

Plaintiffs,

v.

SYLEBRA HK COMPANY LIMITED, a Hong Kong entity, SYLEBRA CAPITAL MANAGEMENT LIMITED, a Cayman Islands entity, SYLEBRA CAPITAL PARTNERS MASTER FUND, LIMITED, a Cayman Islands hedge fund, SYLEBRA CAPITAL PARTNERS (OFFSHORE) LIMITED, a Cayman Islands hedge fund, and SYLEBRA CAPITAL PARTNERS (ONSHORE) LIMITED, a Cayman Islands hedge fund,

Defendants.

CASE NO.:
DEPT. NO.:

**INITIAL APPEARANCE FEE DISCLOSURE**

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for parties appearing in the above-titled action as indicated below:

SCIENTIFIC GAMES CORPORATION       $1,530.00

BALLY GAMING, INC.       $30.00

TOTAL REMITTED:       $1,560.00

DATED:       June 14, 2019.

Respectfully submitted,

CAMPBELL & WILLIAMS

By: /s/ *Philip R. Erwin*
PHILIP R. ERWIN, ESQ. (11563)
700 South Seventh Street
Las Vegas, NV 89101
Tel: (702) 382-5222
Fax: (702) 382-0540

CRAVATH, SWAINE & MOORE, LLP
KEVIN J. ORSINI, ESQ. (*pro hac vice*
forthcoming)
korsini@cravath.com
CHRISTINA N. BARREIRO, ESQ. (*pro hac vice*
forthcoming)
cbarreiro@cravath.com
825 Eighth Avenue
New York, New York, 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorney for Plaintiffs*

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 ● Fax: 702.382.0540
www.campbellandwilliams.com

EXHIBIT C

Electronically Filed
7/9/2019 5:40 PM
Steven D. Grierson
CLERK OF THE COURT

MASS

CAMPBELL & WILLIAMS
J. COLBY WILLIAMS, ESQ. (5549)
jcw@cwlawlv.com
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

CRAVATH, SWAINE & MOORE LLP
KEVIN J. ORSINI, ESQ. (*pro hac vice* forthcoming)
korsini@cravath.com
CHRISTINA N. BARREIRO, ESQ. (*pro hac vice* forthcoming)
cbarreiro@cravath.com
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

DUANE MORRIS LLP
HERSH KOZLOV, ESQ. (*pro hac vice* forthcoming)
hkozlov@duanemorris.com
GILBERT L. BROOKS (*pro hac vice* forthcoming)
gbrooks@duanemorris.com
1940 Route 70 East, Suite 100
Cherry Hill, New Jersey 08003
Telephone: (856) 874-4200
Facsimile: (856) 424-4446

*Attorneys for Plaintiffs*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

SCIENTIFIC GAMES CORPORATION, a Nevada Corporation, and BALLY GAMING, INC., a Nevada Corporation,

Plaintiffs,

v.

SYLEBRA HK COMPANY LIMITED, a Hong Kong entity, SYLEBRA CAPITAL MANAGEMENT LIMITED, a Cayman Islands entity, SYLEBRA CAPITAL PARTNERS MASTER FUND, LIMITED, a Cayman Islands hedge fund, SYLEBRA CAPITAL PARTNERS (OFFSHORE) LIMITED, a Cayman Islands hedge fund, and SYLEBRA CAPITAL PARTNERS

CASE NO.: A-19-796699-B
DEPT. NO.: 27

**MOTION TO ASSOCIATE GILBERT. L. BROOKS AS COUNSEL**

**HEARING REQUESTED**



CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

1  (ONSHORE) LIMITED, a Cayman          )
   Islands hedge fund,

2

3          Defendants.

4          Plaintiffs, Scientific Games Corporation and Bally Gaming, Inc., by and through their

5  undersigned counsel of record, Campbell & Williams, is requesting the Court for an order

6  permitting Gilbert L. Brooks, Esq. to practice in this Court for the purpose of this case only,

7  pursuant to Nevada Supreme Court Rule 42 (SCR 42).  Gilbert L. Brooks, Esq., having complied

8  with the requirements as set forth in SCR 42, hereby submits a "Verified Application for

9  Association of Counsel," (Exhibit 1), "Certificate of Good Standing" from the Supreme Court of

10 New Jersey, (attached hereto as Exhibit 2), State Bar of Nevada Statement (attached hereto as

11 Exhibit 3) and Proposed Order Admitting to Practice (attached hereto as Exhibit 4).

12         Dated:  July 9, 2019

13                                        CAMPBELL & WILLIAMS

14

15                                        By: /s/ *Philip R. Erwin*

16                                            PHILIP R. ERWIN, ESQ. (11563)
                                             700 South Seventh Street
17                                           Las Vegas, NV 89101
                                             Tel: (702) 382-5222
18                                           Fax: (702) 382-0540
                                             pre@cwlawlv.com
19

20                                           *Attorney for Plaintiffs*

21

22

23

24

25

26

27

28

2

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that I am an employee of Campbell & Williams, and that on this 9th day of July, 2019, I caused the foregoing document entitled **MOTION TO ASSOCIATE GILBERT L. BROOKS AS COUNSEL** be served upon those persons designated by the parties in the E-Service Master List for the above-referenced matter in the Eighth Judicial District Court eFiling System in accordance with the mandatory electronic service requirements of Administrative Order 14-2 and the Nevada Electronic Filing and Conversion Rules.

/s/ *Lucinda Martinez*
*An Employee of Campbell and Williams*

3

# EXHIBIT 1

# EXHIBIT 1

VAPP

## DISTRICT COURT
## CLARK COUNTY, NEVADA

SCIENTIFIC GAMES CORPORATION, a
Nevada Corporation, and BALLY GAMING, INC,
a Nevada Corporation
                   Plaintiff,

         vs.

SYLEBRA HK COMPANY LIMITED, A Hong
Kong entity, et als.
                   Defendant.

Case No. A 19-796699-B
Dept. No. 27

## VERIFIED APPLICATION FOR ASSOCIATION
## OF COUNSEL UNDER NEVADA SUPREME COURT RULE 42

| Gilbert | Leonard | Brooks |
|---|---|---|
| First | Middle Name | Last |

, Petitioner, respectfully represents:

1. Petitioner resides at   33 Radcliffe Drive

                                           Street Address

| Voorhees | Camden | NJ | 08043 |
|---|---|---|---|
| City | County | State | Zip Code |

( 609 )   605-0531
Telephone

2. Petitioner is an attorney at law and a member of the law firm of:  Duane Morris LLP

with offices at   1940 Route 70 East, Suite 100
                                 Street Address

| Cherry Hill | Camden | NJ | 08003 |
|---|---|---|---|
| City | County | State | Zip Code |

( 856 )   874-4204                 gbrooks@duanemorris.com
Telephone                                  Email

3. Petitioner has been retained personally or as a member of the above named law firm by _____

_Scientific Games Corporation_                             to provide legal representation in

connection with the above-entitled matter now pending before the above referenced court.

4. Since _September_ of _1986_ , petitioner has been, and presently is, a member of good standing of

the bar of the highest court of the State of _New Jersey_ where petitioner regularly practices

law.

5. Petitioner was admitted to practice before the following United States District Courts, United

States Circuit Courts of Appeal, the Supreme Court of the United States, and/or courts of other states

on the dates indicated for each, and is presently a member in good standing of the bars of said Courts:

DATE ADMITTED

| | |
|---|---|
| US District Court for the District of New Jersey | September 3, 1986 |
| US Court of Appeals, 3rd Circuit | December 16, 1991 |

6. Is Petitioner currently suspended or disbarred in any court? You must answer yes or no. If yes,

give particulars; e.g., court, jurisdiction, date:_____ No

7. Is Petitioner currently subject to any disciplinary proceedings by any organization with authority

at law? You must answer yes or no. If yes, give particulars, e.g. court, discipline authority, date,

status:__ No

8. Has Petitioner ever received public discipline including, but not limited to, suspension or disbarment, by any organization with authority to discipline attorneys at law? You must answer yes or no. If yes, give particulars, e.g. court, discipline authority, date, status: __No__

9. Has Petitioner ever had any certificate or privilege to appear and practice before any regulatory administrative body suspended or revoked? You must answer yes or no. If yes, give particulars, e.g. date, administrative body, date of suspension or reinstatement: __No__

10. Has Petitioner, either by resignation, withdrawal, or otherwise, ever terminated or attempted to terminate Petitioner's office as an attorney in order to avoid administrative, disciplinary, disbarment, or suspension proceedings? You must answer yes or no. If yes, give particulars: __No__

11. Petitioner has filed the following application(s) to appear as counsel under Nevada Supreme Court Rule 42 during the past three (3) years in the following matters, if none, indicate so: *(do not include Federal Pro Hacs)*

| Date of Application | Cause | Title of Court Administrative Body or Arbitrator | Was Application Granted or Denied? |
|---|---|---|---|
| N/A | | | |

(If necessary, please attach a statement of additional applications)

12. Nevada Counsel of Record for Petition in this matter is:
(must be the same as the signature on the Nevada Counsel consent page)

| J. | Colby | Williams | 5549 |
|---|---|---|---|
| First Name | Middle Name | Last Name | NV Bar # |

who has offices at ___Campbell & Williams___
Firm Name/Company

| 700 South Seventh Street | , Las Vegas | Clark |
|---|---|---|
| Street Address | City | County |

| 89101 | , ( 702 ) 382-0540 |
|---|---|
| Zip Code | Phone Number |

13. The following accurately represents the names and addresses of each party in this matter, WHETHER OR NOT REPRESENTED BY COUNSEL, and the names and addresses of each counsel of record who appeared for said parties: (You may attach as an Exhibit if necessary.)

NAME                                                    MAILING ADDRESSS

See Exhibit 13

14. Petitioner agrees to comply with the provisions of Nevada Supreme Court Rule 42(3) and (13) and Petitioner consents to the jurisdiction of the courts and disciplinary boards of the State of Nevada in accordance with provisions as set forth in SCR 42(3) and (13). Petitioner respectfully requests that Petitioner be admitted to practice in the above-entitled court FOR THE PURPOSES OF THIS MATTER ONLY.

15. Petitioner has disclosed in writing to the client that the applicant is not admitted to practice in this jurisdiction and that the client has consented to such representation.

I, <u>Gilbert L. Brooks</u>, do hereby swear/affirm under penalty of perjury that the assertions
<span style="font-size:small">Print Petitioner Name</span>
of this application and the following statements are true:

1) That I am the Petitioner in the above entitled matter.

2) That I have read Supreme Court Rule (SCR) 42 and meet all requirements contained therein, including, without limitation, the requirements set forth in SCR 42(2), as follows:

   (A) I am not a member of the State Bar of Nevada;

   (B) I am not a resident of the State of Nevada;

   (C) I am not regularly employed as a lawyer in the State of Nevada;

   (D) I am not engaged in substantial business, professional, or other activities in the State of Nevada;

   (E) I am a member in good standing and eligible to practice before the bar of any jurisdiction of the United States; and

   (F) I have associated a lawyer who is an active member in good standing of the State Bar of Nevada as counsel of record in this action or proceeding.

2) That I have read the foregoing application and know the contents thereof; that the same is true of my own knowledge except as to those matters therein stated on information and belief, and as to the matter I believe them to be true.

That I further certify that I am subject to the jurisdiction of the Courts and disciplinary boards of this state with respect to the law of this state governing the conduct of attorneys to the same extent as a member of the State Bar of Nevada; that I understand and shall comply with the standards of professional conduct required by members of the State Bar of Nevada; and that I am subject to the disciplinary jurisdiction to the State Bar of Nevada with respect to any of my actions occurring in the course of such appearance.

DATED this __21__ day of ___June___ , 20 _19_

_(signature)_
Petitioner/Affiant (blue ink)

STATE OF _New Jersey_                )
                                     ) ss
COUNTY OF _Camden_                   )

Subscribed and sworn to before me

this _21st_ day of ___June___ , 20 _19_

_(signature)_
Notary Public

THERESA A BELCO
Notary Public - State of New Jersey
My Commission Expires Jun 8, 2023

**DESIGNATION, CERTIFICATION AND CONSENT OF NEVADA COUNSEL**

SCR 42(14)   Responsibilities of Nevada attorney of record.

(a) The Nevada attorney of record shall be responsible for and actively participate in the representation of a client in any proceeding that is subject to this rule.

(b) The Nevada attorney of record shall be present at all motions, pre-trials, or any matters in open court unless otherwise ordered by the court.

(c) The Nevada attorney of record shall be responsible to the court, arbitrator, mediator, or administrative agency or governmental body for the administration of any proceeding that is subject to this rule and for compliance with all state and local rules of practice. It is the responsibility of Nevada counsel to ensure that the proceeding is tried and managed in accordance with all applicable Nevada procedural and ethical rules.

I _S. Cowby Williams_ hereby agree to associate with Petitioner referenced hereinabove
 Print Nevada Counsel Name

and further agree to perform all of the duties and responsibilities as required by Nevada Supreme Court Rule 42.

DATED this __25th__ day of __June__ , 20 __19__ .

_____
Nevada Counsel of Record (blue ink)

STATE OF __Nevada__    )
                                        ) ss
COUNTY OF __Clark__    )

Subscribed and sworn to before me

this __25th__ day of __June__ , 20 __19__

_____
Notary Public

LUCINDA MARTINEZ
Notary Public - State of Nevada
County of Clark
APPT. NO. 05-99788-1
My App. Expires June 28, 2021

# EXHIBIT 13

| | |
|---|---|
| **Scientific Games Corporation**<br>6601 Bermuda Road<br>Las Vega, NV  89119<br>Plaintiff | **Bally Gaming, Inc.**<br>6601 Bermuda Road<br>Las Vegas, NV  89119<br>Plaintiff |
| **Counsel to Plaintiffs:**<br>J. Colby Williams, Esq.<br>Philip R. Erwin, Esq.<br>CAMPBELL & WILLIAMS<br>700 South Seventh Street<br>Las Vegas, NV  89101 | **Counsel to Plaintiffs:**<br>Kevin Orsini, Esq.<br>Christian N. Barreiro, Esq.<br>CRAVATH, SWAINE & MOORE, LLP<br>825 Eighth Avenue<br>New York, NY  10019 |
| **Counsel to Plaintiffs:**<br>Hersh Kozlov, Esq.<br>Gilbert L. Brooks, Esq.<br>DUANE MORRIS LLP<br>1940 Route 70 East, Suite 100<br>Cherry Hill, NJ  08003 | **Sylebra HK Company Limited,**<br>a Hong Kong entity<br>28 Hennessy Road, 20th Floor<br>28HR Wan Chai Hong Kong (SAR) |
| **Sylebra Capital Management Limited**<br>Intertrust Corp. Services (Cayman) Ltd.<br>190 Elgin Street<br>George Town, Grand Cayman<br>Cayman Islands, KY1-9005 | **Sylebra Capital Partners Master Fund, Limited**<br>Intertrust Corp. Services (Cayman) Ltd.<br>190 Elgin Street<br>George Town, Grand Cayman<br>Cayman Islands, KY1-9005 |
| **Sylebra Capital Partners (Offshore) Limited**<br>Intertrust Corp. Services (Cayman) Ltd.<br>190 Elgin Street<br>George Town, Grand Cayman<br>Cayman Islands, KY1-9005 | **Sylebra Capital Partners (Onshore) Limited**<br>Intertrust Corp. Services (Cayman) Ltd.<br>190 Elgin Street<br>George Town, Grand Cayman<br>Cayman Islands, KY1-9005 |

# EXHIBIT 2

# EXHIBIT 2

# Supreme Court of New Jersey



# Certificate of Good Standing

*This is to certify that* **GILBERT L BROOKS**
*(No.* **013291986** *) was constituted and appointed an Attorney at Law of New Jersey on* **September 02, 1986** *and, as such, has been admitted to practice before the Supreme Court and all other courts of this State as an Attorney at Law, according to its laws, rules, and customs.*

*I further certify that as of this date, the above-named is an Attorney at Law in Good Standing. For the purpose of this Certificate, an attorney is in "Good Standing" if the Court's records reflect that the attorney: 1) is current with all assessments imposed as a part of the filing of the annual Attorney Registration Statement, including, but not limited to, all obligations to the New Jersey Lawyers' Fund for Client Protection; 2) is not suspended or disbarred from the practice of law; 3) has not resigned from the Bar of this State; and 4) has not been transferred to Disability Inactive status pursuant to Rule 1:20-12.*

*Please note that this Certificate does not constitute confirmation of an attorney's satisfaction of the administrative requirements of Rule 1:21-1(a) for eligibility to practice law in this State.*



*In testimony whereof, I have hereunto set my hand and affixed the Seal of the Supreme Court, at Trenton, this* **20TH** *day of* **June** *, 20* **19** *.*

Clerk of the Supreme Court

-463a-

# EXHIBIT 3

# EXHIBIT 3

1   STAT

2

3                          **DISTRICT COURT**
                       **CLARK COUNTY, NEVADA**
4
                     Case No. A-19-796699-B
5                      Dept. No. XXVII

6
    Scientific Games Corporation
7
    vs.
8
    Sylebra HK Company Limited
9

10  _____/

11  **STATE BAR OF NEVADA STATEMENT PURSUANT TO SUPREME COURT RULE**
                            **42(3)(b)**
12

13      THE STATE BAR OF NEVADA, in response to the application of
14  Petitioner, submits the following statement pursuant to SCR42(3):

15  SCR42(6)**Discretion.**   The granting or denial of a motion to associate
    counsel pursuant to this rule by the court is discretionary.   The
16  court, arbitrator, mediator, or administrative or governmental
    hearing officer may revoke the authority of the person permitted to
17  appear under this rule. Absent special circumstances, repeated
    appearances by any person or firm of attorneys pursuant to this rule
18  shall be cause for denial of the motion to associate such person.

19      (a)     **Limitation.**   It shall be presumed, absent special
                circumstances, and only upon showing of good cause, that
20              more than 5 appearances by any attorney granted under
                this rule in a 3-year period is excessive use of this
21              rule.
22      (b)     **Burden on applicant.**   The applicant shall have the
                burden to establish special circumstances and good cause
23              for an appearance in excess of the limitation set forth
                in subsection 6(a) of this rule. The applicant shall set
24              forth the special circumstances and good cause in an
25              affidavit attached to the original verified application.

26   1. DATE OF APPLICATION: 6/27/2019

27   2. APPLYING ATTORNEY: Gilbert Leonard Brooks, Esq.

28   ///

1   3. FIRM NAME AND ADDRESS: Duane Morris LLP, 1940 Route 70 East,
        Suite 100, Cherry Hill, NJ 8043
2

3   4. NEVADA COUNSEL OF RECORD: J. Colby Williams, Esq., Campbell &
        Williams, 700 S. Seventh Street, Las Vegas, NV 89101

4   5. There is no record of previous applications for appearance by
        petitioner within the past three (3) years.
5

6

7   DATED this July 5, 2019

8

9                                          Suzy Moore
                                    Suzy Moore
10                                  Member Services Admin.
                                    Pro Hac Vice Processor
11                                  STATE BAR OF NEVADA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 4

# EXHIBIT 4

**ORAP**
CAMPBELL & WILLIAMS
J. COLBY WILLIAMS, ESQ. (5549)
jcw@cwlawlv.com
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

CRAVATH, SWAINE & MOORE LLP          DUANE MORRIS LLP
KEVIN J. ORSINI, ESQ. (*pro hac vice*    HERSH KOZLOV, ESQ. (*pro hac vice*
forthcoming)                          forthcoming)
korsini@cravath.com                   hkozlov@duanemorris.com
CHRISTINA N. BARREIRO, ESQ. (*pro hac vice*   GILBERT L. BROOKS (*pro hac vice*
forthcoming)                          forthcoming)
cbarreiro@cravath.com                 gbrooks@duanemorris.com
825 Eighth Avenue                     1940 Route 70 East, Suite 100
New York, New York 10019              Cherry Hill, New Jersey 08003
Telephone: (212) 474-1000             Telephone: (856) 874-4200
Facsimile: (212) 474-3700             Facsimile: (856) 424-4446


*Attorneys for Plaintiffs*

## DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| SCIENTIFIC GAMES CORPORATION, a Nevada Corporation, and BALLY GAMING, INC., a Nevada Corporation, | CASE NO.: A-19-796699-B DEPT. NO.: 27 |
| Plaintiffs, | **ORDER ADMITTING TO PRACTICE** |
| v. | |
| SYLEBRA HK COMPANY LIMITED, a Hong Kong entity, SYLEBRA CAPITAL MANAGEMENT LIMITED, a Cayman Islands entity, SYLEBRA CAPITAL PARTNERS MASTER FUND, LIMITED, a Cayman Islands hedge fund, SYLEBRA CAPITAL PARTNERS (OFFSHORE) LIMITED, a Cayman Islands hedge fund, and | |

1

SYLEBRA CAPITAL PARTNERS        )
(ONSHORE) LIMITED, a Cayman     )
Islands hedge fund,

        Defendants.

1

2

3

4        Gilbert L. Brooks, Esq. having filed his **MOTION TO ASSOCIATE COUNSEL** under

5    Nevada Supreme Court 42, together with a Verified Application for Association of Counsel,

6    Certificate of Good Standing from the Supreme Court of New Jersey, and the State Bar of Nevada

7    Statement; said application having been noticed, no objections having been made, and the Court

8    being fully apprised in the premises, and good cause appearing, it is hereby;

9

10        **ORDERED**, that said application is hereby granted, and Gilbert L. Brooks, Esq. is hereby

11    admitted to practice in the above-entitled Court for the purposes of the above-entitled matter only.

12        DATED this _____ day of July, 2019

13

14

15                                            _____

16                                            District Judge

17    By:_____
         Philip R. Erwin, Esq.
18       Campbell & Williams
         700 South Seventh Street
19       Las Vegas. Nevada 89101
         (702) 382-5222-phone
20       (702) 382-0540-fax
         *Attorney for Plaintiffs*

21

22

23

24

25

26

27

28

EXHIBIT D

**Electronically Filed**
7/9/2019 5:42 PM
Steven D. Grierson
**CLERK OF THE COURT**

**MASS**
CAMPBELL & WILLIAMS
J. COLBY WILLIAMS, ESQ. (5549)
jcw@cwlawlv.com
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

CRAVATH, SWAINE & MOORE LLP
KEVIN J. ORSINI, ESQ. (*pro hac vice*
forthcoming)
korsini@cravath.com
CHRISTINA N. BARREIRO, ESQ. (*pro hac vice*
forthcoming)
cbarreiro@cravath.com
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

DUANE MORRIS LLP
HERSH KOZLOV, ESQ. (*pro hac vice*
forthcoming)
hkozlov@duanemorris.com
GILBERT L. BROOKS (*pro hac vice*
forthcoming)
gbrooks@duanemorris.com
1940 Route 70 East, Suite 100
Cherry Hill, New Jersey 08003
Telephone: (856) 874-4200
Facsimile: (856) 424-4446

*Attorneys for Plaintiffs*

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

| | |
|---|---|
| SCIENTIFIC GAMES CORPORATION, a Nevada Corporation, and BALLY GAMING, INC., a Nevada Corporation, | CASE NO.: A-19-796699-B DEPT. NO.: 27 |
| Plaintiffs, | **MOTION TO ASSOCIATE CHRISTINA N. BARREIRO AS COUNSEL** |
| v. | |
| SYLEBRA HK COMPANY LIMITED, a Hong Kong entity, SYLEBRA CAPITAL MANAGEMENT LIMITED, a Cayman Islands entity, SYLEBRA CAPITAL PARTNERS MASTER FUND, LIMITED, a Cayman Islands hedge fund, SYLEBRA CAPITAL PARTNERS (OFFSHORE) LIMITED, a Cayman Islands hedge fund, and SYLEBRA CAPITAL PARTNERS | **HEARING REQUESTED** |

*Sidebar (vertical text):* CAMPBELL & WILLIAMS ATTORNEYS AT LAW 700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101 Phone: 702.382.5222 • Fax: 702.382.0540 www.campbellandwilliams.com

1

(ONSHORE) LIMITED, a Cayman                )
Islands hedge fund,

                    Defendants.

        Plaintiffs, Scientific Games Corporation and Bally Gaming, Inc., by and through their

undersigned counsel of record, Campbell & Williams, is requesting the Court for an order

permitting Christina N. Barreiro, Esq. to practice in this Court for the purpose of this case only,

pursuant to Nevada Supreme Court Rule 42 (SCR 42).   Christina N. Barreiro, Esq., having

complied with the requirements as set forth in SCR 42, hereby submits a "Verified Application for

Association of Counsel," (Exhibit 1), "Certificate of Good Standing" from the Appellate Division

of the Sumpreme Court of the State of New York Second Judicial Department (attached hereto as

Exhibit 2), State Bar of Nevada Statement (attached hereto as Exhibit 3) and Proposed Order

Admitting to Practice (attached hereto as Exhibit 4).

        Dated:  July 9, 2019

                                CAMPBELL & WILLIAMS


                        By:  /s/ *Philip R. Erwin*
                            PHILIP R. ERWIN, ESQ. (11563)
                            700 South Seventh Street
                            Las Vegas, NV 89101
                            Tel: (702) 382-5222
                            Fax: (702) 382-0540
                            pre@cwlawlv.com

                            *Attorney for Plaintiffs*

2

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that I am an employee of Campbell & Williams, and that on this 9th day of July, 2019, I caused the foregoing document entitled **MOTION TO ASSOCIATE CHRISTINA N. BARREIRO AS COUNSEL** be served upon those persons designated by the parties in the E-Service Master List for the above-referenced matter in the Eighth Judicial District Court eFiling System in accordance with the mandatory electronic service requirements of Administrative Order 14-2 and the Nevada Electronic Filing and Conversion Rules.

*/s/ **Lucinda Martinez***
*An Employee of Campbell and Williams*

# EXHIBIT 1

# EXHIBIT 1

VAPP

# DISTRICT COURT
# CLARK COUNTY, NEVADA

SCIENTIFIC GAMES
CORPORATION and BALLY )
GAMING, INC. )
         Plaintiff, )
     vs. )
SYLEBRA HK COMPANY LIMITED, SYLEBRA )
CAPITAL MANAGEMENT LIMITED, SYLEBRA )
CAPITAL PARTNERS MASTER FUND, LIMITED, )
SYLEBRA CAPITAL PARTNERS (OFFSHORE) )
LIMITED and SYLEBRA CAPITAL PARTNERS )
(ONSHORE) LIMITED, Defendants. )

Case No.  A-19-796699-B
Dept. No.  27

## VERIFIED APPLICATION FOR ASSOCIATION
## OF COUNSEL UNDER NEVADA SUPREME COURT RULE 42

| Christina | Norma | Barreiro |
|---|---|---|
| First | Middle Name | Last |

, Petitioner, respectfully represents:

1. Petitioner resides at ___159 West 73rd Street, 5F___

                       Street Address

| New York | New York | NY | 10023 |
|---|---|---|---|
| City | County | State | Zip Code |

( 914 )  484-7632
       Telephone

2. Petitioner is an attorney at law and a member of the law firm of:  Cravath, Swaine & Moore LLP

with offices at ___825 Eighth Avenue___

                     Street Address

| New York | New York | New York | 10019 |
|---|---|---|---|
| City | County | State | Zip Code |

( 212 )  474-1000          cbarreiro@cravath.com
       Telephone                     Email

3. Petitioner has been retained personally or as a member of the above named law firm by _____ Scientific Games Corporation and Bally Gaming, Inc. _____ to provide legal representation in connection with the above-entitled matter now pending before the above referenced court.

4. Since February 3 of 2016 , petitioner has been, and presently is, a member of good standing of the bar of the highest court of the State of New York _____ where petitioner regularly practices law.

5. Petitioner was admitted to practice before the following United States District Courts, United States Circuit Courts of Appeal, the Supreme Court of the United States, and/or courts of other states on the dates indicated for each, and is presently a member in good standing of the bars of said Courts:

DATE ADMITTED

U.S District Court for the Southern District of New York (9/20/2016);

U.S District Court for the Eastern District of New York (9/20/2016);

6. Is Petitioner currently suspended or disbarred in any court? You must answer yes or no. If yes, give particulars; e.g., court, jurisdiction, date:  No.

7. Is Petitioner currently subject to any disciplinary proceedings by any organization with authority at law? You must answer yes or no. If yes, give particulars, e.g. court, discipline authority, date, status:  No.

8. Has Petitioner ever received public discipline including, but not limited to, suspension or disbarment, by any organization with authority to discipline attorneys at law? You must answer yes or no. If yes, give particulars, e.g. court, discipline authority, date, status: ___No.___

_____

_____

9. Has Petitioner ever had any certificate or privilege to appear and practice before any regulatory administrative body suspended or revoked? You must answer yes or no. If yes, give particulars, e.g. date, administrative body, date of suspension or reinstatement: ___No.___

_____

_____

10. Has Petitioner, either by resignation, withdrawal, or otherwise, ever terminated or attempted to terminate Petitioner's office as an attorney in order to avoid administrative, disciplinary, disbarment, or suspension proceedings? You must answer yes or no. If yes, give particulars: ___No.___

_____

_____

11. Petitioner has filed the following application(s) to appear as counsel under Nevada Supreme Court Rule 42 during the past three (3) years in the following matters, if none, indicate so: *(do not include Federal Pro Hacs)*

| Date of Application | Cause | Title of Court Administrative Body or Arbitrator | Was Application Granted or Denied? |
|---|---|---|---|
| None. | | | |

_____

(If necessary, please attach a statement of additional applications)

12. Nevada Counsel of Record for Petition in this matter is:
(must be the same as the signature on the Nevada Counsel consent page)

| J. | Colby | Williams | 5549 |
|---|---|---|---|
| First Name | Middle Name | Last Name | NV Bar # |

who has offices at ___Campbell & Williams___

Firm Name/Company

| 700 South Seventh Street | Las Vegas | Clark |
|---|---|---|
| Street Address | City | County |

| 89101 | ( 702 ) 382-5222 |
|---|---|
| Zip Code | Phone Number |

13. The following accurately represents the names and addresses of each party in this matter, WHETHER OR NOT REPRESENTED BY COUNSEL, and the names and addresses of each counsel of record who appeared for said parties: (You may attach as an Exhibit if necessary.)

NAME                                                    MAILING ADDRESSS

See Exhibit A.

14. Petitioner agrees to comply with the provisions of Nevada Supreme Court Rule 42(3) and (13) and Petitioner consents to the jurisdiction of the courts and disciplinary boards of the State of Nevada in accordance with provisions as set forth in SCR 42(3) and (13). Petitioner respectfully requests that Petitioner be admitted to practice in the above-entitled court FOR THE PURPOSES OF THIS MATTER ONLY.

15. Petitioner has disclosed in writing to the client that the applicant is not admitted to practice in this jurisdiction and that the client has consented to such representation.

I, __Christina N. Barreiro__ , do hereby swear/affirm under penalty of perjury that the assertions
<small>Print Petitioner Name</small>
of this application and the following statements are true:

1) That I am the Petitioner in the above entitled matter.

2) That I have read Supreme Court Rule (SCR) 42 and meet all requirements contained
therein, including, without limitation, the requirements set forth in SCR 42(2), as follows:

(A)   I am not a member of the State Bar of Nevada;

(B)   I am not a resident of the State of Nevada;

(C)   I am not regularly employed as a lawyer in the State of Nevada;

(D)   I am not engaged in substantial business, professional, or other activities in the
State of Nevada;

(E)   I am a member in good standing and eligible to practice before the bar of any
jurisdiction of the United States; and

(F)   I have associated a lawyer who is an active member in good standing of the State
Bar of Nevada as counsel of record in this action or proceeding.

2) That I have read the foregoing application and know the contents thereof; that the same is
true of my own knowledge except as to those matters therein stated on information and
belief, and as to the matter I believe them to be true.

That I further certify that I am subject to the jurisdiction of the Courts and disciplinary boards of
this state with respect to the law of this state governing the conduct of attorneys to the same extent as
a member of the State Bar of Nevada; that I understand and shall comply with the standards of
professional conduct required by members of the State Bar of Nevada; and that I am subject to the
disciplinary jurisdiction to the State Bar of Nevada with respect to any of my actions occurring in the
course of such appearance.

DATED this _25th_ day of _June_ , 20 19

_____
Petitioner/Affiant (blue ink)

STATE OF _New York_  )
                                              ) ss
COUNTY OF _New York_  )

Subscribed and sworn to before me

this _25th_ day of _June_ , 20 19

_____
Notary Public

ELIZABETH R. LEWIS
Notary Public, State of New York
No. 01LE6380589
Qualified in New York County
Commission Expires 09/10/2022

## DESIGNATION, CERTIFICATION AND CONSENT OF NEVADA COUNSEL

SCR 42(14)   Responsibilities of Nevada attorney of record.

(a) The Nevada attorney of record shall be responsible for and actively participate in the representation of a client in any proceeding that is subject to this rule.

(b) The Nevada attorney of record shall be present at all motions, pre-trials, or any matters in open court unless otherwise ordered by the court.

(c) The Nevada attorney of record shall be responsible to the court, arbitrator, mediator, or administrative agency or governmental body for the administration of any proceeding that is subject to this rule and for compliance with all state and local rules of practice. It is the responsibility of Nevada counsel to ensure that the proceeding is tried and managed in accordance with all applicable Nevada procedural and ethical rules.

I __J. Colby Williams__ hereby agree to associate with Petitioner referenced hereinabove
Print Nevada Counsel Name

and further agree to perform all of the duties and responsibilities as required by Nevada Supreme Court Rule 42.

DATED this __26th__ day of __June__ , 20 __19__

_____
Nevada Counsel of Record (blue ink)

STATE OF __Nevada__ )
                                          ) ss
COUNTY OF __Clark__ )

Subscribed and sworn to before me

this __26th__ day of __June__ , 20 __19__

_____
Notary Public

LUCINDA MARTINEZ
Notary Public - State of Nevada
County of Clark
APPT. NO. 05-99788-1
My App. Expires June 28, 2021

# EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| SCIENTIFIC GAMES CORPORATION, a Nevada Corporation, and BALLY GAMING, INC., a Nevada Corporation,<br><br>      Plaintiffs,<br><br>      v.<br><br>SYLEBRA HK COMPANY LIMITED, a Hong Kong entity, SYLEBRA CAPITAL MANAGEMENT LIMITED, a Cayman Islands entity, SYLEBRA CAPITAL PARTNERS MASTER FUND, LIMITED, a Cayman Islands hedge fund, SYLEBRA CAPITAL PARTNERS (OFFSHORE) LIMITED, a Cayman Islands hedge fund, and SYLEBRA CAPITAL PARTNERS (ONSHORE) LIMITED, a Cayman Islands hedge fund,<br><br>      Defendants. | CASE NO.: A-19-796699-B<br>DEPT. NO.: 27 |

## EXHIBIT TO VERIFIED APPLICATION FOR ASSOCIATION OF COUNSEL UNDER NEVADA SUPREME COURT RULE 42ff

Question 13.

1. Scientific Games Corporation
   6601 Bermuda Road
   Las Vegas, Nevada 89119

   *Plaintiff*

2. Campbell and Williams
   J. Colby Williams, Esq.
   Philip R. Erwin, Esq.
   700 South Seventh Street
   Las Vegas, Nevada 89101

   *Counsel for Plaintiffs*

3. Duane Morris, LLP
   Hersh Kozlov, Esq.
   Gilbert L. Brooks, Esq.

1940 Route 70 East, Suite 100
Cherry Hill, New Jersey 08003

*Counsel for Plaintiffs*

4.  Intertrust Corp. Services (Cayman) Ltd.
    190 Elgin Steet
    George Town, Grand Cayman
    Cayman Islands, KYI-9005

    *Sylebra Capital Management Limited*

5.  Intertrust Corp. Services (Cayman) Ltd.
    190 Elgin Street
    George Town, Grand Cayman
    Cayman Islands, KYI-9005

    *Sylebra Capital Partners (Offshore) Limited*

6.  Bally Gaming, Inc.
    6601 Bermuda Road
    Las Vegas, Nevada 89119

    *Plaintiff*

7.  Cravath Swaine & Moore, LLP
    Kevin Orsini, Esq.
    Christian N. Barreiro, Esq.
    825 Eighth Avenue
    New York, New York

    *Counsel for Bally Gaming, Inc.*

8.  Sylebra HK Company Limited
    A Hong Kong Entity
    28 Hennessey Road, 20th Floor
    28 HR Wan Chai Hong Kong (SAR)

9.  Intertrust Corp. Services (Cayman) Ltd.
    190 Elgin Street
    George Town, Grand Cayman
    Cayman Islands, KYI-9005

    *Sylebra Capital Partners Master Fund, Limited*

10. Intertrust Corp. Services (Cayman) Ltd.
    190 Elgin Steet

George Town, Grand Cayman
Cayman Islands, KYI-9005

*Sylebra Capital Partners (Onshore) Limited*

# EXHIBIT 2

# EXHIBIT 2



# Appellate Division of the Supreme Court
# of the State of New York
# Second Judicial Department

---

I, Aprilanne Agostino,    Clerk of the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, do hereby certify that    **Christina Norma Barreiro**    was duly licensed and admitted to practice as an Attorney and Counselor-at-Law in all the courts of the State, according to the laws of the State and the court rules and orders, on the  **3 rd**   day of    **February 2016,** has duly taken and subscribed the oath of office prescribed by law, has been enrolled in the Roll of Attorneys and Counselors-at-Law on file in my office, has duly registered with the administrative office of the courts, and according to the records of this court is in good standing as an Attorney and Counselor-at-Law.



In Witness Whereof, I have hereunto set my hand and affixed the seal of said Appellate Division on  June 13, 2019.

*Aprilanne Agostino*

Clerk of the Court

# EXHIBIT 3

# EXHIBIT 3

1  STAT

2

3                              **DISTRICT COURT**
                            **CLARK COUNTY, NEVADA**

4
                            Case No. A-19-796699-B
5                              Dept. No. XXVII

6
    Scientific Games Corporation
7
    vs.
8
    Sylebra HK Company Limited
9

10  _____/

11  <u>**STATE BAR OF NEVADA STATEMENT PURSUANT TO SUPREME COURT RULE**</u>
                              <u>**42(3)(b)**</u>
12

13      THE STATE BAR OF NEVADA, in response to the application of
14  Petitioner, submits the following statement pursuant to SCR42(3):

15  SCR42(6)**Discretion.**  The granting or denial of a motion to associate
    counsel pursuant to this rule by the court is discretionary.  The
16  court, arbitrator, mediator, or administrative or governmental
    hearing officer may revoke the authority of the person permitted to
17  appear under this rule. Absent special circumstances, repeated
    appearances by any person or firm of attorneys pursuant to this rule
18  shall be cause for denial of the motion to associate such person.

19      (a)      **Limitation.**  It shall be presumed, absent special
                 circumstances, and only upon showing of good cause, that
20               more than 5 appearances by any attorney granted under
                 this rule in a 3-year period is excessive use of this
21               rule.
22      (b)      **Burden on applicant.**  The applicant shall have the
                 burden to establish special circumstances and good cause
23               for an appearance in excess of the limitation set forth
                 in subsection 6(a) of this rule. The applicant shall set
24               forth the special circumstances and good cause in an
25               affidavit attached to the original verified application.

26  1. DATE OF APPLICATION: 6/27/2019

27  2. APPLYING ATTORNEY: <u>Christina Norma Barreiro, Esq.</u>

28  ///

3. FIRM NAME AND ADDRESS: Cravath, Swaine & Moore LLP, 825 Eighth Ave., New York, NY 10019

4. NEVADA COUNSEL OF RECORD: J. Colby Williams, Esq., Campbell & Williams, 700 S. Seventh Street, Las Vegas, NV 89101

5. There is no record of previous applications for appearance by petitioner within the past three (3) years.

DATED this July 5, 2019

Suzy Moore
Member Services Admin.
Pro Hac Vice Processor
STATE BAR OF NEVADA

# EXHIBIT 4

# EXHIBIT 4

**ORAP**
CAMPBELL & WILLIAMS
J. COLBY WILLIAMS, ESQ. (5549)
jcw@cwlawlv.com
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

CRAVATH, SWAINE & MOORE LLP
KEVIN J. ORSINI, ESQ. (*pro hac vice*
forthcoming)
korsini@cravath.com
CHRISTINA N. BARREIRO, ESQ. (*pro hac vice*
forthcoming)
cbarreiro@cravath.com
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

DUANE MORRIS LLP
HERSH KOZLOV, ESQ. (*pro hac vice*
forthcoming)
hkozlov@duanemorris.com
GILBERT L. BROOKS (*pro hac vice*
forthcoming)
gbrooks@duanemorris.com
1940 Route 70 East, Suite 100
Cherry Hill, New Jersey 08003
Telephone: (856) 874-4200
Facsimile: (856) 424-4446

*Attorneys for Plaintiffs*

# DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| SCIENTIFIC GAMES CORPORATION, a Nevada Corporation, and BALLY GAMING, INC., a Nevada Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>SYLEBRA HK COMPANY LIMITED, a Hong Kong entity, SYLEBRA CAPITAL MANAGEMENT LIMITED, a Cayman Islands entity, SYLEBRA CAPITAL PARTNERS MASTER FUND, LIMITED, a Cayman Islands hedge fund, SYLEBRA CAPITAL PARTNERS (OFFSHORE) LIMITED, a Cayman Islands hedge fund, and SYLEBRA CAPITAL PARTNERS | CASE NO.: A-19-796699-B<br>DEPT. NO.: 27<br><br><br>**ORDER ADMITTING TO PRACTICE** |

1

*Campbell & Williams — ATTORNEYS AT LAW — 700 South Seventh Street, Las Vegas, Nevada 89101 — Phone: 702.382.5222 • Fax: 702.382.0540 — www.campbellandwilliams.com*

(ONSHORE) LIMITED, a Cayman          )
Islands hedge fund,

                    Defendants.
_____

Christina N. Barreiro, Esq. having filed her **MOTION TO ASSOCIATE COUNSEL**

under Nevada Supreme Court 42, together with a Verified Application for Association of Counsel,

Certificates of Good Standing from the Appellate Division of the Sumpreme Court of the State of

New York Second Judicial Department and the State Bar of Nevada Statement; said application

having been noticed, no objections having been made, and the Court being fully apprised in the

premises, and good cause appearing, it is hereby;

**ORDERED**, that said application is hereby granted, and Christina N. Barreiro, Esq. is

hereby admitted to practice in the above-entitled Court for the purposes of the above-entitled

matter only.

          DATED this _____ day of July, 2019


                                                          _____
                                                          District Judge


          By:_____
              Philip R. Erwin, Esq.
              Campbell & Williams
              700 South Seventh Street
              Las Vegas. Nevada 89101
              (702) 382-5222-phone
              (702) 382-0540-fax
              *Attorney for Plaintiffs*

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222  •  Fax: 702.382.0540
www.campbellandwilliams.com

2

EXHIBIT E

Electronically Filed
7/9/2019 5:44 PM
Steven D. Grierson
CLERK OF THE COURT

MASS
CAMPBELL & WILLIAMS
J. COLBY WILLIAMS, ESQ. (5549)
jcw@cwlawlv.com
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

CRAVATH, SWAINE & MOORE LLP
KEVIN J. ORSINI, ESQ. (*pro hac vice* forthcoming)
korsini@cravath.com
CHRISTINA N. BARREIRO, ESQ. (*pro hac vice* forthcoming)
cbarreiro@cravath.com
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

DUANE MORRIS LLP
HERSH KOZLOV, ESQ. (*pro hac vice* forthcoming)
hkozlov@duanemorris.com
GILBERT L. BROOKS (*pro hac vice* forthcoming)
gbrooks@duanemorris.com
1940 Route 70 East, Suite 100
Cherry Hill, New Jersey 08003
Telephone: (856) 874-4200
Facsimile: (856) 424-4446

*Attorneys for Plaintiffs*

CAMPBELL & WILLIAMS
ATTORNEYS AT LAW
700 SOUTH SEVENTH STREET, LAS VEGAS, NEVADA 89101
Phone: 702.382.5222 • Fax: 702.382.0540
www.campbellandwilliams.com

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

SCIENTIFIC GAMES CORPORATION, a Nevada Corporation, and BALLY GAMING, INC., a Nevada Corporation,

Plaintiffs,

v.

SYLEBRA HK COMPANY LIMITED, a Hong Kong entity, SYLEBRA CAPITAL MANAGEMENT LIMITED, a Cayman Islands entity, SYLEBRA CAPITAL PARTNERS MASTER FUND, LIMITED, a Cayman Islands hedge fund, SYLEBRA CAPITAL PARTNERS (OFFSHORE) LIMITED, a Cayman Islands hedge fund, and SYLEBRA CAPITAL PARTNERS

CASE NO.: A-19-796699-B
DEPT. NO.: 27

**MOTION TO ASSOCIATE HERSCHEL KOZLOV AS COUNSEL**

**HEARING REQUESTED**

(ONSHORE) LIMITED, a Cayman        )
Islands hedge fund,

            Defendants.

Plaintiffs, Scientific Games Corporation and Bally Gaming, Inc., by and through their undersigned counsel of record, Campbell & Williams, is requesting the Court for an order permitting Herschel Kozlov, Esq. to practice in this Court for the purpose of this case only, pursuant to Nevada Supreme Court Rule 42 (SCR 42).  Herschel Kozlov, Esq., having complied with the requirements as set forth in SCR 42, hereby submits a "Verified Application for Association of Counsel," (Exhibit 1), "Certificates of Good Standing" from the Supreme Court of New Jersey and the Supreme Court of the State of Colorado  (attached hereto as Exhibit 2), State Bar of Nevada Statement (attached hereto as Exhibit 3) and Proposed Order Admitting to Practice (attached hereto as Exhibit 4).

        Dated:  July 9, 2019

                                CAMPBELL & WILLIAMS


                                By: /s/ *Philip R. Erwin*
                                    PHILIP R. ERWIN, ESQ. (11563)
                                    700 South Seventh Street
                                    Las Vegas, NV 89101
                                    Tel: (702) 382-5222
                                    Fax: (702) 382-0540
                                    pre@cwlawlv.com

                                    *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that I am an employee of Campbell & Williams, and that on this 9th day of July, 2019, I caused the foregoing document entitled **MOTION TO ASSOCIATE HERSCHEL KOZLOV AS COUNSEL** be served upon those persons designated by the parties in the E-Service Master List for the above-referenced matter in the Eighth Judicial District Court eFiling System in accordance with the mandatory electronic service requirements of Administrative Order 14-2 and the Nevada Electronic Filing and Conversion Rules.

/s/ *Lucinda Martinez*
*An Employee of Campbell and Williams*

# EXHIBIT 1

# EXHIBIT 1

VAPP

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

SCIENTIFIC GAMES CORPORATION, a
Nevada Corporation, and BALLY
GAMING, INC., a Nevada Corporation
                 Plaintiff,

vs.

SYLEBRA HK COMPANY LIMITED, A Hong
Kong entity, et als.        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No.  A 19-796699-B
Dept. No.   27

**VERIFIED APPLICATION FOR ASSOCIATION**
**OF COUNSEL UNDER NEVADA SUPREME COURT RULE 42**

| Herschel | n/a | Kozlov | , Petitioner, respectfully represents: |
|----------|-----|--------|----------------------------------------|
| First | Middle Name | Last | |

1. Petitioner resides at   12338 Colliers Reserve Drive

                                            Street Address

| Naples | Collier | FL | 34110 |
|--------|---------|-----|-------|
| City | County | State | Zip Code |

( 609 ) 413 2728
         Telephone

2. Petitioner is an attorney at law and a member of the law firm of:  Duane Morris LLP

with offices at   1940 Route 70 East, Suite 100

                              Street Address

| Cherry Hill | Camden | NJ | 08003 |
|-------------|--------|-----|-------|
| City | County | State | Zip Code |

( 856 ) 424-8200                      hkozlov@duanemorris.com
        Telephone                               Email

3. Petitioner has been retained personally or as a member of the above named law firm by _____ Scientific Games Corporation   .  _____ to provide legal representation in connection with the above-entitled matter now pending before the above referenced court.

4. Since November of 1972, petitioner has been, and presently is, a member of good standing of the bar of the highest court of the State of New Jersey _____ where petitioner regularly practices law.

5. Petitioner was admitted to practice before the following United States District Courts, United States Circuit Courts of Appeal, the Supreme Court of the United States, and/or courts of other states on the dates indicated for each, and is presently a member in good standing of the bars of said Courts:

|  | DATE ADMITTED |
|---|---|
| US District Court for the District of New Jersey | November 27, 1972 |
| US Court of Appeals, 3rd Circuit | January 10, 1977 |
| Supreme Court, State of Colorado | May 4, 1998 |

6. Is Petitioner currently suspended or disbarred in any court? You must answer yes or no. If yes, give particulars; e.g., court, jurisdiction, date: No _____

7. Is Petitioner currently subject to any disciplinary proceedings by any organization with authority at law? You must answer yes or no. If yes, give particulars, e.g. court, discipline authority, date, status: No _____

8. Has Petitioner ever received public discipline including, but not limited to, suspension or disbarment, by any organization with authority to discipline attorneys at law? You must answer yes or no. If yes, give particulars, e.g. court, discipline authority, date, status:   No

9. Has Petitioner ever had any certificate or privilege to appear and practice before any regulatory administrative body suspended or revoked? You must answer yes or no. If yes, give particulars, e.g. date, administrative body, date of suspension or reinstatement:   No

10. Has Petitioner, either by resignation, withdrawal, or otherwise, ever terminated or attempted to terminate Petitioner's office as an attorney in order to avoid administrative, disciplinary, disbarment, or suspension proceedings? You must answer yes or no. If yes, give particulars:   No

11. Petitioner has filed the following application(s) to appear as counsel under Nevada Supreme Court Rule 42 during the past three (3) years in the following matters, if none, indicate so: *(do not include Federal Pro Hacs)*

| Date of Application | Cause | Title of Court Administrative Body or Arbitrator | Was Application Granted or Denied? |
|---|---|---|---|
| 12/31/2015 | Steven Jacobs v. Las Vegas Sands Corp. | District Court, Clark County | Granted |

(If necessary, please attach a statement of additional applications)

12. Nevada Counsel of Record for Petition in this matter is:
(must be the same as the signature on the Nevada Counsel consent page)

| J. | Colby | Williams | 5549 |
|---|---|---|---|
| First Name | Middle Name | Last Name | NV Bar # |

who has offices at  Campbell & Williams
Firm Name/Company

| 700 South Seventh Street | | Las Vegas | Clark |
|---|---|---|---|
| Street Address | | City | County |

| 89101 | ( 702 ) | 382-5222 | |
|---|---|---|---|
| Zip Code | | Phone Number | |

13. The following accurately represents the names and addresses of each party in this matter,

WHETHER OR NOT REPRESENTED BY COUNSEL, and the names and addresses of each

counsel of record who appeared for said parties: (You may attach as an Exhibit if necessary.)

NAME                                                    MAILING ADDRESSS

See Exhibit 13

14. Petitioner agrees to comply with the provisions of Nevada Supreme Court Rule 42(3) and (13) and Petitioner consents to the jurisdiction of the courts and disciplinary boards of the State of Nevada in accordance with provisions as set forth in SCR 42(3) and (13). Petitioner respectfully requests that Petitioner be admitted to practice in the above-entitled court FOR THE PURPOSES OF THIS MATTER ONLY.

15. Petitioner has disclosed in writing to the client that the applicant is not admitted to practice in this jurisdiction and that the client has consented to such representation.

I, __Herschel Kozlov_____, do hereby swear/affirm under penalty of perjury that the assertions
<span style="font-size:small">Print Petitioner Name</span>

of this application and the following statements are true:

1)      That I am the Petitioner in the above entitled matter.

2)      That I have read Supreme Court Rule (SCR) 42 and meet all requirements contained

therein, including, without limitation, the requirements set forth in SCR 42(2), as follows:

        (A)   I am not a member of the State Bar of Nevada;

        (B)   I am not a resident of the State of Nevada;

        (C)   I am not regularly employed as a lawyer in the State of Nevada;

        (D)   I am not engaged in substantial business, professional, or other activities in the
        State of Nevada;

        (E)   I am a member in good standing and eligible to practice before the bar of any
        jurisdiction of the United States; and

        (F)   I have associated a lawyer who is an active member in good standing of the State
        Bar of Nevada as counsel of record in this action or proceeding.

2)  That I have read the foregoing application and know the contents thereof; that the same is
true of my own knowledge except as to those matters therein stated on information and
belief, and as to the matter I believe them to be true.

That I further certify that I am subject to the jurisdiction of the Courts and disciplinary boards of
this state with respect to the law of this state governing the conduct of attorneys to the same extent as
a member of the State Bar of Nevada; that I understand and shall comply with the standards of
professional conduct required by members of the State Bar of Nevada; and that I am subject to the
disciplinary jurisdiction to the State Bar of Nevada with respect to any of my actions occurring in the
course of such appearance.

DATED this _24th_ day of _June_____, 20 19

_____
Petitioner/Affiant (blue ink)

STATE OF _New Jersey_____ )
                                             ) ss
COUNTY OF _Camden_____ )

Subscribed and sworn to before me

this _24th_ day of _June_____, 20 19

_Theresa A. Belco_____
Notary Public

THERESA A BELCO
Notary Public - State of New Jersey
My Commission Expires Jun 8, 2023

## DESIGNATION, CERTIFICATION AND CONSENT OF NEVADA COUNSEL

SCR 42(14)    Responsibilities of Nevada attorney of record.

(a) The Nevada attorney of record shall be responsible for and actively participate in the representation of a client in any proceeding that is subject to this rule.

(b) The Nevada attorney of record shall be present at all motions, pre-trials, or any matters in open court unless otherwise ordered by the court.

(c) The Nevada attorney of record shall be responsible to the court, arbitrator, mediator, or administrative agency or governmental body for the administration of any proceeding that is subject to this rule and for compliance with all state and local rules of practice. It is the responsibility of Nevada counsel to ensure that the proceeding is tried and managed in accordance with all applicable Nevada procedural and ethical rules.

I ___J. COLBY WILLIAMS___ hereby agree to associate with Petitioner referenced hereinabove

Print Nevada Counsel Name

and further agree to perform all of the duties and responsibilities as required by Nevada Supreme Court Rule 42.

DATED this __25th__ day of __June__, 20 __19__

_____
Nevada Counsel of Record (blue ink)

STATE OF __Nevada__          )
                             ) ss
COUNTY OF __Clark__          )

Subscribed and sworn to before me

this __25th__ day of __June__, 20 __19__

_____
Notary Public

LUCINDA MARTINEZ
Notary Public - State of Nevada
County of Clark
APPT. NO. 05-99788-1
My App. Expires June 28, 2021

# EXHIBIT 13

| | |
|---|---|
| **Scientific Games Corporation**<br>6601 Bermuda Road<br>Las Vega, NV  89119<br>Plaintiff | **Bally Gaming, Inc.**<br>6601 Bermuda Road<br>Las Vegas, NV  89119<br>Plaintiff |
| **Counsel to Plaintiffs:**<br>J. Colby Williams, Esq.<br>Philip R. Erwin, Esq.<br>CAMPBELL & WILLIAMS<br>700 South Seventh Street<br>Las Vegas, NV  89101 | **Counsel to Plaintiffs:**<br>Kevin Orsini, Esq.<br>Christian N. Barreiro, Esq.<br>CRAVATH, SWAINE & MOORE, LLP<br>825 Eighth Avenue<br>New York, NY  10019 |
| **Counsel to Plaintiffs:**<br>Hersh Kozlov, Esq.<br>Gilbert L. Brooks, Esq.<br>DUANE MORRIS LLP<br>1940 Route 70 East, Suite 100<br>Cherry Hill, NJ  08003 | **Sylebra HK Company Limited,**<br>a Hong Kong entity<br>28 Hennessy Road, 20th Floor<br>28HR Wan Chai Hong Kong (SAR) |
| **Sylebra Capital Management Limited**<br>Intertrust Corp. Services (Cayman) Ltd.<br>190 Elgin Street<br>George Town, Grand Cayman<br>Cayman Islands, KY1-9005 | **Sylebra Capital Partners Master Fund, Limited**<br>Intertrust Corp. Services (Cayman) Ltd.<br>190 Elgin Street<br>George Town, Grand Cayman<br>Cayman Islands, KY1-9005 |
| **Sylebra Capital Partners (Offshore) Limited**<br>Intertrust Corp. Services (Cayman) Ltd.<br>190 Elgin Street<br>George Town, Grand Cayman<br>Cayman Islands, KY1-9005 | **Sylebra Capital Partners (Onshore) Limited**<br>Intertrust Corp. Services (Cayman) Ltd.<br>190 Elgin Street<br>George Town, Grand Cayman<br>Cayman Islands, KY1-9005 |

# EXHIBIT 2

# EXHIBIT 2

# Supreme Court of New Jersey



# Certificate of Good Standing

*This is to certify that* **HERSCHEL KOZLOV**
*(No.* **282481972** *) was constituted and appointed an Attorney at Law of New Jersey on* **November 28, 1972** *and, as such, has been admitted to practice before the Supreme Court and all other courts of this State as an Attorney at Law, according to its laws, rules, and customs.*

*I further certify that as of this date, the above-named is an Attorney at Law in Good Standing. For the purpose of this Certificate, an attorney is in "Good Standing" if the Court's records reflect that the attorney: 1) is current with all assessments imposed as a part of the filing of the annual Attorney Registration Statement, including, but not limited to, all obligations to the New Jersey Lawyers' Fund for Client Protection; 2) is not suspended or disbarred from the practice of law; 3) has not resigned from the Bar of this State; and 4) has not been transferred to Disability Inactive status pursuant to Rule 1:20-12.*

*Please note that this Certificate does not constitute confirmation of an attorney's satisfaction of the administrative requirements of Rule 1:21-1(a) for eligibility to practice law in this State.*



*In testimony whereof, I have hereunto set my hand and affixed the Seal of the Supreme Court, at Trenton, this* **20TH** *day of* **June** *, 20* **19** .

*Clerk of the Supreme Court*

-453a-



# SUPREME COURT
## State of Colorado,

STATE OF COLORADO, ss:

I, **Cheryl Stevens** Clerk of the Supreme Court of the State of Colorado, do hereby certify that

**HERSH KOZLOV**

has been duly licensed and admitted to practice as an

## ATTORNEY AND COUNSELOR AT LAW

within this State; and that his/her name appears upon the Roll of Attorneys and Counselors at Law in my office of date the **4th** day of **May** A.D. **1998** and that at the date hereof the said **HERSH KOZLOV**

is in good standing at this Bar.



IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Supreme Court, at Denver, in said State, this **18th** day of **June** A.D. **2019**

**Cheryl Stevens**

# EXHIBIT 3

# EXHIBIT 3

1  STAT

2

3                         **DISTRICT COURT**
                    **CLARK COUNTY, NEVADA**

4                   Case No. A-19-796699-B
5                      Dept. No. XXVII

6
   Scientific Games Corporation
7
   vs.
8
9  Sylebra HK Company Limited

10  _____/

11  **STATE BAR OF NEVADA STATEMENT PURSUANT TO SUPREME COURT RULE**
                         **42(3)(b)**
12

13      THE STATE BAR OF NEVADA, in response to the application of
14  Petitioner, submits the following statement pursuant to SCR42(3):

15  SCR42(6)**Discretion.**  The granting or denial of a motion to associate
    counsel pursuant to this rule by the court is discretionary.  The
16  court, arbitrator, mediator, or administrative or governmental
    hearing officer may revoke the authority of the person permitted to
17  appear under this rule. Absent special circumstances, repeated
    appearances by any person or firm of attorneys pursuant to this rule
18  shall be cause for denial of the motion to associate such person.

19      (a)     **Limitation.**  It shall be presumed, absent special
                circumstances, and only upon showing of good cause, that
20              more than 5 appearances by any attorney granted under
21              this rule in a 3-year period is excessive use of this
                rule.
22      (b)     **Burden on applicant.**  The applicant shall have the
                burden to establish special circumstances and good cause
23              for an appearance in excess of the limitation set forth
                in subsection 6(a) of this rule. The applicant shall set
24              forth the special circumstances and good cause in an
25              affidavit attached to the original verified application.

26  1. DATE OF APPLICATION: 6/27/2019

27  2. APPLYING ATTORNEY: Herschel Kozlov, Esq.

28  ///

3. FIRM NAME AND ADDRESS: Duane Morris LLP, 1940 Route 70 East, Suite 100, Cherry Hill, NJ 8003

4. NEVADA COUNSEL OF RECORD: J. Colby Williams, Esq., Campbell & Williams, 700 S. Seventh Street, Las Vegas, NV 89101

5. There is no record of previous applications for appearance by petitioner within the past three (3) years.

DATED this July 5, 2019

Suzy Moore
Member Services Admin.
Pro Hac Vice Processor
STATE BAR OF NEVADA

# EXHIBIT 4

# EXHIBIT 4

**ORAP**

1   CAMPBELL & WILLIAMS
    J. COLBY WILLIAMS, ESQ. (5549)
2   jcw@cwlawlv.com
    PHILIP R. ERWIN, ESQ. (11563)
3   pre@cwlawlv.com
    700 South Seventh Street
4   Las Vegas, Nevada 89101
    Telephone: (702) 382-5222
5   Facsimile: (702) 382-0540
6

7   CRAVATH, SWAINE & MOORE LLP          DUANE MORRIS LLP
    KEVIN J. ORSINI, ESQ. (*pro hac vice*      HERSH KOZLOV, ESQ. (*pro hac vice*
8   forthcoming)                          forthcoming)
    korsini@cravath.com                   hkozlov@duanemorris.com
9   CHRISTINA N. BARREIRO, ESQ. (*pro hac vice*  GILBERT L. BROOKS (*pro hac vice*
    forthcoming)                          forthcoming)
10  cbarreiro@cravath.com                 gbrooks@duanemorris.com
    825 Eighth Avenue                     1940 Route 70 East, Suite 100
11  New York, New York 10019              Cherry Hill, New Jersey 08003
    Telephone: (212) 474-1000             Telephone: (856) 874-4200
12  Facsimile: (212) 474-3700             Facsimile: (856) 424-4446
13

14  *Attorneys for Plaintiffs*

15                      **DISTRICT COURT**

16                   **CLARK COUNTY, NEVADA**

17

18  SCIENTIFIC GAMES            )    CASE NO.:  A-19-796699-B
    CORPORATION, a Nevada       )    DEPT. NO.: 27
19  Corporation, and BALLY GAMING,  )
    INC., a Nevada Corporation, )
20                              )
                                )
21         Plaintiffs,          )    **ORDER ADMITTING TO PRACTICE**
                                )
22         v.                   )
                                )
23                              )
    SYLEBRA HK COMPANY LIMITED, )
24  a Hong Kong entity, SYLEBRA )
    CAPITAL MANAGEMENT LIMITED, )
25  a Cayman Islands entity, SYLEBRA )
    CAPITAL PARTNERS MASTER     )
26  FUND, LIMITED, a Cayman Islands )
    hedge fund, SYLEBRA CAPITAL )
27  PARTNERS (OFFSHORE) LIMITED, )
    a Cayman Islands hedge fund, and )
28  SYLEBRA CAPITAL PARTNERS    )

                                     1

(ONSHORE) LIMITED, a Cayman      )
Islands hedge fund,

          Defendants.

Herschel Kozlov, Esq. having filed his **MOTION TO ASSOCIATE COUNSEL** under Nevada Supreme Court 42, together with a Verified Application for Association of Counsel, Certificates of Good Standing from the Supreme Court of New Jersey, the Supreme Court of the State of Colorado and the State Bar of Nevada Statement; said application having been noticed, no objections having been made, and the Court being fully apprised in the premises, and good cause appearing, it is hereby;

**ORDERED**, that said application is hereby granted, and Herschel Kozlov, Esq. is hereby admitted to practice in the above-entitled Court for the purposes of the above-entitled matter only.

DATED this _____ day of July, 2019

_____
District Judge

By:_____
    Philip R. Erwin, Esq.
    Campbell & Williams
    700 South Seventh Street
    Las Vegas. Nevada 89101
    (702) 382-5222-phone
    (702) 382-0540-fax
    *Attorney for Plaintiffs*

2

EXHIBIT F

Electronically Filed
7/10/2019 8:09 AM
Steven D. Grierson
CLERK OF THE COURT

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**
****

| | |
|---|---|
| Scientific Games Corporation, Plaintiff(s)<br>vs.<br>Sylebra HK Company Limited,<br>Defendant(s) | Case No.:   A-19-796699-B<br><br>Department 27 |

**NOTICE OF HEARING**

Please be advised that the Motions to Associate Counsel in the above-entitled matter is set for hearing as follows:

**Date:**       August 13, 2019

**Time:**       Chambers

**Location:**   Chambers
                Regional Justice Center
                200 Lewis Ave.
                Las Vegas, NV 89101

**NOTE: Under NEFCR 9(d), if a party is not receiving electronic service through the Eighth Judicial District Court Electronic Filing System, the movant requesting a hearing must serve this notice on the party by traditional means.**

STEVEN D. GRIERSON, CEO/Clerk of the Court

By:   /s/ Ivonne Hernandez
      Deputy Clerk of the Court

**CERTIFICATE OF SERVICE**

I hereby certify that pursuant to Rule 9(b) of the Nevada Electronic Filing and Conversion Rules a copy of this Notice of Hearing was electronically served to all registered users on this case in the Eighth Judicial District Court Electronic Filing System.

By:   /s/ Ivonne Hernandez
      Deputy Clerk of the Court